EXHIBIT B



IN THE SUPERIOR COURT OF PENNSYLVANIA

Eastern District

2097 EDA 2001

---

COMMONWEALTH OF PENNSYLVANIA,
Appellee

vs.

JOSEPH MICHAEL STROHL
Appellant

---

## BRIEF OF APPELLANT

Appeal from order of court denying Appellant's Motion for Post-Sentence Relief
entered July 27, 2001 in the Court of Common Pleas of Northampton County, Criminal Division,
Docket Number 829-2000

---

Robert E. Sletvold, Esquire
I.D. No. 80277
701 Washington Street
Easton, PA 18042
(610) 258-5329
*Counsel for Appellant*

# TABLE OF CONTENTS

PAGE

I.      STATEMENT OF JURISDICTION..................................................................5

II.     SCOPE AND STANDARD OF REVIEW...........................................................5

III.    ORDER IN QUESTION.................................................................................6

IV.    STATEMENT OF QUESTION INVOLVED.......................................................7

V.     STATEMENT OF THE CASE.........................................................................8

VI.    SUMMARY OF ARGUMENT........................................................................9

VII.   ARGUMENT FOR APPELLANT..................................................................10

I.   Defendant is entitled to a judgment of acquittal because the evidence
produced by the Commonwealth was insufficient to sustain the verdict.........................10

    A.  The Commonwealth failed to prove beyond a reasonable doubt
    that a burglary of the Wunderly residence occurred on December 26,
    1986, or that the defendant committed a burglary of the Wunderly
    residence on December 26, 1986..................................................................11

    B.  The Commonwealth failed to prove beyond a reasonable
    doubt that the injuries sustained by Ella Wunderly
    occurred during the commission of a burglary by Defendant
    on December 26, 1986..............................................................................13

    C.  The Commonwealth failed to prove beyond a reasonable
    doubt that there was a direct causal connection between the
    injuries sustained by Ella Wunderly in 1986 and her death on
    April 21, 1994......................................................................................14

II.  Defendant is entitled to a new trial because the trial court erred in
failing to grant Defendant's pretrial motion to dismiss for undue delay
in prosecuting the case............................................................................................16

    A.  The trial court erred and abused its discretion in concluding
    that the Defendant suffered no actual prejudice due to the passage of time..........17

    B.  There was no substantially new evidence produced

between the time of Defendant's arrest on the charge of burglary
in 1987 and the initiation of the homicide charges...............................................18

C. The trial court's reliance on the hearing testimony
of Trooper Vazquez conflicts with the information in Trooper
Vazquez's reports and the testimony before the Grand Jury...............................18

D. The "new information" was the direct result of overzealous
and overbearing prosecutorial misconduct and misconduct
in eliciting the testimony of William Notti............................................................19

E. The trial court erred in not granting the pretrial motion
because there were no valid reasons for the delay in prosecution;
and the prejudice outweighed the reasons given....................................................22

III. The trial court erred and abused its discretion in allowing the
Commonwealth to introduce the defendant's December 27 burglary
conviction to show that the defendant had knowledge of Mrs. Wunderly's
incapacitated state..................................................................................................22

IV. The trial court erred and abused its discretion in allowing evidence
of Defendant's statement to the Grand Jury (that he entered a guilty plea
to "an additional" burglary) to be presented by the Commonwealth......................23

V. The court erred and abused its discretion in allowing the Commonwealth
to introduce into evidence enlarged photographs of the victim by using
the "ELMO" projection device.................................................................................24

VI. The court erred and abused its discretion in allowing the Commonwealth's
experts to bolster each other's testimony................................................................25

VII. The court erred an abused its discretion in failing to allow the
Defendant to introduce specific details of the burglary and criminal trespass
convictions of Robert Shull since both crimes occurred in close proximity
both as to geography and time to the burglary that formed the foundation
of this prosecution...................................................................................................27

VIII. The trial court erred and abused its discretion in granting the
Commonwealth's request for a jury instruction on accomplice liability...................27

