EXHIBIT H

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| JOSEPH MICHAEL STROHL, | : | |
| | : | |
| Appellant | : | No. 1954 EDA 2004 |

Appeal from the PCRA Order entered on June 15, 2004
in the Court of Common Pleas of Northampton County,
Criminal Division, No. 829-2000

BEFORE: MUSMANNO, BENDER and TAMILIA, JJ.

MEMORANDUM: **FILED MAY 13, 2005**

Joseph Michael Strohl ("Strohl") appeals from the Order entered dismissing his Petition filed pursuant to the Post Conviction Relief Act.[1] We affirm.

This Court previously summarized the facts of this case as follows:

> This case arises from a burglary and assault at the home of Ella Wunderly (hereinafter "the victim"). The evidence adduced at trial shows that [Strohl] and a cohort burglarized the victim's home on [Friday,] December 26, 1986, when the victim was at home. During the burglary, [Strohl] assaulted the victim, leaving her debilitated and possibly unconscious. [Strohl] returned the following night on [Saturday,] December 27th with a different cohort to burglarize the home a second time.
>
> At trial, the second cohort, Robert J. Shull, [("Shull")] testified that on the day of December 27th, while he and [Strohl] were working at Sears,

---

[1] 42 Pa.C.S.A. §§ 9541-9546.

> [Strohl] approached Shull about burglarizing a home that night.[2] Shull further testified that [Strohl] told Shull that [Strohl] had been in the home the night before and that the occupant of the house was dead. When Shull entered the house with [Strohl], he saw the victim lying on the floor and heard her breathing with a "gurgling sound." Shull testified that he abandoned the house, and shortly thereafter, [Strohl] joined him outside. At this point, Shull testified that [Strohl] told him that he had kicked the victim in the head and that there was blood on the wall.
>
> As a result of the attack, the victim was rendered comatose and was hospitalized. [The victim] died in April of 1994, more than seven years after the attack. The Commonwealth charged [Strohl] with homicide in 1999, and on March 15, 2001, a jury [found Strohl guilty of second degree murder]. [Strohl] filed a post-sentence Motion, which the trial Court denied.

*Commonwealth v. Strohl*, 813 A.2d 909 (Pa. Super. 2002) (unpublished memorandum) (citations omitted). The trial court then sentenced Strohl to a life prison term.

This Court affirmed Strohl's judgment of sentence on September 11, 2002. *Id*. The Pennsylvania Supreme Court denied Strohl's Petition for allowance of appeal on February 13, 2003. *Commonwealth v. Strohl*, 815 A.2d 1042 (Pa. 2003). On June 2, 2003, the United States Supreme Court denied Strohl's Petition for *certiorari*. *Strohl v. Pennsylvania*, 539 U.S. 907 (2003).

---

2 Strohl pled guilty to the Saturday, December 27th, burglary in 1987.

Strohl filed the instant PCRA Petition on September 15, 2003. The PCRA court denied Strohl's Petition on June 15, 2004, following a three-day hearing and oral argument. This timely *pro se* appeal followed, in which Strohl raises the following issues:

A.   Whether exculpatory evidence was suppressed by the prosecution?

B.   Whether after-discovered evidence warrants [that] a new trial be granted?

C.   Whether the PCRA court erred and abused its discretion by ruling that trial counsel had not tendered ineffective assistance of counsel by:

   i. Failing to assert a double jeopardy collateral estoppel claim?

   ii. Failing to request an aggravated assault jury instruction?

   iii. Failing to object to a material misstatement of the evidence during the [trial] court's instruction to the jury?

   iv. Failing to properly raise and challenge prosecutor[ial] and police misconduct during the investigative grand jury proceedings?

   v. Failing to request an adverse inference jury instruction?

   vi. Failing to call a potential alibi/favorable witness?

Brief for Appellant at 3.

   "When examining a [PCRA] court's grant or denial of relief, our scope of review is limited to determining whether the court's findings were

supported by the record and the court's order is otherwise free of legal error." *Commonwealth v. Malone*, 823 A.2d 931, 934 (Pa. Super. 2003) (citation omitted). When reviewing an ineffective assistance of counsel claim, we presume that counsel was effective. The burden rests upon the appellant to prove otherwise by a preponderance of the evidence. 42 Pa.C.S.A. § 9543(a); *see also Commonwealth v. Corley*, 816 A.2d 1109, 1114 (Pa. Super. 2003).

In his first issue, Strohl argues that the Commonwealth suppressed certain exculpatory evidence. Specifically, Strohl argues that he was not provided with two medical reports from the Lehigh Valley Hospital Center, as well as a police "station complaint" authored by Officer William Gerancher.

Pursuant to *Brady*, a prosecutor's failure to disclose evidence favorable to an accused, upon request, violates due process "where the evidence is material either to guilt or punishment, regardless of the good or bad faith of the prosecution." *Commonwealth v. Copenhafer*, 719 A.2d 242, 259 (1998) (citing *Brady v. Maryland*, 373 U.S. 83, 87, 83 S. Ct. 1194, 1196 (1963)). "In order for a defendant to establish the existence of a *Brady* violation, he must establish that there has been a suppression by the prosecution of either exculpatory or impeachment evidence that was favorable to the accused, and that the omission of such evidence prejudiced the defendant." *Commonwealth v. Grant*, 813 A.2d 726, 730 (Pa. 2002).

Evidence is material for **Brady** purposes "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." **Commonwealth v. Howard**, 749 A.2d 941, 949-50 (Pa. Super. 2000) (citation omitted). The defendant must prove, "by reference to the record, that evidence was withheld or suppressed by the prosecution." **Copenhafer**, 719 A.2d at 259. The prosecution's failure to disclose exculpatory evidence must be evaluated in the context of the entire record. **Id**.

Strohl's claim with respect to the Lehigh Valley Hospital records does not amount to a violation of **Brady**. A **Brady** violation does not occur "where the parties had equal access to the information or if the defendant knew or could have uncovered such evidence with reasonable diligence." **Grant**, 813 A.2d at 730 (citing **Commonwealth v. Paddy**, 800 A.2d 294, 305 (Pa. 2002)). In his appellate brief, Strohl does not claim that the Commonwealth had the Lehigh Valley Hospital Center reports in its possession at the time of trial and knowingly withheld them. Rather, Strohl claims that he did not receive the reports when he requested the reports from the hospital. Accordingly, Strohl is not entitled to relief on this basis.

