EXHIBIT J

IN THE SUPERIOR COURT OF PENNSYLVANIA

NO. 1954 EDA 2004

COMMONWEALTH OF PENNSYLVANIA
Appellee,

vs.

JOSEPH MICHAEL STROHL,
Appellant.

**BRIEF OF APPELLEE**

Appeal from Order of June 15, 2004 denying PCRA relief by the Court of Common Pleas
of Northampton County, the Honorable Robert A. Freedberg, P.J.
No. 829-2000

HONORABLE JOHN M. MORGANELLI
District Attorney
JAY W. JENKINS
Assistant District Attorney
Supreme Ct. ID 73841
Northampton County District Attorney's Office
669 Washington Street
Easton, Pennsylvania 18042
(610) 559-3020

# TABLE OF CONTENTS

Table of Citations …………………………………………….. 3

Counter-Statement of Question Involved ……………………. 4-5

Counter-Statement of the Case…………………………………….. 6-10

Summary of the Argument ……………………………….. 11-12

Argument …………………………………………….. 13-21

Conclusion …………………………………………….. 22

# TABLE OF CITATIONS

Statutes:

42 Pa.C.S.A Section 8543(a)(2)(ii).    …………………………..    17.


Cases:


Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).    13.
Moore v. Illinois, 408 U.S. 786  (1972).    ……………………………    13.
Spaziano v. Flordia, 104 S.Ct. 3154, 82 L.Ed.2d 340 (1984).    ……    19.
Strickler v. Greene, 572 U.S. 263, 119 S.Ct. 1936, 144 L.Ed.2d 286  (1999).    13.


Commonwealth v. Albrecht, 720 A.2d 693 (Pa. 1998).    ………………..    15,16.
Commonwealth v. Christina, 391 A.2d 1307 (Pa. 1978).    ………………    21.
Commonwealth v. Colson, 490 A.2d 811 (Pa. 1985).    ………………..    15,16.
Commonwealth v. Irwin, 431 A.2d 257 (Pa. 1981).    ………………..    19.
Commonwealth v. Kimball, 724 A.2d 326, 333 (Pa. 1999).    ………………..    17.
Commonwealth v. Lopez, 739 A.2d 485 (Pa. 1999).    ………………….    21.
Commonwealth v. Paddy, 800 A.2d 294 (Pa. 2002).    ………………..    13,14.
Commonwealth v. Rashed, 436 A.2d 134 (Pa. 1981).    ………………..    20.
Commonwealth v. Small, 559 A.2d 423 (Pa. 2000).    ………………..    15.
Commonwealth v. Washington, 393 A.2d 3 (Pa. 1978).    ………………..    17.


Commonwealth v. Bradley, 480 A.2d 205 (Pa.Super. 1984).    …………    18.
Commonwealth v. Culmer, 604 A.2d 1090 (Pa.Super. 1992).    …………    21.
Commonwealth v. Shoup, 620 A.2d 15  (Pa.Super. 1993).    …………    16.
Commonwealth v. Soltis, 687 A.2d 1139 (Pa.Super. 1996).    …………    18.
Commonwealth v. Taylor, 502 A.2d 195 (Pa.Super. 1985).    …………    18.

## COUNTER-STATEMENT OF QUESTIONS INVOLVED

I.      WHETHER APPELLANT IS ENTITLED TO A NEW TRIAL BECAUSE A POLICE CALL LOG FORM WAS NOT PROVIDED IN DISCOVERY.

Suggested Answer:          NO.

II.     WHETHER APPELLANT IS ENTITLED TO A NEW TRIAL BECAUSE OF ALLEGED "AFTER DISCOVERED EVIDENCE".

Suggested Answer:          NO.

III.    WHETHER TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO PURSUE DOUBLE JEOPARY AS A DEFENSE.

Suggested Answer:          NO.

IV.    WHETHER TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO REQUEST A JURY INSTRUCTION ON AGGRAVATED ASSAULT.

Suggested Answer:          NO.