VIII.          CONCLUSION.......................................................................................28

IX.          OPINION OF THE COURT BELOW.........................................Appendices A, B

# TABEL OF CITATIONS

Cases
Commonwealth v. Boyle, 470 Pa. 343, 368 A.2d 661 (1977)...................................................27
Commonwealth v. Bradney, 126 Pa. 199, 205, 17 A. 600, 601 (1889)...................................20
Commonwealth v. Bricker, 525 Pa. 362, 581 A.2d 147 (1990)..............................................28
Commonwealth v. Chester, 526 Pa. 578, 587 A.2d 1367 (1991)............................................24
Commonwealth v. Evans, 412 Pa. Super. 332, 603 A.2d 608 (1992).....................................25
Commonwealth v. Ford, 539 Pa. 85, 650 A.2d 433 (1994).....................................................12
Commonwealth v. Harper, 419 Pa. Super. 1, 614 A.2d 1180 (1992)....................................5,27
Commonwealth v. Iacobino, 319 Pa. 65, 178 A. 823 (1935)...................................................12
Commonwealth v. LeGares, 709 A.2d 922 (Pa. Super. 1998)................................................25
Commonwealth v. Lewis 528 Pa. 440, 598 A.2d 975 (1991)..................................................28
Commonwealth v. Loner, 415 Pa. Super. 580, 583, 609 A.2d 1376, 1377 (1992)...................25
Commonwealth v. McNeely, 368 Pa. Super. 517, 534 A.2d 778, 779 (1987)..........................25
Commonwealth v. O'Searo, 466 Pa. 224, 229, 352 A.2d 30, 32 (1976)..................................26
Commonwealth v. Peterson, 453 Pa. 187, 307 A.2d 264 (1973)............................................27
Commonwealth v. Prosdocimo, 525 Pa. 147, 578 A.2d 1273 (1990)......................................27
Commonwealth v. Rucci, 543 Pa. 261, 670 A.2d 1129 (1996)..............................................5,10
Commonwealth v. Scher, 1999 Pa. Super. 138, 732 A.2d 1278 (1999)
      alloc. granted, 561 Pa. 693, 751 A.2d 189 (2000)..................................5,16,17,18
Commonwealth v. Shaver, 501 Pa. 167, 173, 460 A.2d 742, 745 (1983)................................26
Commonwealth v. Shoup, 423 Pa. Super. 12, 620 A.2d 15 (1993).........................................14
Commonwealth v. Slick 432 Pa. Super. 563, 639 A.2d 482, 490 (1994)..................................19
Commonwealth v. Smart 368 Pa. 630, 84 A.2d 782, n.3 (1951)............................................20
Commonwealth v. Snyder, 552 Pa. 44, 713 A.2d 596 (1998)..............................................16,18
Commonwealth v. Sparks, 342 Pa. Super. 202, 492 A.2d 720 (1985).....................................23
Commonwealth v. Webb, 449 Pa. 490, 494, 296 A.2d 734, 737 (1972)...................................14
Danovitz v. Portnoy, 399 Pa. 599, 604-605, 161 A.2d 146, 149 (1960)..................................26
In Re Investigating Grand Jury, 518 Pa. 485, 544 A.2d 924, n.6 (1988)................................20
In re Petition of Acchione, 425 Pa. 23, 227 A.2d 816, 820 (1967)........................................19
Penn. Soc. Serv. Local 668 v. PLRB, 481 Pa. 81, 392 A.2d 256, 259-260 (1978)...................20
United States v. Lovasco, 431 U.S. 783, 97 S. Ct. 2044, 52 L. Ed. 2d 752 (1977)..................16
United States v. Marion, 404 U.S. 307, 92 S. Ct. 455, 30 L. Ed. 2d 468 (1971)..................16,17

Statutes
18 Pa. C.S.A. 2502(b)........................................................................................................11
18 Pa.C.S. § 3502(a)..........................................................................................................12
42 Pa. C. S. A. § 742............................................................................................................5
Pa. R. E., Rule 402.............................................................................................................23
Pa. R. E., Rule 403.........................................................................................................23,24
Pa. R. E., Rule 404.............................................................................................................23
Pa. R.E. 404(b)(1)..........................................................................................................22,27
Pa. R.E. 404(b)(2)..........................................................................................................22,27
Pa. SSJI (Crim) 15.2502B...................................................................................................11

# I.    STATEMENT OF JURISDICITION

Pursuant to 42 Pa. C. S. A. § 742, the Superior Court of Pennsylvania has exclusive jurisdiction over this appeal.

# II.    SCOPE AND STANDARD OF REVIEW

In reviewing the sufficiency of the evidence, this Court must view all of the evidence and reasonable inferences deducible therefrom in a light most favorable to the Commonwealth as the verdict winner and must determine whether the evidence adduced, when viewed in such a light, would permit a jury to find that all of the elements of the offense were established beyond a reasonable doubt. Commonwealth v. Rucci, 543 Pa. 261, 670 A.2d 1129 (1996).

The determination of whether a pre-arrest delay is considered reasonable under the facts of a particular case is within the discretion of the trial court.  The Superior Court will reverse only where there is insufficient evidence in the record to support the trial court's determination. Commonwealth v. Scher, 1999 Pa. Super. 138, 732 A.2d 1278 (1999).

The standard of review regarding a challenge to the admissibility of evidence  is very narrow; we will only reverse a ruling of the trial court if there is an abuse of discretion or error of law. Gemini Equipment Co. v. Pennsy Supply, Inc., 407 Pa. Super. 404, 595 A.2d 1211, 1215 (Pa. Super. 1991).

When reviewing a jury instruction to determine whether an error has been committed by a trial court, the charge must be considered as a whole and not in isolated excerpts. Commonwealth v. Harper, 419 Pa. Super. 1, 614 A.2d 1180 (1992)

## III.    ORDER IN QUESTION

A. "And now this 27th day of July, 2001, upon consideration of defendant's post-sentence motions and the briefs submitted by defendant and the Commonwealth, defendant's motions are hereby denied."

A copy of the lower court's opinions and orders are attached hereto as Appendix A and Appendix B.

## IV.    QUESTIONS INVOLVED

A.    Whether the evidence was insufficient to sustain the verdict?

B.    Whether the trial court erred by denying the motion to dismiss for undue delay?

C.    Whether the trial court erred by admitting the defendant's prior conviction?

D.    Whether the trial court erred by admitting the defendant's statement to the grand jury that he pleaded guilty to "an additional burglary"?

E.    Whether the trial court erred by allowing the Commonwealth to use an "ELMO" device to project enlarged photographs of the victim?

F.    Whether the Commonwealth's witnesses were impermissibly allowed to bolster each other's testimony?

G.    Whether the trial court erred in failing to allow the defendant to introduce specific details of a witnesses criminal convictions for burglary and criminal trespass?

H.    Whether the trial court erred in granting the Commonwealth's request for a jury instruction regarding the liability of an accomplice?

All answered in the negative by the court below.

## V.    STATEMENT OF THE CASE

(1) The action below was a criminal prosecution of Defendant Strohl on the charge of homicide for the death of Ella Wunderly. The action was initiated by an investigative grand jury in 1999 in Northampton County charged with looking into stale cases. Mrs. Wunderly died of bronchopneumonia in 1994 and it was alleged that injuries she sustained in 1986 were the cause of her death, and that the defendant was the one who inflicted the injuries.

(2) The trial judge made prior determinations in this case when he denied the relief requested by Defendant Strohl's Omnibus Pre-trial Motion and Motion for Post-Sentence Relief.

(3) The Honorable Robert A. Freedberg entered the orders that are to be reviewed.