Furthermore, we conclude that Strohl is not entitled to relief pursuant to his claim with respect to the police station complaint. The station complaint is a half-page document that states "that Patricia Cecala phoned the police to report that a purse was found." **See** PCRA Court Opinion,

6/15/04, at 4. The station complaint was dated December 29, 1986, at 7:30 p.m. and contained the notation "delayed entry." *Id*. The PCRA court denied Strohl's claim on the basis that he failed to demonstrate how the station complaint related to his guilt or innocence. *See* PCRA Court Opinion, 6/15/04, at 4.

Strohl now argues that the station complaint would have undermined the testimony of Patricia and Joseph Cecala that the victim's purse was found following the Saturday burglary, rather than after the Friday burglary. However, Strohl's argument is not supported by the station complaint. The document is dated after the Saturday burglary and states on its face that it was a "delayed entry." Thus, it cannot be determined from the document whether the purse was found after the Friday or the Saturday burglary.

Strohl further argues that the station complaint would call into question the testimony and police report of Officer Gerancher, which related that Richard Wunderly called to report the discovery of the purse. However, the prosecution provided Strohl with a more complete and detailed report regarding the recovery of the purse. Accordingly, Strohl failed to prove that if the station complaint had been disclosed to the defense, the result of the proceeding would have been different. Consequently, we conclude that the PCRA court's findings with respect to this issue were supported by the record and the court's Order is otherwise free of legal error.

In his second issue, Strohl contends that the PCRA court erred when it concluded that he was not entitled to a new trial based upon the after-discovered evidence of the Lehigh Valley Hospital records and the station complaint.

> The grant of a new trial on the basis of after-discovered evidence is proper when the following conditions are met:
>
> 1. the evidence has been discovered after trial and could not have been obtained prior to the conclusion of trial by the exercise of due diligence;
>
> 2. the evidence is not merely corroborative or cumulative;
>
> 3. the evidence will not be used solely for impeachment purposes; and
>
> 4. the evidence is of such a nature and character that a different verdict will likely result if a new trial is granted.

***Commonwealth v. Bormack***, 827 A.2d 503, 506 (Pa. Super. 2003).

Our review of the parties' briefs and the certified record leads us to conclude that the PCRA court's Opinion correctly addressed Strohl's after-discovered evidence claims and determined that they lacked merit. We adopt the trial court's reasoning, and affirm on the basis of its well-reasoned Opinion with regard to these claims. ***See*** PCRA Court Opinion, 6/15/04, at 5-10.

Strohl's final issue challenges the PCRA court's ruling on his multiple claims of ineffective assistance of trial counsel.

> In order for an appellant's claim of ineffective
> assistance of counsel to succeed, he or she must
> establish: (1) that the underlying claim is of arguable
> merit; (2) that counsel's course of conduct was
> without a reasonable basis designed to effectuate his
> client's interest; and (3) that he was prejudiced by
> counsel's ineffectiveness.

*Commonwealth v. Wallace*, 724 A.2d 916, 921 (Pa. 1999). We will not

consider abstract allegations of ineffectiveness on appeal. *Commonwealth*

*v. DeHart*, 650 A.2d 38, 43 (Pa. 1994). A PCRA petitioner must allege

actual prejudice and be able to identify a specific factual predicate that

demonstrates how a different course of action by his trial counsel would

have better served his interests. *Id.*

Strohl first asserts that the trial court erred when it concluded that his

trial counsel did not render ineffective assistance of counsel by failing to

assert a double jeopardy collateral estoppel claim.[3] Specifically, Strohl

argues that his trial counsel rendered ineffective assistance by failing to

assert a collateral estoppel claim arguing that the prosecution was precluded

---

[3] The Pennsylvania Supreme Court has stated that:

> Although collateral estoppel is but one aspect of the
> concept of res judicata, in modern usage the two
> terms have distinct meanings. Collateral estoppel is
> defined as "issue preclusion" and it prevents
> relitigation of particular issues, whereas res judicata
> is defined as "claim preclusion" and it prevents
> relitigation of entire causes of action.

*Commonwealth v. Holder*, 805 A.2d 499, 502 n.3 (Pa. 2002). In this
case, "collateral estoppel" is the applicable term. Strohl's argument

from offering evidence to establish that the victim's purse was stolen on Saturday. Strohl previously pled guilty to robbing the victim on Saturday. The victim's purse was one of the items that Strohl allegedly stole during the Saturday robbery.

Strohl is not entitled to relief on this basis as he has failed to establish that he was prejudiced by the alleged ineffective assistance of his trial counsel.[4] "When it is clear that appellant has failed to meet the prejudice prong [of his ineffective assistance of counsel claim], the claim may be disposed of on that basis alone. . . ." *Commonwealth v. Fink*, 791 A.2d 1235, 1246 (Pa. Super. 2002) (quoting *Commonwealth v. Wilson*, 672 A.2d 293, 298 (Pa. 1996)). The evidence at trial established that Strohl confessed to his cohort during the Saturday burglary that he had kicked the victim in the head during the Friday burglary, which resulted in blood being spattered on the wall. The evidence established that the victim was comatose as a result of this blunt force trauma to her head, and she eventually died as a result of this injury. Accordingly, we conclude that Strohl is not entitled to relief on this claim.

---

concerns an evidentiary issue that was involved in both his guilty plea to December 27th burglary and the instant murder prosecution.

[4] We note that this Court may affirm the decision of the trial court if there is any basis on the record to support the trial court's action; this is so even if we rely on a different basis in our decision to affirm. *Commonwealth v. Garcia*, 746 A.2d 632, 638 (Pa. Super. 2000).

In his third claim of ineffective assistance of counsel, Strohl argues that the PCRA court erred in concluding that Strohl's trial counsel did not render ineffective assistance by failing to object to alleged misstatements made by the trial court during its jury instructions. Specifically, Strohl argues that the trial court misstated the testimony of William Notti ("Notti") when explaining the accomplice liability charge. Strohl contends that the misstatement of the trial court "place[d] Strohl and an accomplice directly inside the victim's house on Friday night when the alleged assault occurred." Brief for Appellant at 32.

We conclude that Strohl cannot succeed on his third claim of ineffective assistance of counsel as Strohl failed to prove actual prejudice. As previously discussed, the evidence showed Strohl confessed to Shull during the Saturday burglary that he had had kicked the victim in the head during the Friday burglary. However, Strohl argues that Shull's testimony should not be considered due to the fact that Shull's testimony was inconsistent and came from a "corrupt and polluted source." Brief for Appellant at 32.[5] We find no merit to this argument. The credibility of witnesses and weight of evidence are determinations that lie solely with the trier of fact. *Commonwealth v. Williams*, 854 A.2d 440, 445 (Pa. 2004). The trier of fact is free to believe all, part, or none of the evidence. *Id.*

---

[5] The record reflects that trial court provided a "corrupt source" jury instruction with respect to Shull's testimony. *See* N.T., 3/15/01, at 1070-71.