V.     WHETHER TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO REQUEST A JURY INSTRUCTION ON INVOLUNTARY MANSLAUGHTER.

Suggested Answer:          NO.

VI.    WHETHER TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO OBJECT TO THE TRIAL COURT'S SUMMARY OF THE EVIDENCE AND ARGUMENT OF COUNSEL DURING JURY CHARGE.

Suggested Answer:          NO.

VII.   WHETHER TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO CHALLENGE PROSECUTORIAL MISCONDUCT IN THE GRAND JURY PROCEEDINGS.

Suggested Answer:          NO.

VIII. WHETHER TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO REQUEST AN ADVERSE INSTRUCTION BASED ON MISSING MEDICAL RECORDS.

Suggested Answer:                    NO.

IX. WHETHER TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO CALL ROBERT STROHL, THE APPELLANT'S FATHER, AS A WITNESS AT TRIAL.

Suggested Answer:                    NO.

## COUNTER-STATEMENT OF THE CASE

Ella Wunderly, an elderly woman, was brutally assaulted in her home on December 26, 1986. Mrs. Wunderly never recovered from this assault. She was rendered unconscious and immobile, and she ultimately died in April, 1994. On March 15, 2001, a jury found Joseph Strohl guilty of Second Degree Murder. Appellant was sentenced to life imprisonment.

Appellant filed Post-Sentence Motions that were denied on July 27, 2001. The Superior Court affirmed the judgment of sentence on September 11, 2002. The Supreme Court of Pennsylvania denied allocatur on February 13, 2003. The Supreme Court of the United States denied a writ of certiorari on June 2, 2003.

Appellant filed a PCRA petition on September 15, 2003. A hearing was conducted on the PCRA allegations on January 23, 2004, January 27, 2004 and January 30, 2004. Oral arguments were heard June 1, 2004. Appellant's PCRA was denied June 15, 2004.

The factual record of trial and of the PCRA hearing established, *inter alia*, the following:

1. Officer William Gerancher, who was employed in 1986 with the North Catasauqua Police Department, prepared contemporaneous with his investigation a full and detailed police report. (N.T. PCRA at 41).

2. A "station complaint" was filled out in 1986 as part of a running log of calls received at the station. (N.T. PCRA at 42).

3. The complaint book containing the "station complaint" logs on all police calls is maintained until it fills up and then is eventually placed in storage. (N.T. PCRA at 47).

4. Patricia Cecala, one of the witnesses who testified at trial about having discovered the victim's purse, testified at the PCRA hearing consistent with her trial testimony that she called a relative of the purse's owner on a Sunday. She further recalled that this was the day after she had initially seen the purse on the roadside. (N.T. PCRA at 63-65). (N.T. Trial at 593-594).

5. Officer Gerancher's detailed police report indicates on page 5 that he was contacted by the victim's son about the purse and then made contact with Patricia Cecala on Monday, December 29, 1986.

6. Officer William Gerancher and Patricia Cecala were confronted with the "station complaint" during the PCRA proceeding without affect on their recollection or testimony.

7. Joseph Cecala testified at trial that he and his wife, Patricia Cecala, had observed the purse on a Saturday and picked it up on a Sunday. (N.T. Trial at 580).

8. Trial counsel was provided with the detailed police reports and investigation notes in this case, including the police report of Officer Gerancher. (N.T. PCRA at 107).

9. Trial counsel was provided with all transcripts of the Grand Jury Testimony. (N.T. PCRA at 106).

10. Trial counsel was, through discovery, provided with volumes of medical records of the victim. (N.T. PCRA at 105).

11. Trial counsel independently investigated this case and directly subpoenaed medical records from all treating hospitals and facilities. (N.T. PCRA at 121).

12. Trial counsel strategically attacked the Commonwealth's medical experts at trial on the limited amount of information that the experts relied upon. (N.T. PCRA at 128).

13. Trial counsel strategically attacked the Commonwealth's medical experts at trial by utilizing the numerous medical records that were provided. (N.T. PCRA at 128).