(4) Defendant, Joseph Michael Strohl was tried before a jury on March 5 -- March 15, 2001 on the charge of Homicide. After the jury convicted Mr. Strohl of murder of the second degree, the trial judge sentenced him to life in prison as mandated by statute. Motions for post-sentence relief were filed and denied by the trial judge. This timely appeal followed.

(5) The order under review states: "And now this 27th day of July, 2001, upon consideration of defendant's post-sentence motions and the briefs submitted by defendant and the Commonwealth, defendant's motions are hereby denied."

## VI.  SUMMARY OF ARGUMENT

This is a case where the defendant was convicted of murder of the second degree (felony murder.  The evidence was insufficient to sustain the verdict in that the Commonwealth failed to prove beyond a reasonable doubt (1) that a burglary occurred on the date of December, 26, 1986, or that the defendant was involved in the burglary of December 26, 1986, (2) that the injuries sustained by the victim occurred during a burglary by the defendant on that date, and (3) that the injuries were the cause of death.

Additionally, the trial court was wrong in not dismissing the charges for undue prearrest delay because such delay was actually prejudicial to the defendant and there was insufficient justification for the delay of nearly 13 years from the alleged burglary and nearly five years from the time of death.

The trial court improperly allowed experts to bolster one another's testimony, thus infringing on the jury's credibility determining function.

The trial court improperly allowed pictures of the victim to be displayed in an enlarged form.

The trial court also erred in admitting evidence of defendant's burglary conviction while excluding the particularities of a witnesses burglary conviction.

# VII.  ARGUMENT

This case was tried before a jury on an information charging the defendant with criminal homicide. The Commonwealth's theory was that the victim, Ella Wunderly, was beaten in the course of a home burglary on December 26, 1986. She died from bronchopneumonia in 1994. In 1999, an investigative grand jury returned a presentment against the defendant. A criminal complaint was filed and the prosecution commenced. A pretrial motion to dismiss for prearrest delay was denied. The defendant was convicted of murder of the second degree and sentenced to life in prison. Post-sentencing motions were filed and denied by the trial court. This appeal followed.

> I.     Defendant is entitled to a judgment of acquittal because the evidence produced by the Commonwealth was insufficient to sustain the verdict

Mr. Strohl challenges the sufficiency of the evidence. In reviewing the sufficiency of the evidence, this Court must view all of the evidence and reasonable inferences deducible therefrom in a light most favorable to the Commonwealth as the verdict winner and must determine whether the evidence adduced, when viewed in such a light, would permit a jury to find that all of the elements of the offense were established beyond a reasonable doubt. Commonwealth v. Rucci, 543 Pa. 261, 670 A.2d 1129 (1996). The elements for murder of the second degree (felony murder) that the Commonwealth must prove beyond a reasonable doubt are: (1) that the defendant caused the death of the victim, (2) that the defendant did so while committing a burglary; and (3) that the defendant was acting with malice (which may be inferred if a jury is

satisfied beyond a reasonable doubt that the defendant committed burglary, a crime inherently dangerous to human life). Pa. SSJI (Crim) 15.2502B, 18 Pa. C.S.A. 2502(b).

> ### A. The Commonwealth failed to prove beyond a reasonable doubt that a burglary of the Wunderly residence occurred on December 26, 1986, or that the defendant committed a burglary of the Wunderly residence on December 26, 1986.

In order to convict the defendant of felony murder, the Commonwealth was required to prove first that a felony was committed. The Commonwealth's theory was that Mrs. Wunderly's home was burglarized, initially, on December 26, 1986 and that it was during that burglary that Mrs. Wunderly bas beaten, suffering the injuries described to the jury. Without direct evidence, the Commonwealth attempted to create the inference of a burglary having been committed on the 26th through the testimony of the Cecala Family. See Notes of Testimony (N.T.) pp. 578 -- 598. The family testified about the specific dates and said that they thought they saw what turned out to be a purse on Saturday, December 27th and picked it up on the 28th, N.T. 580, 594. This set the foundation for the Commonwealth to argue that if the purse was first seen on the 27th, it must have been taken during a burglary the night before; namely on the 26th. The Cecalas' assumptions on the specific dates were refuted, however, by other testimony. The Cecalas themselves testified that they called Richard Wunderly, the victim's son, on the same day that they picked up the purse. N.T. 595. Richard Wunderly then confirmed that the Cecalas called about the purse the 29th, not the 28th, and that he called the police the same day that the Cecalas called him, which was the day after his mother was discovered on the 28th, N.T. 668-669. Officer Gerancher corroborated this when he testified that he received a call from Richard Wunderly on the December 29th, N.T. 434-435, not the 28th. Therefore, the purse must have been seen on

Sunday the 28th and not the 27th, a date that the Cecalas assumed and which the Commonwealth needed to be able to argue that there was a burglary that the defendant was implicated in on December 26. Thus, the burglary William Notti testified to, N.T. 598 --608 was, in fact, the burglary of the 27th, and not a burglary on the 26th.

While Robert Shull testified that on the 27th, "[Mr. Strohl] said that he was in the night before," N.T. 525, this testimony does not prove a burglary occurred on the 26th. To prove burglary, the Commonwealth must prove that the defendant entered a building or a separately secured or occupied portion thereof with intent to commit a crime therein, unless, among other things, the actor is privileged to enter. Commonwealth v. Ford, 539 Pa. 85, 650 A.2d 433 (1994), citing 18 Pa.C.S. § 3502(a). Specific intent to commit a crime may be established through a defendant's words or acts, or circumstantial evidence, together with all reasonable inferences therefrom. Commonwealth v. Iacobino, 319 Pa. 65, 178 A. 823 (1935). The most that Shull's testimony, if believed, proves, is that Mr. Strohl entered a building or occupied structure. But even if Mr. Strohl entered the structure on the 26th, there is no proof, direct, circumstantial, inferential or otherwise, that he had the specific intent to commit a crime therein, as there must be to support a finding that there was a burglary committed by Mr. Strohl on December 26.