Here, the jury obviously found Shull's testimony to be credible. This Court will not reweigh the evidence and substitute our judgment for that of the fact finder. *Id.* (citing **Commonwealth v. Pronkoskie**, 445 A.2d 1203, 1206 (Pa. 1982)). Strohl has failed to establish prejudice due to the fact that Shull's testimony, which was obviously credited by the jury, placed Strohl at the victim's house on Friday. Accordingly, Strohl is not entitled to relief on the grounds of an alleged misstatement by the trial court during the jury instructions.

Strohl next argues that the PCRA court erred in denying his PCRA Petition on the basis that his trial counsel provided ineffective assistance by failing to request an aggravated assault jury instruction. Upon review of the briefs and the PCRA Court Opinion, we conclude that the PCRA court properly found that Strohl failed to demonstrate actual prejudice as a result of his trial counsel's failure to request a jury instruction on aggravated assault. Accordingly, we rely on the PCRA court's Opinion in support of our decision and affirm on the basis of that Opinion. **See** PCRA Court Opinion, 6/15/04, at 12-13.

In his fourth claim of ineffective assistance of counsel, Strohl asserts that his trial counsel was ineffective for failing to move to quash the indictment filed against him on the basis of prosecutorial and police misconduct. Strohl argues that the prosecutor impermissibly shaped a witness's testimony during the grand jury proceedings. The PCRA court

concluded that the issue was moot as Strohl had been convicted by a jury. *Id*. at 18. We agree. "[O]nce an indictment has been approved, the preliminary proceedings are not subject to either direct or collateral attack because the defendant has been afforded an independent determination that a prima facie case exists." **Commonwealth v. Gordon**, 385 A.2d 1013, 1015 (Pa. Super. 1978). At trial, an independent analysis of the facts was conducted, during which Strohl's trial counsel undertook extensive cross-examination of the witness concerning the inconsistencies in his prior grand jury testimony. **See** N.T., 3/9/01, 608-31. Accordingly, we agree with the PCRA court and conclude that this issue is moot.

Strohl next argues that his trial counsel rendered ineffective assistance of trial counsel by failing to request an adverse inference jury instruction. Specifically, Strohl contends that his trial counsel was ineffective for failing to secure an adverse inference instruction concerning the destruction of the victim's medical records by LifeQuest Nursing Center. Upon review of the briefs and the PCRA court's Opinion, we conclude that the PCRA court properly determined that Strohl was not entitled to relief on the basis of this claim and we adopt the PCRA court's reasoning as our own. **See** PCRA Court Opinion, 6/15/04, at 18-19. We note that trial counsel can never be deemed ineffective for failing to raise a claim that is without merit. **Commonwealth v. Roberts**, 681 A.2d 1274, 1276 (Pa. 1996).

In his last claim of error, Strohl asserts that the PCRA court erred when it concluded that his trial counsel was not ineffective for failing to call a potential alibi witness. When raising a claim that counsel was ineffective for failing to call an alibi witness, an appellant is required to do all of the following:

(1)    identify the witness or witnesses;

(2)    demonstrate that counsel actually knew, or had a duty to know, the identity of the witness or witnesses prior to trial;

(3)    demonstrate that the witness or witnesses were ready, willing and able to testify for the defense at trial; and

(4)    demonstrate that the proposed testimony would have been helpful to the defense asserted at trial.

See *Commonwealth v. Brown*, 767 A.2d 576, 581-82 (Pa. Super. 2001). "A failure to call a witness is not *per se* ineffective assistance of counsel for such decision usually involves matters of trial strategy." *Commonwealth v. Auker*, 681 A.2d 1305, 1319 (Pa. 1996).

Strohl contends that his father, Robert Strohl ("Robert"), was an alibi witness. In an affidavit, Robert states that he was prepared to testify the he picked Strohl up from work on Friday, December 26th, and took Strohl to their home. According to Robert's affidavit, he would have testified that Strohl did not leave their residence while his father was awake. However, Robert would have testified that he went to bed at 11:15 p.m., prior to the relevant time period. In its Opinion, the trial court addressed Strohl's claim of ineffective assistance of counsel and concluded that it was without merit

as the proposed testimony did not concern the relevant time period. We agree with the reasoning and conclusion reached by the PCRA court, and affirm on the basis of its well-reasoned Opinion with regard to this claim. **See** PCRA Court Opinion, 6/15/04, at 20-21.

Order affirmed.

Judgment Entered:

Prothonotary

Date: MAY 1 3 2005

IN THE COURT OF COMMON PLEAS OF NORTHAMPTON COUNTY
PENNSYLVANIA
CRIMINAL DIVISION

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | ) | |
| | ) | |
| | ) | |
| | ) | |
| v. | ) | |
| | ) | No. 829-2000 |
| | ) | |
| JOSEPH MICHAEL STROHL | ) | |
| | ) | |
| | ) | |

**MEMORANDUM OPINION**

This matter is before the court on the Post Conviction Relief Act (P.C.R.A.), 42
Pa.C.S.A. §9541 et seq., petition of Joseph M. Strohl arising from his conviction of murder in
the second degree. There was a burglary at the residence of, and assault against Ella Wunderly,
an elderly neighbor of petitioner, on December 26, 1986, and another burglary of the residence
on December 27, 1986. In 1987, petitioner pleaded guilty to the December 27th burglary. As a
result of the December 26th attack, the victim was rendered comatose. She died in April 1994.
An investigative grand jury convened in 1999 resulting in a presentment of criminal homicide
against petitioner. A jury trial was held on the matter in March 2001, resulting in a verdict of
guilty to second degree murder. Petitioner was subsequently sentenced to life in prison.

Petitioner raises nine issues in this petition. Hearings were held on January 23, 2004,
January 30, 2004, and January 27, 2004, and oral argument heard on June 1, 2004. Petitioner

chose to not be represented by counsel for these proceedings. This court appointed standby counsel, who assisted petitioner, at the P.C.R.A. hearings. We now consider each of petitioner's contentions.

## A. BRADY ISSUE

Petitioner first contends that the Commonwealth violated its obligation under *Brady v. Maryland*, 373 U.S. 83, 10 L.Ed.2d 215 (1963), to disclose exculpatory evidence. To assess a claim for violation of *Brady* and its progeny, the court must examine the evidence utilizing a three part inquiry consisting of: (1) whether evidence was suppressed by the prosecution; (2) whether the evidence is favorable to the defendant; and (3) whether the defendant was prejudiced. *Commonwealth v. Paddy*, 800 A.2d 294 (Pa. 2002). The element of prejudice requires a showing of materiality. *Id*.