14. Trial counsel strategically argued at trial that the absence of medical records created a reasonable doubt. (N.T. PCRA at 236).

15. Trial counsel presented the expert testimony of Dr. Hoyer, a defense expert, at trial. (N.T. PCRA at 236-237).

16. Trial counsel asked for and received an adverse jury instruction on the lost police evidence.

17. Trial counsel requested an adverse jury instruction on the lost medical records.

18. At trial, Dr. Isadore Mihalakis testified that the victim sustained blunt force injuries sometime on Friday, December 26, 1986. (N.T. Trial at 187).

19. Dr. Mihalakis further opined that the cause and manner of death was consistent with the injuries he observed in 1986. (N.T. Trial at 210-212).

20. At trial, Dr. Halbert Fillinger testified that the condition of the victim's head as he observed it in 1994 was consistent with the injuries observed by Dr. Mihalakis in 1986. (N.T. Trial at 360).

21. Dr. Fillinger's opined that the cause of death was bronchopneumonia resulting from multiple injuries to the victim's head. (N.T. Trial at 358).

22. Dr. Fillinger testified that the victim's immobilized and unconscious state from the assault led ultimately to her death. (N.T. Trial at 362-363).

23. Dr. Lucy Rorke testified at trial that she observed a number of injuries to the brain that were consistent with the victim's history of blunt force trauma from the 1986 assault. (N.T. Trial at 299).

24. Dr. Paul Hoyer testified at trial as an expert for the defense that the victim's 1986 head injury from the assault was at least in part a cause of her immobilization and ultimate death. (N.T. Trial at 886, 893).

25. Dr. Mihalakis did not rely upon CAT scans or Xrays in reaching the expert opinion to which he testified at trial. (N.T. PCRA at 156).

26. At trial, trial counsel pointed out Dr. Mihalakis's limited information in reaching his expert opinion. (N.T. Trial at 253).

27. According to Dr. Mihalakis, a depressed skull fracture can result from surgery to the brain. (N.T. PCRA at 171).

28. Dr. Mihalakis's expert opinion did not change even after reviewing the medical records referenced in this PCRA. (N.T. PCRA 183-184).

29. Dr. Tamar Earnest testified at the PCRA hearing that she treated Ella Wunderly shortly after her injuries in 1986. (N.T. PCRA at 201-203).

30. According to Dr. Earnest, the injuries she treated were consistent with blunt force trauma. (N.T. PCRA at 203-204).

31. Dr. Earnest specifically recalled evidence of multiple injuries to Ella Wunderly's head in 1986. (N.T. PCRA at 214).

32. Dr. Earnest noted in her testimony that the brain surgery performed in 1986 to the same area of the skull is not inconsistent with the observations made by Dr. Fillinger in the autopsy. (N.T. PCRA at 210-211). (N.T. PCRA at 215).

33. In 1987, when charges related to the Saturday, December 27, 1986 burglary were brought, Ella Wunderly was still alive.

34. Trial counsel strategically attacked William Notti at trial on issues of credibility, inconsistent statements, and alleged overreaching by the Commonwealth. (N.T. PCRA at 240).

35. Robert Strohl, Appellant's father, could not provide an alibi for his son the night of the murder. (N.T. PCRA at 71-72).

## SUMMARY OF ARGUMENT

I.       There is no <u>Brady</u> violation as a result of a half-page log form not disclosed prior to trial. The so-called "station complaint" is not exculpatory evidence in that it, in its very general way, is merely cumulative evidence of the events testified to at trial. More significantly, the "station complaint" is not material. The absence of this police log at trial does not undermine confidence in the verdict.

II.      There is no <u>Brady</u> violation for newly discovered medical records that were not suppressed by the Commonwealth and were as available (or unavailable) to the defense as to the Commonwealth prior to trial. In addition, the newly discovered medical records are not "after discovered evidence" warranting a new trial. Appellant has offered no evidence to suggest that any new evidence would compel a different result. Indeed, the new medical records are consistent with the prior medical findings. Nothing about the evidence negates to any degree the causation element of the murder. In fact, the newly discovered medical records merely <u>reinforce</u> that the Appellant's assault started the chain of causation that ultimately resulted in the victim's death.