The fact that the house appeared to have been ransacked when the police initially arrived on the scene does not prove that a burglary was committed on the 26th. By the time the police entered the house on the 28th, the home had been entered any number of times, N.T. 767 and nothing supports a specific entry on the 26th. Finally, there is insufficient evidence that, assuming a burglary was committed on the 26th, that the defendant was involved on the 26th.

Therefore, the evidence is insufficient as a matter of law to prove beyond a reasonable doubt that there was a burglary (the predicate felony to the crime of murder of the second degree) on the 26th, or that the defendant was the burglar; therefore, defendant is entitled to a judgment of acquittal.

> B. The Commonwealth failed to prove beyond a reasonable doubt that the injuries sustained by Ella Wunderly occurred during the commission of a burglary by Defendant on December 26, 1986.

For the reasons stated above, there is insufficient evidence from which to conclude that a burglary was committed on December 26th, thus, even though the testimony of Dr. Mihalakis was entered to set a window of time in which that injuries occurred, N.T. 208, there is insufficient evidence to suggest that the injuries occurred in the course of or in furtherance of a burglary.

Again Mr. Notti's testimony describes a sequence of events that culminates with an object being thrown from his car, N.T. 608, which, as explained above, turns out to be the purse the Cecalas find on the 28th and pick up the 29th. This burglary of December 27, 1986 was charged in a separate criminal information and is the burglary to which Mr. Strohl and Robert Shull pleaded guilty, a burglary in which the allegations were that Mrs. Wunderly was already injured when Mr. Strohl and Robert Shull entered the home. Neither Mr. Strohl nor Mr. Shull were ever alleged to have injured Mrs. Wunderly during the burglary on the December 27, 1986.

Therefore, the evidence is insufficient that the injuries sustained were inflicted in the course of a burglary on December 26, and the defendant is entitled to a judgment of acquittal.

C. The Commonwealth failed to prove beyond a reasonable doubt that there was a direct causal connection between the injuries sustained by Ella Wunderly in 1986 and her death on April 21, 1994.

Causation is an essential element of the charge of criminal homicide, which the Commonwealth must prove beyond a reasonable doubt. Commonwealth v. Webb, 449 Pa. 490, 494, 296 A.2d 734, 737 (1972). The law in this area has been summarized in Commonwealth v. Shoup, 423 Pa. Super. 12, 620 A.2d 15 (1993) where the court said:

> The tort concept of proximate cause plays no role in a prosecution for criminal homicide. Rather, the Commonwealth must prove a more direct causal relationship between the defendant's conduct and the victim's death. It has never been the law of this Commonwealth that criminal responsibility must be confined to a sole or immediate cause of death. Criminal responsibility is properly assessed against one whose conduct was a direct and substantial factor in producing the death even though other factors combined with that conduct to achieve the result. So long as the defendant's conduct started the chain of causation which led to the victim's death, criminal responsibility for the crime of homicide may properly be found. Id. (internal citations omitted).

In the present case, the victim was injured in 1986, but did not die until 1994. The Commonwealth presented Dr. Isidore Mihalakis, Dr. Lucy Rorke, and Dr. Halbert Fillinger, for their expert opinions that the injuries inflicted in 1986 caused the death in 1994. The experts attempted to create "an unbroken chain of events" where the injuries led to the bronchopneumonia which was how Mrs. Wunderly died, ultimately. The injuries alone, however, do not cause pneumonia. N.T. 239-240. There are other circumstances that may also lead to bronchopneumonia, some of these apply to Mrs. Wunderly. According to Dr. Mihalakis, healthy people, alcoholics who aspirate vomitous, elderly people, people with Alzheimer's people in nursing homes are all candidates for bronchopneumonia. N.T. 241-243. In short, anyone who is immobile for extended periods, such as a person who has had a hip injury as Mrs.

Wunderly mysteriously suffered, N.T. 873 and has heart disease N.T. 873, as was testified to by the defense expert, Dr. Hoyer is at risk of bronchopneumonia.

Thus, the Commonwealth's evidence and experts did not and could not prove beyond a reasonable doubt that the head injuries were a "direct and substantial factor" in causing the death of Mrs. Wunderly. Contrary to the trial court's assertion in its opinion that "the victim was rendered comatose and immobile," Dr. Fillinger admitted that he had not been provided and had not considered Mrs. Wunderly's responsiveness, albeit diminished, to questions and stimuli, N.T. 386--401, such as paging through magazines, answer questions "yes" or "no", folding her hands in prayer, saying "hi", looking out the window when asked about the weather.

To the extent that the opinions attempted to link the head injuries of 1986 to the death from pneumonia in 1994, the opinions were improper and nugatory in the absence of the medical records from the nursing home in which Mrs. Wunderly was living at the time of her death. Lana Snyder testified, N.T. 794-801, there are relatively complete records for Mrs. Wunderly, but only up to 1989, and bits and pieces of records that stop in 1991. There are no records for the last three years of Ms. Wunderly's life and, thus, no record of what condition she was in that may have explained the cause of pneumonia. Additionally, 1992 records from the Quakertown Community Hospital show that Mrs. Wunderly suffered a broken arm, N.T. 373-374, and noted that she had a history of a C.V.A. which Dr. Fillinger explained the layman understands as a stroke, N.T. 374. May 1993 Quakertown Community Hospital Records disclose a history of congestive heart failure and a broken leg. N.T. 374--375. Thus, due to the missing records which could have presented a more accurate picture of Mrs.Wunderly's health, and whether her

pneumonia was diagnosed and treated, as well as the additional evidence of injuries, stroke and heart failure, the Commonwealth failed to prove causation beyond a reasonable doubt.