> Under the *Brady* rule, the prosecution is not required to provide every piece of evidence which might possibly assist the preparation of the defense. Rather, a *Brady* violation occurs only when the nondisclosure is material to guilt or punishment. Evidence is material if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A reasonable probability, in turn, is a probability sufficient to undermine confidence in the outcome.

*Id* at 305,6.

The materials that form the basis of petitioner's *Brady* claim consist of two Lehigh Valley Hospital reports, and a station complaint authored by Officer William Gerancher of the North Catasauqua Police Department.

## 1. The Lehigh Valley Hospital Medical Reports

The hospital records now offered by petitioner as alleged *Brady* material consist of a history and physical examination record of the victim authored by Dr. Tamar Earnest, and a

neurosurgical portion of the victim's discharge summary authored by Dr. Harry Stephens. Dr. Earnest's report indicates that the victim suffered an intracranial hematoma in the left parietal temporal area of the brain, a left orbital fracture, bilateral maxillary sinus fractures, facial contusions, and subcutaneous air on the face. Dr. Stephens's report contains a summary of a CAT scan performed on the victim showing, inter alia, a large intercerebral hematoma in the left occipital parietal area of her brain, and contusions on multiple small areas of the brain, and notes that surgery was performed to address the problems. The reports are evidence that the victim did not have a depressed skull fracture with a portion of the skull driven into her brain at the time of admission to the hospital for treatment. The reports were not made available to petitioner at trial, even though requested during discovery. Petitioner obtained the reports after his trial in preparation for a federal civil suit in response to a subpoena to the hospital.

The medical reports do not meet the first requirement of the *Brady* test. These reports were not in the custody of the Commonwealth prior to trial. Rather, they were in the possession of Lehigh Valley Hospital. Despite a subpoena to the records custodian of Lehigh Valley Hospital prior to trial, these records were not provided. After the completion of the criminal trial, petitioner again issued a subpoena to Lehigh Valley Hospital for use in a federal civil suit. At that time, the two hospital reports not previously provided were made available. Therefore, the evidence was not suppressed by the Commonwealth prior to trial.

Petitioner argues that the Commonwealth should be charged with constructive knowledge of the Lehigh Valley Hospital reports in order to satisfy *Brady's* first prong. We find the argument without merit. There is no showing that the Commonwealth knew or should have known of the existence of the reports which were in the possession of the hospital. Because

-3-

petitioner has not demonstrated a violation of *Brady's* first requirement, we need not consider the other two, and we find that no *Brady* violation occurred.

2. The Catasauqua Police Department Station Complaint

The station complaint consists of a half page report which states that Patricia Cecala phoned the police to report that a purse was found. The form is dated December 29, 1986, at 7:30 p.m., with a notation stating "delayed entry."

Joseph Cecala testified at trial that while he and his wife (Patricia) were driving in their car on a Saturday morning, he observed a purse on the side of the road. N.T. 579-580. Mr. Cecala testified that the purse was not retrieved until the next day. N.T. 580. Patricia Cecala testified at trial that she and her husband saw a purse on a Saturday, and that she and her daughter retrieved the purse the following day. N.T. 593 Mrs. Cecala also recalled calling a man about the purse the same day it was retrieved. N.T. 593-594. Officer William Gerancher testified at trial that he received a call from the victim's son on Monday informing him that a woman had found his mother's purse. N.T. 434-435.

At the P.C.R.A. hearing, Officer Gerancher, the author of the station complaint, and Patricia Cecala, testified that the station complaint did not alter their prior testimony at trial concerning the circumstances under which the victim's purse was found and recovered. Furthermore, Officer Gerancher prepared a more complete and detailed report for trial that was available for petitioner's use at that time. Based on the foregoing, petitioner has failed to demonstrate how the newly discovered station complaint is material to a determination of his guilt or innocence, Therefore, there is no *Brady* violation.

B. AFTER DISCOVERED EVIDENCE ISSUE

Petitioner's second argument is that he is entitled to a new trial based on after-discovered evidence. 42 Pa.C.S.A. § 9543(a)(2)(vi) provides for post conviction relief when petitioner pleads and proves by a preponderance of the evidence that his conviction resulted from the "unavailability at the time of trial of exculpatory evidence that has subsequently become available and would have changed the outcome of the trial had it been introduced." Therefore, the grant of a new trial on the basis of after discovered evidence is required when the following four conditions are met: (1) the evidence has been discovered after trial and could not have been obtained prior to the conclusion of trial by the exercise of due diligence; (2) the evidence is not merely corroborative or cumulative; (3) the evidence will not be used solely for impeachment purposes; and (4) the evidence is of such a nature and character that a different verdict will likely result if a new trial is granted. *Commonwealth v. Bormak*, 827 A.2d 503 (Pa.Super. 2003); *Commonwealth v. Fiore*, 780 A.2d 704 (Pa.Super. 2001).

The materials which form the basis of petitioner's after-discovered evidence claim consist of the previously mentioned two Lehigh Valley Hospital reports, and the station complaint authored by Officer William Gerancher of the North Catasauqua Police Department.

1. The Lehigh Valley Medical Reports

Petitioner has attached to his P.C.R.A. petition the original subpoena from the criminal trial issued by the defense to the records custodian of Lehigh Valley Hospital requesting all records for Ella Wunderly. The two hospital reports now offered as after discovered evidence were not provided by Lehigh Valley Hospital in response to the subpoena. After the completion of the trial, petitioner again issued a subpoena for the records to Lehigh Valley Hospital for use

in a federal civil suit. The two hospital reports not previously provided were made available. Therefore, we find petitioner has demonstrated that the newly discovered Lehigh Valley Medical reports of Dr. Stephens and Dr. Earnest meet the first prong of §9543(a)(2)(vi) in that they were discovered after trial and could not have been obtained prior to the conclusion of trial by the exercise of due diligence.

We also find that the new medical records are not merely cumulative of the evidence presented at trial; nor would they be used solely to impeach credibility. The new Lehigh Valley Hospital records are evidence that the victim did not have a depressed skull fracture with a portion of the skull driven into her brain at the time of admission to the hospital for treatment. This evidence was unavailable from other sources at the time of trial and differs from the testimony of the commonwealth's experts offered at trial. Therefore the second and third prongs of §9543(a)(2)(vi) are satisfied.