III.     Trial counsel was not ineffective for failing to raise double jeopardy or collateral estoppel. Appellant pleaded guilty to a burglary in 1987. The Commonwealth could not have brought a murder charge in 1986 or 1987 because the victim had not yet died.

IV.     There was no reasonable strategic reason for trial counsel to request a jury charge on Aggravated Assault. There was no prejudice to the Appellant either, since the jury showed no inclination to exercise its mercy-dispensing function.

V. There is no arguable merit to a claim of ineffective assistance of counsel for failure to request a jury charge for involuntary manslaughter. There was not evidence in the case to support such a charge to the jury. Moreover, trial counsel correctly determined that they could not request a charge for which the Appellant could not be convicted because of the statute of limitations.

VI. The trial court properly and fairly summarized the arguments of both the Commonwealth and the defense.

VII. A claim at this point, following a jury's determination of guilt beyond a reasonable doubt, that the Presentment was not supported by probable cause would be moot. Appellant's assertion of grand jury misconduct by the prosecutor is not supported by the record. The issues that Appellant raises concerning the testimony of William Notti are credibility issues that were appropriately argued to, and resolved by, the jury. Trial counsel strategically and thoroughly attacked the testimony of William Notti on cross-examination.

VIII. The medical records that were lost and destroyed by third parties and were equally unavailable to both parties; therefore, the adverse inference jury instruction was not warranted.

IX. Robert Strohl could not provide his son with an alibi for that night. Strategically, Robert Strohl was unable to assist in the case. His testimony would have been cumulative of statements made by the Appellant to the police about his whereabouts. Appellant has not demonstrated how the absence of this testimony prejudiced him.

## ARGUMENT

*I.*     *The undisclosed "Station Complaint" form does not constitute a Brady violation.*

Appellant has submitted a page of a police log book in which a half sheet references Officer Gerancher's recovery of a purse from Patricia Cecala. This half-page log form was a generalized version of the events described in detail in the full and detailed written police report that Officer Gerancher prepared as a part of this investigation. Moreover, the participants in the recovery of the purse – Officer Gerancher, Richard Wunderly, and the Cecala family – testified in the Investigative Grand Jury and at trial.

A violation of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) and its progeny, is a three-part test: (1) whether evidence was suppressed by the prosecution; (2) whether the evidence is favorable to the Appellant; (3) whether the Appellant was prejudiced. Commonwealth v. Paddy, 569 Pa. 47, 64-65, 800 A.2d 294, __ (Pa. 2002), *citing* Strickler v. Greene, 572 U.S. 263, 281-82, 119 S.Ct. 1936, 1948, 144 L.Ed.2d 286 (1999). The prejudice prong requires a showing of "materiality". Id.; Strickler, *supra* at 1949; Moore v. Illinois, 408 U.S. 786, 794-795 (1972).

> "Under the Brady rule, the prosecution is not required to provide every piece of evidence which might possible assist the preparation of the defense. Rather, a Brady violation occurs only when the nondisclosure is material to guilt or punishment. Evidence is material if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A reasonable probability, in turn, 'is a probability sufficient to undermine confidence in the outcome'."

Commonwealth v. Paddy, *supra* at 65-66. (*citations omitted*).

The "station complaint" is not exculpatory evidence in that it, in its very general way, is merely cumulative evidence of the events testified to at trial. More significantly,

the "station complaint" is not material. The absence of this police log at trial does not undermine confidence in the verdict.

At the PCRA hearing, witnesses were confronted with the "station complaint". It did not affect in any favorable way for the defense the testimony of the witnesses. Appellant has made no showing that the outcome of the trial would have been at all different if the defense had the police call log sheet. This is especially true in this case where the police officer prepared a detailed police report and he and others testified at trial.