    II.    <u>Defendant is entitled to a new trial because the trial court erred in failing to grant Defendant's pretrial motion to dismiss for undue delay in prosecuting the case.</u>

While there is no statute of limitations for murder, persons accused of crimes are afforded the right to due process under both the state and federal constitutions. <u>Commonwealth v. Scher</u>, 1999 Pa. Super. 138, 732 A.2d 1278 (1999) alloc. granted, 561 Pa. 693, 751 A.2d 189 (2000). Prior to <u>Scher</u>, the Pennsylvania Supreme Court decided, in <u>Commonwealth v. Snyder</u>, 552 Pa. 44, 713 A.2d 596 (1998), that the constitutional right to due process "protects defendants from having to defend stale charges, and criminal charges should be dismissed if improper pre-arrest delay causes prejudice to the defendant's right to a fair trial." Id. at 600. Both <u>Scher</u> and <u>Snyder</u> follow the United States Supreme Court cases of <u>United States v. Marion</u>, 404 U.S. 307, 92 S. Ct. 455, 30 L. Ed. 2d 468 (1971)(the due process clause has a role to play in protecting defendants against oppressive delay such as for the prosecution to gain a tactical advantage) and <u>United States v. Lovasco</u>, 431 U.S. 783, 97 S. Ct. 2044, 52 L. Ed. 2d 752 (1977)(holding that the court must determine whether compelling a person to stand trial after governmental prearrest delay violates those fundamental conceptions of justice which lie at the base of our civil and political institutions and which define the community's sense of fair play and decency). These cases have concluded that to succeed on a claim that prearrest delay violates due process, a defendant must show both prejudice to the right to a fair trial and that the reasons for the delay were improper. However, neither the Pennsylvania Supreme Court nor the United States Supreme Court has set forth a clear standard for determining what constitutes improper conduct

on the part of the prosecution. As noted in <u>Marion,</u> the Supreme Court did not "determine when and in what circumstances actual prejudice resulting from preaccusation delays requires the dismissal of the prosecution." <u>Scher</u> expressly addressed this issue and held that:

> Where there has been an excessive and prejudicial pre-arrest delay, we will not only inquire as to whether there has been any intentional delay by the prosecution to gain a tactical advantage over the accused, but we will also consider whether the prosecution has been negligent by failing to pursue a reasonably diligent criminal investigation. <u>Scher</u>, 732 A.2d at 1283.

### A. The trial court erred and abused its discretion in concluding that the Defendant suffered no actual prejudice due to the passage of time.

The defendant suffered prejudice due to the delay in prosecuting this case due to the lost evidence and the lost medical records, and the court was incorrect in not so concluding. Dr. Fillinger testified that information contained in medical records could be important. N.T. 372. In light of the fact that it is unusual for a person to live for so many years after the injuries described, N.T. 379, and the fact that heart disease was also a contributing factor, N.T. 398, the missing records, records from the years closest to the victim's death, take on greater importance and thus their absence is more clearly prejudicial. As Dr. Fillinger stated, more information may change an opinion. N.T. 409. See also Omnibus Transcript pp. 20-25. Here not only are the records from the nursing home where the victim was residing at the time of her death missing, but also there a records form the Quakertown Hospital that show the victim suffered severe injuries. As discussed above, the victim was taken to the hospital with a broken arm, a broken leg, had a history of stroke and a history of congestive heart failure. The records from the residential facility would have shown how these injuries occurred, given that they are inconsistent with a patient described as immobile, and how she was being treated afterwards. Also they would have shown whether the bronchopneumonia had been diagnosed and whether or

17

to what extent it was being treated. Also with the missing physical evidence, the defendant was prejudiced by not being able to have it tested for possible DNA or other scientific or forensic results that could have been helpful to his defense. It must be noted that although the victim died in April 1994, what little activity there was on the part of law enforcement does not amount to due diligence from the time of Mrs. Wunderly's death until the matter was brought before the investigating grand jury in 1999. Thus, the defendant did suffer actual prejudice by the delay.

### B. There was no substantially new evidence produced between the time of Defendant's arrest on the charge of burglary in 1987 and the initiation of the homicide charges

The holding of Scher and Snyder suggest that it is not merely new evidence which justifies prosecuting a stale case; rather the new evidence must be substantial. Here the evidence that is supposedly new was the testimony of Shull that on December 27, the day after the alleged events giving rise to this prosecution, he actually went into the house further than he had admitted in connection with his guilty plea for the burglary of the 27th. Also a statement by Bill Notti that Joe supposedly said "shut up or I'll kill you, too, " is claimed to be substantial new evidence. This is not true given the suspect circumstances in which the statement was obtained, discussed below. See also N.T. 748-760.

### C. The trial court's reliance on the hearing testimony of Trooper Vazquez conflicts with the information in Trooper Vazquez's reports and the testimony before the Grand Jury.

At the hearing on defendant's pre-trial motion to dismiss for undue delay, Trooper Vazquez testified that Notti provided information that Joe Strohl said, "shut up or I'll kill you, too." Omnibus Transcript, 164. That information was not what Notti told the grand jury, N.T. 617, does not appear in any other officers reports, and while it is in Trooper Vazquez' notes, the

full statement is that Strohl said "shut up or I'll kill you" or "shut up or I'll kill you, too." Thus, this information should not have been characterized as substantially new evidence justifying the instant prosecution.

**D.** **The "new information" was the direct result of overzealous and overbearing prosecutorial misconduct and misconduct in eliciting the testimony of William Notti.**

Mr. Notti was interviewed several times by the police and appeared three times before the grand jury. It was not until after the District Attorney threatened to haul Mr. Notti before a judge on perjury charges and threatened to incarcerate him until his memory improved, N.T. 624-631, that the statement "Shut up or I'll kill you, too!" is supposed to have been said. However, the last time Notti testified before the grand jury the statement that he now recalls being said was only "shut up or I'll kill you." N.T. 617.