Regarding the final requirement, that such evidence would likely compel a different verdict, at trial, Isadore Mihalakis, M.D., a forensic pathologist who examined the victim around midnight December 28, 1986, stated that the victim sustained blunt force injuries sometime on Friday, December 26, 1986. N.T. 187, 205-206, 208. He also stated that the blunt force injuries were the cause of the victim's unconsciousness. N.T. 207. Mihalakis also testified that he reviewed the autopsy report prepared by Halbert Fillinger, M.D., which also contained a report prepared by Lucy Rorke, M.D., a neuropathologist. N.T. 209. It was Mihalakis's opinion that Fillinger's determination that the cause of death was bronchopneumonia as a result of multiple blunt force injuries was consistent with the injuries Mihalakis observed in 1986. N.T. 210, 212.

Halbert Fillinger, M.D., who testified at trial as an expert in forensic pathology,

-6-

conducted the autopsy of the victim on April 22, 1994. N.T. 333-334, 336-337. He testified that

the victim was well-nourished and well-cared-for prior to her death. N.T. 341, 344. He also

testified that he knew from the victim's history that she had received multiple blows to the head

and that it was multiple impacts that caused the damage to the victim's head that he observed

during his examination. N.T. 356-357. It was Fillinger's opinion that the cause of death was

bronchopneumonia resulting from the comatose condition which had been caused by multiple

injuries to the victim's head. N.T. 358. Fillinger testified that people who are immobilized are at

a great risk for developing pneumonia and that, because the victim was rendered unconscious and

immobilized after the assault, fluids collected in her lungs over time and provided a source of

infection and inflammation. N.T. 358-359. It was also Fillinger's opinion that the manner of

death was a homicide. N.T. 362-363. Fillinger stated that in his opinion, which he held to a

reasonable degree of medical certainty, the condition of the victim's head as he observed it in

1994 was consistent with the injuries described by Mihalakis. N.T. 360.

Lucy Rorke, M.D., who testified at trial as an expert in the field of neuropathology,

conducted a post-mortem examination of the victim's brain pursuant to Fillinger's request. N.T.

264-265. She observed a number of injuries to the brain that were caused by blunt force trauma,

which was consistent with the victim's history. N.T. 296, 299. It was her opinion, to a

reasonable degree of medical certainty, that Fillinger's determination as to the cause of death was

consistent with injuries to the brain that she observed. N.T. 300.

Paul J. Hoyer, M.D., who testified at trial as an expert in forensic pathology for the

defense, testified that he agreed with Fillinger's determination that bronchopneumonia was the

cause of death. N.T. 864, 872, 892. Hoyer also agreed that the head injuries sustained by the

victim resulted in the victim being permanently bedridden. N.T. 886. Hoyer specifically stated that "it seems highly likely that the head injuries had something to do with [the victim's] death." N.T. 893.

Dr. Mihalakis testified again at the P.C.R.A. hearing that his expert opinion at trial that the cause of the victim's death from bronchopneumonia due to the comatose condition resulting from multiple injuries to the head from blunt force trauma, was unaltered by the newly discovered evidence. P.C.R.A. N.T. 183, 184. Dr. Mihalakis also testified at the P.C.R.A. hearing that the new medical records are consistent with prior medical findings. P.C.R.A. N.T. 183, 184. Both Dr. Mihalakis and Dr. Earnest, who authored one of the reports in question, testified at the P.C.R.A. hearing that the depressed skull fracture observed at the victim's autopsy was likely a surgical remnant created during the evacuation of an intercerebral hemorrhage. P.C.R.A. N.T. 170-71, 180, 185, 212.

The newly discovered medical reports do not undermine the Commonwealth's contention on causation that petitioner's conduct started a chain of events which ultimately resulted in the victim's death. The Commonwealth contended at trial that the victim's death in 1994 was caused by the assault perpetrated in 1986. That is, the blunt force blow to her head caused her to become comatose. Eventually, the comatose state resulted in the bronchopneumonia which caused her to die. Whether the skull fracture observed at the autopsy resulted directly from the blow or from surgery necessitated by the blow to her head is irrelevant. The Commonwealth's contention, which was accepted by the jury, was that death was caused by striking the victim in the head resulting in a coma which ultimately led to bronchopneumonia. The blow caused the death, regardless of whether or not it caused a depressed skull fracture, by putting the victim into

-8-

the comatose state from which she never recovered.  *See Commonwealth v. Shoup*, 620 A.2d 15

(Pa.Super. 1993) (Criminal responsibility is properly assessed against one whose conduct was a

direct and substantial factor in producing the death even though other factors combined with that

conduct to achieve the result.  So long as the defendant's conduct started the chain of causation

which led to the victim's death, criminal responsibility for the crime of homicide may properly

be found.).  Therefore, we find that petitioner has not proven by a preponderance of the evidence

that taking into consideration the new evidence, a different verdict would likely result.

2.  The Catasauqua Police Department Station Complaint

The station complaint now offered as after discovered evidence was not provided to

petitioner in preparation for or during trial, despite prior discovery requests for all police records

pertaining to this matter.  Therefore, we find the first prong of § 9543(a)(2)(vi) satisfied in that

the evidence has been discovered after trial and could not have been obtained prior to the

conclusion of trial by the exercise of due diligence.

However, under the P.C.R.A., a petitioner asserting an after discovered evidence claim

must show that the new facts constitute exculpatory evidence.  *Commonwealth v. Gallman*, 838

A.2d 768 (Pa.Super. 2003). For after discovered evidence to be exculpatory, it must be material

to a determination of guilt or innocence.  *Commonwealth v. Small*, 741 A.2d 666 (Pa. 1999).

The station complaint consists of a half page report and states that Patricia Cecala phoned the

police to report that a purse was found.  The complaint is dated December 29, 1986 at 7:30 p.m.,

and a notation appears stating it is a "delayed entry."  At the P.C.R.A. hearing, Officer

Gerancher, the author of the station complaint, Chief of Police Moyer, and Patricia Cecala, all

testified that the station complaint did not alter their prior testimony at trial concerning the

-9-

circumstances under which the victim's purse was found and recovered. Furthermore, Officer

Gerancher prepared a more complete and detailed report for trial that was available for

petitioner's use at that time. Petitioner has failed to demonstrate how the newly discovered

station complaint is material to a determination of his guilt or innocence. Therefore, we find that

petitioner has not met his burden under 42 Pa.C.S.A. § 9543(a)(2)(vi).