In Commonwealth v. Paddy, 800 A.2d 294 (Pa. 2002), the Appellant asserted that a Brady violation occurred where police did not disclose police reports regarding a subsequent murder by another suspect with a similar appearance, a similar manner of disguise, and method of assault. The second suspect murdered a different victim prior to Paddy's trial, but that incident was not disclosed. The Pennsylvania Supreme Court found that the undisclosed evidence was "not so exculpatory as to undermine confidence in the verdict". Id.

In this case, we can see from the PCRA hearing, that there would have been no impeachment value of this police call log form. Moreover, given the testimony at trial, the prior testimony, and the detailed police report, it is not reasonably probable that a jury, if had been shown the "station complaint", would have reached a different verdict.

### II. The medical report of Dr. Earnest is not "After Discovered Evidence" warranting a new trial.

Appellant essentially makes two assertions with regard to the medical records of the brain surgery performed by Dr. Earnest and Dr. Stephens in 1986. Appellant argues

that if these medical records had been available at trial they could have been used to impeach the expert witnesses or, alternatively, to persuade the experts to reach a different conclusion.

As an initial matter it should be noted that the "new" medical records were not in the custody of the Commonwealth prior to trial (or for that matter prior to the filing of Appellant's appeal to the Supreme Court of the United States). Inexplicably, despite a subpoena of records from the hospital, the defense did not receive from Lehigh Valley Hospital the reports of Dr. Earnest and Dr. Stephen at issue. Clearly, there is no Brady violation since the new medical records were not suppressed by the Commonwealth and were as available (or unavailable) to the defense as to the Commonwealth prior to trial.

The standard of review on "after discovery evidence" is whether: (1) the new evidence could not have been discovered until after the trial despite reasonable diligence; (2) the new evidence is more than merely cumulative or for impeachment purposes; and (3) the new evidence is of such a nature that it would compel a different outcome if it had been introduced at trial. Commonwealth v. Small, 559 A.2d 423, 436-437 (Pa. 2000); Commonwealth v. Albrecht, 720 A.2d 693, 707 (Pa. 1998); Commonwealth v. Colson, 490 A.2d 811 (Pa. 1985).

To the extent that Appellant's argument is that the evidence is "after discovered evidence" that could have been used to attack the expert opinions (ie., impeachment), the Appellant does not meet the standard for a new trial based upon after discovered evidence. New evidence useful for impeachment purposes is not sufficient for a new trial under the second prong of the test. Commonwealth v. Small, 559 A.2d 423, 436-437 (Pa.

2000); Commonwealth v. Albrecht, 720 A.2d 693, 707 (Pa. 1998); Commonwealth v. Colson, 490 A.2d 811 (Pa. 1985).

Furthermore, Appellant has offered no evidence to suggest that any new evidence would compel a different result. To the contrary, Dr. Mihalakis' expert opinion was not altered by the "new evidence". Dr. Mihalakis did not rely in rendering his expert opinion on Xrays or CAT scans and explained as much at trial. Indeed, based upon the testimony of Dr. Earnest and Dr. Mihalakis at the PCRA hearing, the new medical records are consistent with the prior medical findings. Dr. Mihalakis and Dr. Earnest both recall evidence of blunt force trauma to the head from the assault in 1986. Dr. Earnest and Dr. Stephens perform brain surgery necessitated by the assault. In 1994, examination of the brain notes evidence in the same area of the brain that is not inconsistent with the brain surgery.

Nothing about the so-called "new evidence" negates to any degree the causation element of the murder. "So long as the Appellant's conduct started the chain of causation which led to the victim's death, criminal responsibility for the crime of homicide may be properly found". Commonwealth v. Shoup, 620 A.2d 15, 18 (Pa.Super. 1993). Here, Dr. Earnest and the medical reports merely reinforce that the Appellant's assault started the chain of causation. The medical reports would not have compelled a different outcome if they had been introduced at trial.


### III. Trial Counsel was not ineffective for failing to pursue a double jeopardy argument that had no arguable merit.

In 1987, when the Appellant pleaded guilty to a burglary that occurred on December 27, 1986, the Commonwealth explicitly did not charge the Appellant in

connection with the burglary and assault on December 26, 1986. The guilty plea colloquy is very careful to preserve the Commonwealth's position with regard to double jeopardy. Arguably, the Appellant's plea under those facts constitutes a waiver of the double jeopardy issue.