Appellate review is available to assess whether the discretion of the prosecutor has been abused in performing his function to issue indicting documents. Commonwealth v. Slick 432 Pa. Super. 563, 639 A.2d 482, 490 (1994). The standard of review for examining the discretionary actions in an investigating grand jury should be the same as that which was articulated by the Pennsylvania Supreme Court In re Petition of Acchione, 425 Pa. 23, 227 A.2d 816, 820 (1967); namely:

> . . . courts will not review the actions of governmental bodies or administrative tribunals involving acts of discretion, in the absence of bad faith, fraud, capricious action or abuse of power; they will not inquire into the wisdom of such actions or into the details of the manner adopted to carry them into execution. It is true that the mere possession of discretionary power by an administrative body does not make it wholly immune from judicial review, but the scope of that review is limited to the determination of whether there has been a manifest and flagrant abuse of discretion or a purely arbitrary execution of the agency's duties or functions. That the court might have a different

opinion or judgment in regard to the action of the agency is not a sufficient ground for interference; judicial discretion may not be substituted for administrative discretion.

Accord <u>Pennsylvania Social Services Local 668 v. Pennsylvania Labor Relations Board</u>, 481 Pa. 81, 392 A.2d 256, 259-260 (1978).

Here there was such an abuse of discretion. As noted in <u>Commonwealth v. Smart</u> 368 Pa. 630, 84 A.2d 782, n.3 (1951) "The function of the prosecuting officer is to attend on the grand jurors with regard to matters on which they are to pass, to aid in the examination of witnesses, and to give such general instructions as they may require, but he must not attempt to influence their action nor indeed should he be present while they are deliberating on the evidence or voting on a matter under investigation" Citing <u>Commonwealth v. Bradney</u>, 126 Pa. 199, 205, 17 A. 600, 601 (1889). For example, the court in <u>In Re Investigating Grand Jury</u>, 518 Pa. 485, 544 A.2d 924, n.6 (1988) found the following questioning by the prosecutor amounted to prosecutorial misconduct:

> Q Miss Lees, I just want to remind you of where I'm going because I think I told you this last time, I want to make sure that you remember this. I think that you were at those burglaries and I think I can prove that. I think I can prove it beyond a reasonable doubt and if you had not entered a plea to those offenses that's exactly what the Commonwealth intended to do. I think that Edward Doria was there with you because you can't drive so you can't get there without somebody else and it was Edward Doria's car that was there during those burglaries. If I can prove that you're lying here today or during your prior testimony I am going to try to send you to jail for each time you have lied and I think I can prove that with the testimony of Edward Doria. If I have to I'll make a deal with him, even though I'd prefer to just take testimony from you, let you go home and use the truth against Mr. Doria, but if I have to I'll deal with Mr. Doria and prove that you're lying. Please keep that in mind during the rest of this questioning.
> All right. You say that you have no idea whether you ever participated in a burglary in your life?

Prosecutors are not permitted to attempt to influence a grand jury by expressions of personal opinion, Smart, supra. See also, Gershman Prosecutorial Misconduct, § 2.3(b) (1986) (hostile questioning and implication that witness is lying generally viewed as misconduct).

Specifically, in this case witness Notti was told by the District Attorney, "I want to know the truth, sir, or I will have you before a judge for perjury. Do you understand that.?" N.T. 624; "You are not going to be evasive. You are not going to sit there and lie to this grand jury," N.T. 624; "Are you trying to play dumb" N.T. 628; "I'm asking you questions and I want straight answers," N.T. 629; "I'm trying to find out the truth about what you overheard. I know for a fact that you were present in your car when Strohl [the defendant] was talking to Shull about going in that house and I know for a fact and I want to know why you won't tell us the truth on that." N.T. 629; "I want to know why you won't tell us what you heard them saying," N.T. 629. After being berated in this way, the witness answers, "I didn't hear them saying anything" N.T. 630. The District Attorney then threatens, "Do you think your memory would be refreshed if we had you sit over in Northampton County [Prison] for a couple of days? Do you think we could get your memory a little better then?" N.T. 631. The witness was excused, re-interviewed by the police and brought back before the grand jury at a later date when he testifies about the incriminating statement attributed to the defendant here. N.T. 617. This misconduct tainted the grand jury proceedings to the point where, at the very least, the trial court never should not have used this tainted information as a basis for justifying the delay and denying defendant's motion to dismiss the charges. The charges should be dismissed now.

Prosecutors are not permitted to attempt to influence a grand jury by expressions of personal opinion, Smart, supra. See also, Gershman Prosecutorial Misconduct, § 2.3(b) (1986) (hostile questioning and implication that witness is lying generally viewed as misconduct).

Specifically, in this case witness Notti was told by the District Attorney, "I want to know the truth, sir, or I will have you before a judge for perjury. Do you understand that.?" N.T. 624; "You are not going to be evasive. You are not going to sit there and lie to this grand jury," N.T. 624; "Are you trying to play dumb" N.T. 628; "I'm asking you questions and I want straight answers," N.T. 629; "I'm trying to find out the truth about what you overheard. I know for a fact that you were present in your car when Strohl [the defendant] was talking to Shull about going in that house and I know for a fact and I want to know why you won't tell us the truth on that." N.T. 629; "I want to know why you won't tell us what you heard them saying," N.T. 629. After being berated in this way, the witness answers, "I didn't hear them saying anything" N.T. 630. The District Attorney then threatens, "Do you think your memory would be refreshed if we had you sit over in Northampton County [Prison] for a couple of days? Do you think we could get your memory a little better then?" N.T. 631. The witness was excused, re-interviewed by the police and brought back before the grand jury at a later date when he testifies about the incriminating statement attributed to the defendant here. N.T. 617. This misconduct tainted the grand jury proceedings to the point where, at the very least, the trial court never should not have used this tainted information as a basis for justifying the delay and denying defendant's motion to dismiss the charges. The charges should be dismissed now.