## C. COLLATERAL ESTOPPEL ISSUE

Petitioner's third claim is that his counsel were ineffective because counsel did not move

to preclude the admission of evidence allegedly barred by collateral estoppel. The standard to

obtain relief under the P.C.R.A. premised upon a claim that counsel was ineffective requires a

petitioner to establish by a preponderance of the evidence that counsel's ineffectiveness so

undermined the truth determining process that no reliable adjudication of guilt or innocence

could have taken place. *Commonwealth v. Loner*, 836 A.2d 125 (Pa.Super. 2003).

> This requires the petitioner to demonstrate that: (1) the underlying claim is of
> arguable merit; (2) counsel had no reasonable strategic basis for his or her action
> or inaction; and (3) petitioner was prejudiced by counsel's act or omission. *Id.* at
> 905-06. The law presumes that counsel was effective, and it is the petitioner's
> burden to prove otherwise. *Id.* at 906. Counsel cannot be deemed ineffective for
> failing to pursue a meritless claim. *Id.* Trial counsel's strategic choices cannot be
> the subject of a finding of ineffectiveness if the decision to follow a particular
> course of action was reasonably based and was not the result of sloth or ignorance
> of available alternatives. *Commonwealth v. Collins,* 519 Pa. 58, 65, 545 A.2d
> 882, 886 (1988) (cited with approval by *Commonwealth v. Hall,* 549 Pa. 269, 297,
> 701 A.2d 190, 204 (1997)). Counsel's approach must be "so unreasonable that no
> competent lawyer would have chosen it." *Commonwealth v. Ervin,* 766 A.2d 859,
> 862-63 (Pa.Super.2000), *appeal denied,* 568 Pa. 627, 793 A.2d 904 (2002), *cert.
> denied,* 536 U.S. 939, 122 S.Ct. 2620, 153 L.Ed.2d 803 (2002). Furthermore,
> counsel's effectiveness cannot be evaluated in hindsight but must be examined in
> light of the circumstances as they existed at the pertinent time. *Commonwealth v.
> Hardcastle,* 549 Pa. 450, 464, 701 A.2d 541, 547 (1997).

> Counsel will not be deemed ineffective if any reasonable basis exists for his or her actions. *Commonwealth v. Douglas,* 537 Pa. 588, 597, 645 A.2d 226, 231 (1994). Even if counsel had no reasonable basis for the course of conduct pursued, a defendant is not entitled to relief if he fails to demonstrate "prejudice" as that element is defined under Pennsylvania's ineffectiveness standard. *Id.* at 599, 645 A.2d at 232. In assessing a claim of ineffectiveness, when it is clear that the defendant has failed to meet the prejudice prong, the court may dispose of the claim on that basis alone without any further determination. *Commonwealth v. Travaglia,* 541 Pa. 108, 118, 661 A.2d 352, 357 (1995).

*Id.* at 132-33. To prove "prejudice," petitioner must show that but for counsel's act or omission, the outcome of the proceedings would have been different. *Commonwealth v. Fowler*, 703 A.2d 1027 (Pa. 1997).

Petitioner argues that trial counsel failed to pursue a collateral estoppel claim based on petitioner's prior guilty plea to burglarizing the victim's home on Saturday, December 27, 1986. He argues that the Commonwealth should not have been permitted in the murder trial to relitigate an issue of fact already determined in a prior proceeding concluding in a valid and final judgment. Specifically, petitioner contends that since a purse was mentioned at the guilty plea by the testifying officer as one of the several items taken from the victim's home during the December 27 burglary, the Commonwealth should have been precluded from using evidence concerning the purse in proving the burglary on December 26, which formed the underlying felony for petitioner's felony murder conviction.

Collateral estoppel is embodied in the Fifth Amendment pursuant to the holding in *Ashe v. Swenson*, 397 U.S. 436, 25 L.Ed.2d 469 (1970). Pennsylvania courts have employed a three part test in the application of the doctrine of collateral estoppel: (1) while the crimes charged as part of the two offenses need not be identical, the issues must be similar and material; (2) collateral estoppel only precludes redetermination of those issues necessarily determined and

-11-

litigated between the parties in the first proceeding; and (3) collateral estoppel requires a final

judgement in the first proceeding. *Commonwealth v. Garcia*, 746 A.2d 632 (Pa.Super. 2000).

In 1987, when petitioner pleaded guilty to a burglary which occurred on December 27,

1986, the Commonwealth did not charge petitioner in connection with the burglary and assault

occurring on December 26, 1986. The Commonwealth was careful to make explicitly clear that

the burglary to which petitioner pleaded guilty was distinct and separate from any prior criminal

activities occurring at the Wunderly residence in which petitioner participated. The fact that a

police officer present at the 1987 guilty plea added the word "purse" to the list presented by the

prosecutor of items missing from the residence is immaterial. The guilty plea was to burglary,

not theft. Burglary is defined as "enter[ing] a building or occupied structure, or separately

secured or occupied portion thereof, with intent to commit a crime therein, unless the premises

are at the time open to the public or the actor is licensed or privileged to enter." 18 Pa.C.S.A.

§3502. Therefore, it is the criminal intent and unlawful entry that are essential for a burglary

conviction, not the actual theft of items. Whether or not a purse was actually taken during the

December 27, 1986, break-in is entirely superfluous, i.e., the theft of the purse was not a fact

essential to the conviction for burglary. Therefore, there is no merit to petitioner's collateral

estoppel claim, and counsel was not ineffective for not pursuing the claim.

D. LESSER INCLUDED OFFENSE ISSUE

Petitioner's fourth claim is that counsel was ineffective for failure to request the trial

court to instruct the jury on aggravated assault, as a lesser included offense. We find this

contention without merit.

The failure to request a charge on aggravated assault did not cause prejudice to petitioner.

-12-

The jury had the option of convicting petitioner of third degree murder instead of second degree murder. It chose not to do so. Thus, the jury would not have returned a verdict of guilty of assault out of sympathy or in recognition of factors they may have deemed mitigating where these factors were not sufficiently compelling to cause the jury to elect the lesser degree of homicide that was offered. See *Commonwealth v. Taylor*, 502 A.2d 195 (Pa.Super. 1985) (Failure to request an imperfect self-defense voluntary manslaughter jury instruction and to object to trial court's omission of defense in its charge, assuming there was some reasonable basis for such instruction, was not a basis for granting defendant postconviction relief on theory of ineffectiveness of counsel where defendant was not prejudiced thereby in that the trial court charged the jury on first and second degree murder, voluntary manslaughter, and involuntary manslaughter, yet the jury returned a verdict of guilty of first degree murder, thus establishing that the jury would not have exercised its mercy-dispensing power, even if correctly instructed). See also *Commonwealth v. Bradley*, 480 A.2d 1205 (Pa.Super. 1984) (Defendant cannot demonstrate prejudice from the trial court's refusal to charge on voluntary manslaughter because the jury was instructed on first and second degree murder and elected not to return a verdict on the lesser of the alternatives given). Therefore, we find that because petitioner cannot demonstrate prejudice, counsel was not ineffective.