In any event, the Commonwealth could not have brought a murder charge in 1986 or 1987 because the victim had not yet died. Trial Counsel correctly recognized that double jeopardy defense was without merit. Indeed, the Pennsylvania Supreme Court has held that conviction of aggravated assault charges did not create double jeopardy bar to murder charges where victim did not die until later. Commonwealth v. Washington, 393 A.2d 3 (Pa. 1978).

To be eligible for Post Conviction Relief for ineffective assistance of counsel, the Appellant must prove by a preponderance of evidence that his conviction resulted from ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place. 42 Pa.C.S.A Section 8543(a)(2)(ii). This requires the Appellant to show: (1) that the claim is of arguable merit; (2) that counsel had no reasonable strategic basis for his or her action or inaction; and (3) that, but for the errors or omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different. Commonwealth v. Kimball, 724 A.2d 326, 333 (Pa. 1999).

### IV. Trial Counsel was not ineffective for failing to request a jury instruction on Aggravated Assault

Appellant was not charged with Aggravated Assault. The jury was instructed on the elements of murder, including the element of causation. If, hypothetically, the jury

had determined that the Appellant assaulted the victim but did not cause her death, the jury would have followed their instructions and acquitted the Appellant. There would be no reasonable strategic reason to request a jury charge on Aggravated Assault. Appellant has not established ineffectiveness on the part of trial counsel.

### V. *Trial Counsel was not ineffective for failing to request a jury instruction on involuntary manslaugter.*

There is no arguable merit to this claim of ineffective assistance of counsel. First, there was not evidence in the case to support such a charge to the jury. Secondly, Trial counsel correctly determined that they could not request a charge for which the Appellant could not be convicted because of the statute of limitations.

The evidence at trial was that the elderly victim had been pummeled, with multiple blunt force trauma injuries to her head. The victim's house had been ransacked. The defense theory was that the Appellant did not commit this horrible act, or in the alternative that causation was not proven. The Appellant did not testify. Nothing in the case, either for the defense or in the evidence presented in the Commonwealth's case supported a charge of manslaughter. There was no hint of evidence that suggested provocation or imperfect self-defense, or criminally negligent or reckless conduct. The Court can properly refuse to charge where there is no supporting evidence in the case. Commonwealth v. Soltis, 687 A.2d 1139 (Pa.Super. 1996).

The verdict of second degree murder rather than third degree murder further suggests that the jury was not looking for lesser offenses or to dispense mercy. *See,* Commonwealth v. Taylor, 502 A.2d 195 (Pa.Super. 1985); Commonwealth v. Bradley, 480 A.2d 205 (Pa.Super. 1984).

The Supreme Court of the United States held in <u>Spaziano v. Flordia</u>, 104 S.Ct. 3154, 82 L.Ed.2d 340 (1984) that the trial court did not err in refusing to give an instruction on lesser included offenses where the statute of limitations had run. [1] <u>Spaziano</u> was a capital murder case.

### VI.    *Trial Counsel was not ineffective for failing to object to the Trial Court's summary of the arguments of counsel*

The trial court properly and fairly summarized the arguments of both the Commonwealth and the defense. The Commonwealth argued in closing that the circumstantial evidence proved that the Appellant had entered the victim's house on Friday night. There is no arguable merit to the assertion that an objection should have been raised to the trial court's summary.

Even assuming *arguendo* that any misstatement was made, the court's summary, read as a whole, would not constitute a material misstatement resulting in prejudicial error . *See* <u>Commonwealth v. Irwin</u>, 431 A.2d 257 (Pa. 1981).

Indeed, the trial court instructed the jury that their recollection as to the facts controlled, and that they should disregard contrary recollections of the fact from either counsel or the trial court. (N.T. Trial at 1064).

There is no showing of any prejudice as a result of the trial court's summary of the evidence.