E. The trial court erred in not granting the pretrial motion because there were no valid reasons for the delay in prosecution; and the prejudice outweighed the reasons given.

The court should have performed a balancing test to compare the prejudice suffered with the reasons for the delay. It is submitted that the prejudice suffered by the defendant, described above, outweighs that reasons given by the Commonwealth for the delay and the tactical advantage that obtained.

The Commonwealth took no action to charge the defendant either before or at the time of Mrs. Wunderly's death for the burglary or assault that supposedly occurred on the 26th. Additionally, when Mrs. Wunderly died, no records were collected or preserved and additional time elapsed. This negligent oversight, at least, created a situation where evidence, the records of the nursing home and the physical evidence, could be and in fact was lost. As trooper Vazquez testified at the pre-trial hearing, he thought there was enough to arrest Joe Strohl at the time, meaning in 1987, but the Commonwealth chose to wait to see what happened. O.T. 153 et seq. By lying in wait to see whether Mrs. Wunderly would die and thus have a case for homicide instead of merely assault and/or burglary and robbery, evidence was lost forever and that evidence was important to the case.

III. The trial court erred and abused its discretion in allowing the Commonwealth to introduce the defendant's December 27 burglary conviction to show that the defendant had knowledge of Mrs. Wunderly's incapacitated state.

Evidence of other bad acts is inadmissable to prove the character of a person in order show action in conformity therewith, Pa. R.E. 404(b)(1). While such evidence may be admitted for other purposes, such as proof of motive opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident, Pa. R.E. 404(b)(2), the evidence of the defendant's

plea to a December 27 burglary should not have been admitted, as it was, for the purpose of showing that Mr. Strohl had knowledge of Mrs. Wunderly's condition.

First, this type of evidence may be relevant where knowledge is an element of the crime charged. *See* <u>Commonwealth v. Sparks</u>, 342 Pa. Super. 202, 492 A.2d 720 (1985)(In trial for receiving stole property, the Commonwealth was permitted to introduce testimony of defendant's subsequent criminal activity concerning property defendant was told was stolen to rebut defendant's position that he lacked knowledge of subject property being stolen). Here, however, knowledge is not an element of felony murder, nor does knowledge of Mrs. Wunderly's condition fit any of the other exceptions to the rule. Also to the extent relevant, the prejudicial effect of this evidence outweighed it probative value and should have been excluded.

 IV. <u>The trial court erred and abused its discretion in allowing evidence of Defenant's statement to the Grand Jury (that he entered a guilty plea to "an additional" burglary) to be presented by the Commonwealth.</u>

At trial, the Commonwealth was permitted to introduce a statement made by the Defendant to the Grand Jury to the effect that he had committed and pleaded guilty to an "additional burglary" of the victim's house. N.T. 705-710. Using this statement, the Commonwealth sought to create the inference that the defendant, by saying "additional" had admitted by necessary implication to having committed an "initial" burglary, being the burglary that was the basis for the felony-murder charge.

This was prejudicial and irrelevant, Pa. R. E., Rules 402, 403, and 404, given the passage of time and well publicized grand jury proceedings. Additionally, at the time defendant pleaded guilty to the burglary of December 27, the Commonwealth made it clear that it was leaving open the possibility of prosecution for crimes suspected to have been committed the day before. See

Guilty plea and sentencing colloquy in Northampton County Case No. 226-1987. Thus, the prejudicial effect of this statement outweighed any possible relevance.

> V. The court erred and abused its discretion in allowing the Commonwealth to introduce into evidence enlarged photographs of the victim by using the "ELMO" projection device.

During the trial, counsel for the Commonwealth used the "ELMO" projection device, a device that can project a photograph onto a scree, to display photographs of the victim to the jury. In so doing, the image of the photo was enlarged. As stated by the Pennsylvania Supreme Court in Commonwealth v. Chester, 526 Pa. 578, 587 A.2d 1367 (1991):

> Photographs of a murder victim are not per se inadmissible. It is the manner in which the corpse is displayed that causes photographs to be emotionally charged. The admission of such photographs is a matter within the sound discretion of the trial judge. The test for determining the admissibility of such evidence requires that the court employ a two-step analysis. First a court must determine whether the photograph is inflammatory. If not, it may be admitted if it has relevance and can assist the jury's understanding of the facts. If the photograph is inflammatory, the trial court must decide whether or not the photographs are of such essential evidentiary value that their need clearly outweighs the likelihood of inflaming the minds and passions of the jurors. If an inflammatory photograph is merely cumulative of other evidence, it will not be deemed admissible. (internal citations omitted).

Here, the Commonwealth used the photos to demonstrate how the victim looked when she was discovered on December 28, 1986. The photos show the beaten face and bloody carpet surrounding the victim in her home and the bruised and swollen face of the victim with tubes entering her mouth and nose in the hospital. Thus, these photos had an inflammatory character to them. The prejudicial effect of these photos, especially in their enlarged state, outweighed their probative value. Pa.R.E. 403. While the severity of injuries suffered may sometimes be relevant to the issue of malice in a homicide case, in the present case such evidence is cumulative

where the theory is felony murder. Under this theory, the felony itself creates the inference or presumption of malice. Additionally, the question of whether Mrs. Wunderly was severely beaten was not contested. No contention was made that she suffered these injuries in any other fashion than that described by the Commonwealth's witnesses, and as such the photos and their enlarged display was prejudicially inflammatory. *See* Commonwealth v. LeGares, 709 A.2d 922 (Pa. Super. 1998)(holding that lower court erred in finding photo not inflammatory and that the photo was unnecessary to support an uncontested theory).

> ### VI. The court erred and abused its discretion in allowing the Commonwealth's experts to bolster each other's testimony.