Further, the jury was fully instructed on the causation issue. There is no basis to find that the jury would have resolved causation differently if aggravated assault was an option. Conjecture is not a basis for relief under the Post Conviction Relief Act. *Commonwealth v. Howard*, 749 A.2d 941 (Pa.Super. 2000).

## E. INVOLUNTARY MANSLAUGHTER INSTRUCTION ISSUE

Petitioner's fifth claim is that counsel was ineffective for failure to request an instruction on involuntary manslaughter. It is not the function of the trial court to instruct the jury on legal principles which have no application to the facts presented at trial. *Commonwealth v. White*, 415 A.2d 399 (Pa. 1980). It is the duty of the jury to render a correct and true verdict. Instructing the jury on legal principles that cannot rationally be applied would only serve to obfuscate that responsibility. In a murder prosecution, an involuntary manslaughter charge may only be given when the offense has been made an issue, and the evidence at trial reasonably would support such a verdict. *Com. v. White, supra*, at 402. See *Commonwealth v. Soltis*, 687 A.2d 1139 (Pa.Super. 1996).

Petitioner points to no evidence that could reasonably be interpreted to show that the victim's death was an accident caused by petitioner's extreme carelessness. ("A person is guilty of involuntary manslaughter when as a direct result of the doing of an unlawful act in a reckless or grossly negligent manner, or the doing of a lawful act in a reckless or grossly negligent manner, he causes the death of another person." 18 Pa.C.S.A. §2504.)

Moreover, where petitioner fails to prove prejudice, a claim of ineffective assistance of counsel may be rejected upon that basis alone. *Commonwealth v. Hutchinson*, 811 A.2d 556 (Pa. 2002). The same reasoning behind petitioner's failure to demonstrate prejudice in his aggravated assault jury instruction claim applies with equal force here. The jury chose the harsher of the homicide options presented. Thus, there is no basis to conjecture that the jury would have exercised a mercy-dispensing function and returned an involuntary manslaughter verdict. Based on the foregoing, counsel was not ineffective for not requesting that the jury be

-14-

instructed on the offense of involuntary manslaughter.

F. SUMMARY OF EVIDENCE ISSUE

Petitioner's sixth claim is that counsel was ineffective for failing to object to the trial court's summary of the evidence to the jury. Specifically, petitioner argues that he was prejudiced when the trial court misstated the evidence regarding the testimony of the witness, William Notti, and counsel failed to object to the alleged misstatement.

Petitioner claims that a misstatement of the evidence occurred during the trial court's explanation of accomplice liability to the jury. The trial court explained, in accordance with Pennsylvania Standard Jury Instruction 15.2502 B, that to find the defendant guilty of second degree murder, the Commonwealth must prove beyond a reasonable doubt that first, the defendant's partner, if he had one in the burglary, caused the death of the victim; second, that he did so while he and the defendant were partners in committing the burglary; third, that the partner, if there was one, caused the death of the victim in furtherance of the burglary; and fourth, that the defendant was acting with malice. N.T. 1087. The trial judge then went on to explain that:

> [w]ith regard to the term "in furtherance" as I have used it, a partner's act that kills is not in furtherance of the felony if a partner does the act for his own personal reasons which are independent of the felony. Now, the reason I have instructed you on that provision of the law is there was some testimony from Mr. Notti that on the first night when he drove the car there, Mr. Strohl got out and another person, he didn't remember precisely who it was, went into the house.

N.T. 1088.

At trial, Notti testified that on a Friday or Saturday night around the Christmas holiday of 1986, he drove petitioner and Robert Pearson and/or Robert Shull to petitioner's neighborhood.

According to Notti, petitioner had him park at the end of an alley and stated that he was going to obtain some money. N.T. 601, 602, 604. Notti stated that petitioner and either Pearson or Shull left the vehicle and returned approximately five to ten minutes later. N.T. 604. Notti testified that petitioner was carrying a purse or handbag wrapped up in something, possibly a shirt. N.T. 606. According to Notti, petitioner then stated to the third person, "I wonder if she's okay." N.T. 606. Upon Notti's inquiry as to what petitioner was referring to, petitioner replied, "Shut ... up ... or I'll kill you, too." N.T. 606. Notti further testified that the occupant in the rear seat of the vehicle later threw something out of the window as he was driving that night. N.T. 607.

Petitioner argues that the judge's statement that Notti testified that he drove petitioner to the house on the "first night" amounts to prejudicial error requiring reversal. We disagree. The trial judge did not mischaracterize the evidence. Notti's testimony placed petitioner in the vicinity of the scene of the crime on either Friday or Saturday night. N.T. 602. Furthermore, one can infer from the rest of Notti's testimony that he was speaking of Friday night, based on hearing petitioner's and his other passenger's remarks concerning whether the victim was okay and Notti's testimony that petitioner returned to the car carrying a purse. N.T. 606. This, coupled with the testimony of Joseph Cecala that he saw the victim's purse discarded on the side of the road on the morning of Saturday, December 27, lends further support to the inference. N.T. 580.

Even if there had been a misstatement by the trial judge, not every variance between the evidence and the judge's summary of the evidence to the jury constitutes prejudicial error. *Commonwealth v. Irwin,* 431 A.2d 257 (Pa. 1981). However, the trial judge must avoid material misstatements of the evidence presented in the case. *Id.* A material misstatement involves a variance between the actual testimony of the witness and the judge's summation of it, of such a

-16-

nature as to seriously prejudice the interests of the defendant and to deprive him of a fair trial. *Id.*

When reviewing a misstatement, the charge to the jury must be considered as a whole, because

prejudicial error cannot be predicated on isolated excepts of the charge. *Id.* The general effect of

the charge controls. *Id.*

The jury was specifically instructed that the Commonwealth was required to prove that

petitioner participated in the earlier burglary when the victim was attacked. N.T. 1084-85.

Furthermore, the trial judge was careful to instruct the jurors that their recollection as to the facts

controlled, and that they should disregard contrary recollections of the facts from counsel or the

trial court. The judge stated to the jury: "if my recollection of the testimony is different than

yours, you are bound solely by your recollection and not by mine, since, as I've already told you,

you and you alone are the sole judges of the facts in this case." N.T. 1062. In light of the

evidence and the trial judge's unambiguous instructions to the jury read as a whole, we conclude

that the trial judge's statement to the jury regarding the explanation of "in furtherance" was

neither erroneous nor prejudicial.