### VII.    *Trial counsel was not ineffective for failing to file a motion to quash based upon Grand Jury misconduct*

---

[1] In dicta, the Court suggests that a Appellant may strategically in opt to waive the statute of limitations or not. <u>Spaziano</u>, *supra* at 456. Here, the Appellant mischaracterizes this dicta as the holding of the case.

The record of the grand jury proceedings do not support an allegation of prosecutorial misconduct as alleged by Appellant.

Trial counsel strategically and thoroughly challenged William Notti on his prior inconsistent statements. (N.T. Trial at 603-631). Trial counsel pointed out what they asserted was misconduct on the part of the prosecution in the Grand Jury.

There is no merit, however, to Appellant's position that a motion to quash should have been filed. Appellant had a preliminary hearing following the Presentment of the Grand Jury. Appellant was convicted beyond a reasonable doubt. A claim now that the Presentment was not supported by probable cause would be moot. *See* Commonwealth v. Rashed, 436 A.2d 134 (Pa. 1981). For the same reasons, the Appellant cannot show prejudice.

The issues that Appellant raises concerning the testimony of William Notti are credibility issues that were appropriately argued to, and resolved by, the jury.

### VIII. *Trial counsel was not ineffective for failing to request an adverse inference jury instruction on medical records that were not available to either the Commonwealth or the defense*

In fact, trial counsel did request an adverse inference instruction as to the missing police evidence and the unavailable medical records. The trial court did give an adverse inference instruction as to the missing police evidence. The trial court properly denied the same instruction with regard to the unavailable medical records. The medical records were as available (or unavailable) to the Commonwealth as they were to the defense.

The trial court properly determined that the lost and destroyed medical records were not the responsibility of the Commonwealth and that they were lost by a third party.

(N.T. Trial at 823-824). The lost and destroyed medical records were not under the control of the Commonwealth. Where the evidence is equally unavailable to both parties, the adverse inference instruction is not warranted. *See*, Commonwealth v. Christina, 391 A.2d 1307 (Pa. 1978); Commonwealth v. Culmer, 604 A.2d 1090 (Pa.Super. 1992).

There is no arguable merit to this claim, and no showing of any prejudice to the Appellant.

### IX. *Trial counsel was not ineffective for failing to call Robert Strohl as a witness at trial*

To prove ineffectiveness of counsel for failing to call a witness, Appellant must show: (1) that that the witness existed and was available; (2) counsel was aware of the existence of the witness; (3) the proposed witness was ready, willing and able to testify; and (4) the absence of the proposed testimony prejudiced him. Commonwealth v. Lopez, 739 A.2d 485 (Pa. 1999).

Robert Strohl testified at before the Grand Jury that he could not provide his son with an alibi for that night. Strategically, Robert Strohl was unable to assist in the case. His testimony would have been cumulative of statements made by the Appellant to the police about his whereabouts.

Appellant has not demonstrated how the absence of this testimony prejudiced him.

## CONCLUSION

For the foregoing reasons, it is respectfully submitted that Appellant's appeal should be denied and dismissed.

Respectfully submitted,

JOHN M. MORGANELLI
Northampton County District Attorney

JAY W. JENKINS
Assistant District Attorney
Supreme Ct. ID 73841
Northampton Cty District Attorney's Office
669 Washington Street
Easton, Pennsylvania 18042
(610) 559-3020

## PROOF OF SERVICE

I HEREBY CERTIFY THAT I AM THIS DAY SERVING THE FOREGOING BRIEF

UPON THE PERSON SET FORTH BELOW, BY FIRST CLASS MAIL ADDRESSED

AS BELOW, WHICH SERVICE SATISFIES THE REQUIREMENTS OF Pa. R.A. P.

121:

      Joseph M. Strohl  CM 2097
      Huntingdon State Correctional Institution
      1100 Pike Street
      Huntingdon, PA  16652

Date:  December 2, 2004

                             Jay W. Jenkins
                             Assistant District Attorney
                             I.D. No. 73841