During the trial each of the Commonwealth's experts, Dr. Fillinger and Dr. Mihalakis were allowed to testify as to whether one's opinions and conclusions were "consistent with" the other's.

While, "admission or exclusion of expert testimony is within the sound discretion of the trial court . . . [and] will not be reversed absent a clear abuse of discretion," Commonwealth v. McNeely, 368 Pa. Super. 517, 534 A.2d 778, 779 (1987), it is well-established that an expert witness may not offer testimony which concerns the issue of a witness' credibility because that testimony improperly encroaches upon the jury's function. Commonwealth v. Evans, 412 Pa. Super. 332, 603 A.2d 608 (1992). "The law is clear that the determination of the veracity of a witness is reserved exclusively for the jury." Commonwealth v. Loner, 415 Pa. Super. 580, 583, 609 A.2d 1376, 1377 (1992). In this regard, the Supreme Court has stated that "the question of whether a particular witness is testifying in a truthful manner is one that must be answered in reliance upon inferences drawn from the ordinary experiences of life and common knowledge as

to the natural tendencies of human nature, as well as upon observations of the demeanor and character of the witness." See Danovitz v. Portnoy, 399 Pa. 599, 604-605, 161 A.2d 146, 149 (1960). The phenomenon of lying, and situations in which prevarications might be expected to occur, have traditionally been regarded as within the ordinary facility of jurors to assess. For this reason, the question of a witness' credibility has routinely been regarded as a decision reserved exclusively for the jury. Commonwealth v. Shaver, 501 Pa. 167, 173, 460 A.2d 742, 745 (1983) ("It is solely the province of the trier of fact to pass upon the credibility of witnesses."); Commonwealth v. O'Searo, 466 Pa. 224, 229, 352 A.2d 30, 32 (1976) ("Traditionally, we have recognized not only the jury's ability to determine the credibility of the witnesses but also we have placed this determination within their sole province.").

It is an encroachment upon the province of the jury to permit admission of expert testimony on the issue of a witness' credibility. Commonwealth v. O'Searo, 466 Pa. at 228-229, 352 A.2d at 32. Indeed, to permit expert testimony for the purpose of determining the credibility of a witness "would be an invitation for the trier of fact to abdicate its responsibility to ascertain the facts relying upon the questionable premise that the expert is in a better position to make such a judgment." Id.

In the instant case, by allowing Dr. Mihalakis to testify that Dr. Fillinger's conclusions as to the cause of death in 1994 was consistent with what Dr. Mihalakis observed in 1986, N.T. 180--212 was improper bolstering of the credibility of Dr. Fillinger's credibility. Likewise, allowing Dr. Fillinger to do same with respect to Dr. Mihalakis' report was also impermissible. N.T. 334-360.

VII. The court erred an abused its discretion in failing to allow the Defendant to introduce specific details of the burglary and criminal trespass convictions of Robert Shull since both crimes occurred in close proximity both as to geography and time to the burglary that formed the foundation of this prosecution.

While evidence of other bad acts is generally inadmissible to prove the character of a person in order show action in conformity therewith, Pa. R.E. 404(b)(1); such evidence may be admitted for other purposes, such as proof of motive opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident, Pa. R.E. 404(b)(2). "It is well established that proof of facts showing the commission of the crime by someone else is admissible," Commonwealth v. Boyle, 470 Pa. 343, 368 A.2d 661 (1977).

Here, the Commonwealth's witness, Robert Shull had committed and been convicted of similar crimes (burglary, criminal trespass) in close proximity to the Wunderly home and in temporal proximity. The trial court precluded the defense from putting these facts before the jury and thus prevented the defense from showing that it could have been Shull who actually committed the burglary on December 26, 1986. The defense was prevented from showing a common scheme of burglaries being committed by Shull, Commonwealth v. Peterson, 453 Pa. 187, 307 A.2d 264 (1973).

VIII. The trial court erred and abused its discretion in granting the Commonwealth's request for a jury instruction on accomplice liability.

When reviewing a jury instruction to determine whether an error has been committed by a trial court, the charge must be considered as a whole and not in isolated excerpts. Commonwealth v. Harper, 419 Pa. Super. 1, 614 A.2d 1180 (1992). A jury instruction will be upheld so long as it "sufficiently and accurately apprises a lay jury of the law it must consider in rendering its decision." Commonwealth v. Prosdocimo, 525 Pa. 147, 578 A.2d 1273 (1990).

In applying the harmless error analysis in a particular case, it is imperative that the burden of establishing that the error is harmless beyond a reasonable doubt rests upon the Commonwealth. Commonwealth v. Lewis 528 Pa. 440, 598 A.2d 975 (1991); Commonwealth v. Bricker, 525 Pa. 362, 581 A.2d 147 (1990).

Here there was insufficient facts to raise the issue of accomplice liability and by instructing the jury so and allowing them to consider this theory allowed the jury to convict the defendant without having to find that he himself committed the acts which caused the injury, a proposition for which there was insufficient basis to form such a conclusion. The defendant objected to this instruction, N.T. 942-945, but it was given N.T. 1085-1089.

## VIII.   CONCLUSION

For the foregoing reasons, the decision of the lower court should be vacated; a judgment of acquittal should be entered, or, in the alternative, Defendant Strohl should be granted a new trial.

Respectfully Submitted

Robert E. Sletvold, Esquire
Attorney I.D. 80277
701 Washington Street
Easton, PA 18042
(610) 258-5329
*Counsel for Appellant*

## CERTIFICATE OF SERVICE

I, **ROBERT E. SLETVOLD, ESQUIRE,** certify that I have this day served the forgoing document to the parties listed below by sending a copy by first-class mail, postage pre-paid.

**John Morganelli, Northampton County District Attorney**
**c/o Jay Jenkins, Assitant District Attorney**
Northampton County Government Center
Easton, PA 18042

DATE: Nov 21, 2001

Robert E. Sletvold, Esquire