G. MOTION TO QUASH THE INDICTMENT ISSUE

Petitioner's seventh claim is that counsel was ineffective by not filing a motion to quash

the indictment based upon alleged misconduct by the assistant district attorney surrounding the

testimony of William Notti before the grand jury. Petitioner argues that Notti's testimony was

impermissibly shaped by prosecutorial misconduct at the grand jury proceedings, and that

counsel should have moved to quash the indictment as a result.

It is the function of the prosecuting officer to attend grand jurors with regard to matters on

which they are to pass, to assist in the examination of witnesses, and to give such general

-17-

instructions as they may require, but he must not attempt to influence their action, nor should he be present while they are deliberating or voting on a matter under investigation. *Commonwealth v. Smart*, 369 Pa. 630, 84 A.2d 782 (1951). The grand jury transcripts do not reveal that the assistant district attorney illegally influenced the grand jury to indict petitioner, or suborned perjury by Notti to secure an indictment. Furthermore, at trial, counsel for petitioner strategically and thoroughly challenged Notti on his prior inconsistent statements. N.T. 608-631. Counsel's approach in an attempt to discredit Notti's testimony was a reasonably chosen and executed strategy. In addition, the fact that petitioner was convicted at his trial renders any claim that presentment from the grand jury was not supported by probable cause moot. See *Commonwealth v. Rashed*, 436 A.2d 134 (Pa. 1981). Therefore, counsel was not ineffective for failing to file a motion to quash based on alleged grand jury misconduct.

H. ADVERSE INFERENCE ISSUE

Petitioner's eighth claim is that trial counsel was rendered ineffective for failing to object and preserve for appeal the trial court's determination not to give an adverse inference jury instruction based on medical records that were unavailable for use at trial.

The missing records that form the underlying basis of petitioner's adverse inference claim are medical records of the victim that were kept by Life Quest Nursing Center. In preparation for trial, petitioner subpoenaed Life Quest. In response, petitioner received a letter from Life Quest explaining that in addition to the records being provided, that boxes of records containing doctor's orders and progress notes were accidentally destroyed a few years prior. P.C.R.A. Petition Exhibit 11. Petitioner argues that the unavailability of these records entitled him to an adverse inference instruction.

-18-

The decision whether to tell the jury an unfavorable inference may be drawn from the failure of a party to produce some circumstance, witness, or document is one which lies within the sound discretion of the trial court and which will not be reversed absent manifest abuse. *Magette v. Goodman*, 771 A.2d 775 (Pa.Super. 2001). "The general rule is that [ ][w]here evidence which would properly be part of a case is within the control of the party in whose interest it would naturally be to produce it, and without satisfactory explanation he fails to do so, the jury may draw an inference that it would be unfavorable to him." *Id* at 780. At trial, the court made the determination that the lost and destroyed medical records complained of were not the responsibility of the Commonwealth because there was no showing that the Commonwealth had control over such records, and they were lost by a third party. N.T. 823-24. Because the records were under the control of a third party and not the Commonwealth, the so called "spoliation doctrine" has no application here. See *Duquesne Light Co. v. Woodland Hills School Dist.*, 700 A.2d 1038 (Pa.Cmwlth. 1997). (The doctrine of spoliation attempts to compensate those whose legal rights are impaired by the destruction of evidence by creating an adverse inference against the party responsible for the destruction.) There is no indication in the record that the lost and destroyed medical records were in any way under the control of the Commonwealth. Thus, the trial judge properly refused to charge that failure to produce the records warranted an inference unfavorable to the Commonwealth. See *Commonwealth v. Christina*, 391 A.2d 1307 (Pa. 1978); see also *Commonwealth v. Culmer*, 604 A.2d 1090 (Pa.Super 1992) (when witness unavailable to both parties, adverse inference instruction not warranted). Therefore, petitioner has failed to demonstrate that counsel was ineffective by not pursuing a meritless claim.

-19-

## I. CALLING A WITNESS ISSUE

Petitioner's ninth and final claim is that trial counsel was ineffective for failing to call Robert Strohl, petitioner's father, as a witness at trial. Petitioner argues that by choosing not to call Robert Strohl as a witness at trial, counsel prevented the jury from hearing testimony favorable to his defense.

To prove that trial counsel was ineffective for failing to call a witness to testify on his behalf, petitioner is required to demonstrate that: (1) the witness existed and was available; (2) counsel was aware of the existence of the witness, or should have known of his existence and availability; (3) the proposed witness was ready, willing and able to testify on behalf of petitioner; and (4) the absence of the proposed testimony prejudiced him. *Commonwealth v. Lopez*, 739 A.2d 485 (Pa. 1999).

It is undisputed that petitioner meets the first three prongs of the *Lopez* test. However, we find that petitioner has failed to demonstrate the prejudice showing imposed by the fourth requirement. A review of the record, including the affidavit signed by Robert Strohl, see P.C.R.A. petition exhibit 4, demonstrates that he was interviewed in preparation for trial and that counsel determined he could not provide an alibi for his son because he was either not home or was sleeping during the times essential to the case against petitioner. P.C.R.A. N.T. 102, 233. Thus, counsels' decision not to call Robert Strohl was not ineffective. Petitioner's claim that his father's testimony could have cast doubt on the believability of the other witnesses who testified and somehow undermine confidence in the verdict is wholly unsupported by the record. Given the content of Robert Strohl's proposed testimony, petitioner has not demonstrated how he was

prejudiced by its absence. Therefore, we find counsel was not ineffective for not calling Robert Strohl as a witness at trial.

WHEREFORE, we enter the following:

# IN THE COURT OF COMMON PLEAS OF NORTHAMPTON COUNTY
## PENNSYLVANIA
## CRIMINAL DIVISION

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | ) |
| | ) |
| | ) |
| | ) |
| v. | ) No. 829-2000 |
| | ) |
| JOSEPH MICHAEL STROHL | ) |

## ORDER

AND NOW, this 15ᵗʰ day of June, 2004, the petition for post-conviction relief is denied.

Petitioner is hereby advised that he has the right to appeal this order to the Superior Court of Pennsylvania within thirty (30) days from the date of this order.

BY THE COURT,

_Robert A. Freedberg_
Robert A. Freedberg, P.J.

FILED

2004 JUN 16 A 8: 49

CLERK OF COMMON
PLEAS
CRIMINAL DIVISION
NORTHAMPTON CO PA