IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **BLAKE J. ROBBINS**, a Minor, by his Parents and Natural Guardians, **MICHAEL E. ROBBINS** and **HOLLY S. ROBBINS**, Individually, and on Behalf of all Similarly Situated Persons,<br>        Plaintiffs, | CIVIL ACTION |
| v. | NO. 2:10-cv-00665-JD |
| **LOWER MERION SCHOOL DISTRICT**, and<br>**THE BOARD OF DIRECTORS OF THE LOWER MERION SCHOOL DISTRICT**, and<br>**CHRISTOPHER W. McGINLEY**, Superintendent of Lower Merion School District,<br>        Defendants. | |

**PLAINTIFFS' MEMORANDUM OF LAW
IN OPPOSITION TO MOTION TO QUASH SUBPOENA**

Plaintiffs Blake J. Robbins, Michael E. Robbins and Holly S. Robbins, by and through their undersigned counsel, submit the following Memorandum of Law in Opposition to the Motion of Carol Cafiero to Quash Subpoena ("Motion to Quash").

I.  **LEGAL ARGUMENT:**

Typically, a request for stay of a deposition is made by a party to the litigation, and not by a third party witness. In this case, however, Cafiero, who is not a defendant in this litigation, seeks to stop in its tracks Plaintiffs efforts to undertake discovery to learn to what extent the Lan Rev tracking software was used by Cafiero and others within Lower Merion School District ("LMSD") to spy on students while in their homes. Cafiero makes three arguments for the stay, **none** of which have any merit. Cafiero's first argument is that the deposition is "premature."

However, Cafiero's criminal defense counsel cites no case law in support his assertion that a third party witness has the right to contend that a deposition which the parties to a litigation seek to conduct is "premature." The reason Cafiero does not cite any case law for this proposition is that none exists. Parties in Federal Court in the Eastern District of Pennsylvania have a right to commence discovery any time after holding their Rule 26(f) Conference. The parties held their Rule 26(f) conference on March 1, 2010. Accordingly, the parties are now permitted to commence discovery and the Subpoena issued to Cafiero is not "premature."

Cafeiro's second argument is that she does not wish to be "ambushed" by questions during her deposition. Cafiero's criminal defense counsel again does not cite a single case in support of the proposition that a third party witness is entitled to demand access to documents prior to testifying. Notwithstanding the fact there is no case law to support such a demand by a third party witness, LMSD has informed Cafiero's criminal defense counsel that she will be provided with the same emails that plaintiffs' counsel is receiving. Accordingly, Cafiero's argument as to being "ambushed" is now moot.

Cafiero last argues that, because the FBI has begun an investigation of LMSD, she may during the course of her deposition decide to assert her Fifth Amendment right against self incrimination. Plaintiffs' agree that, if Cafiero was involved in criminal conduct as it relates to her use of the LanRev technology to spy on students in their homes, she has a constitutional right to assert her Fifth Amendment privilege as to any question which would cause her to admit to criminal conduct. However, unlike civil defendants in litigation who often have to make a decision as to whether to assert their Fifth Amendment privilege and have that used against them at the time of trial, Cafiero is **not** faced with that dilemma as she is **not** a party.

The Constitution does not require a stay of civil proceedings pending the outcome of criminal proceedings or until the fear of criminal prosecution is gone. United States v. Kordel, 397 U.S. 1, 90 S. Ct. 763 (1970); DeVita v. Sills, 422 F.2d 1172, 1181 (3d Cir. 1970). A party has no constitutional right not to be put to the choice of whether he will assert his Fifth Amendment privilege. Clark v. Lutcher, 77 F.R.D. 415, 417 (M.D.Pa. 1977) (citing Kordel, supra.). A stay may be granted on the basis of pending criminal proceedings as "incidental to the power inherent in every court to control the disposition of the cases on its docket in order to promote economy of time and effort for itself, for counsel and for litigants." Landis v. North American Company, 299 U.S. 248, 254, 57 S. Ct. 163, 166 (1936). The Court's control of its docket, including the power to grant a stay, rests in the sound discretion of the trial judge. In considering a motion for stay, the Court must weigh all of the factors involved, including the saving of time and effort by the court, counsel and the litigants, any hardship which would result to either party and the expeditious progress of the case on the Court's calendar. Clark, 77 F.R.D at 418 (citations omitted).

### A. Pre-Indictment Requests for Stay are Disfavored by the Courts.

The fundamental flaw in Cafiero's request for a stay of her deposition is the fact that Cafiero is neither a civil defendant nor currently the subject of a criminal prosecution. Cafiero has yet to be indicted, has yet to even receive a "target letter," no criminal proceeding has commenced, nor may one ever be commenced. Without citing to a single case authorizing a stay of civil proceedings in the absence of a criminal indictment, Cafiero nonetheless asks this Court to stay her deposition. However, absent an indictment, there is no way to determine what charges, if any, will result from the FBI's investigation, or against whom such charges might be

made. Moreover, because there is no indication if, or when, such charges might be brought, the length of the delay requested by Cafiero is completely indefinite.

Because the risk of self-incrimination to civil defendants pre-indictment is slight, courts have consistently disapproved of pre-indictment stays in civil cases. See In Re: Adelphia Communication Securities Litigation,. 2003 W.L. 22358819, *2 (E.D. Pa. May 13, 2003) ("Because there is less risk of self-incrimination and greater burden imposed by delay, stays are rarely granted at the pre-indictment stage"). A stay is an "extraordinary remedy," and because there is less risk of self-incrimination, and more uncertainty about the length of a delay in a civil case, pre-indictment requests for a stay are generally denied. Walsh Securities, Inc. v. Cristo Property Management Ltd., 7 F. Supp. 2d 523, 526-527 (D. N.J. 1998); see also United States of America v. Witmer, 835 F. Supp. 208, 225 (M.D. Pa. 1993) (citing In re Par Pharmaceutical, Inc., 133 F.R.D. 12, 13-14 (S.D.N.Y. 1990).[1] For example, faced with a pre-indictment request for a stay of proceedings, the United States Bankruptcy Court for the Eastern District of Pennsylvania recently stated as follows:

> **The delay that is being sought here is open-ended since no criminal proceeding has been initiated and may never be. I can find no case that would allow such an unlimited stay.** In In re Mid-Atlantic Toyota Antitrust Litigation, 92 F.R.D. 358 (D.Md. 1981), the Court observed that, there were no criminal charges pending against any of the civil defendants. It reasoned:

---

[1] Moreover, courts are reluctant to issue a broad protective order prior to the taking of a deposition based upon the proposed deponent's possible invocation of the Fifth Amendment. A motion for protective order at this stage is premature because "before a deposition is taken, the Court cannot know what percentage, if indeed any, of the questions to be asked by [the opposing party] require an answer protected by the Fifth Amendment." Clark v. Lutcher, 77 F.R.D. 415, 417 (M.D. Pa. 1977). The proper procedure is for the deponent to object to answering any questions during the deposition which the deponent believes impinges upon his Fifth Amendment right against self-incrimination. Id.

> The delay sought by the defendants here would be unprecedented in its scope. Not only do the defendants seek a stay pending completion of any criminal actions which may arise from the current Philadelphia grand jury investigation, but they also seek a stay pending completion of any criminal proceedings which might be brought at some unspecified future time by the Department of Justice, the Maryland Attorney General, or other state law enforcement officials. **No case cited to this Court has involved a blanket stay in such speculative circumstances. Were the Court to approve such a request, stays would be mandated in all future civil cases in which the possibility, however remote, existed that criminal proceedings would eventually be pursued from related or similar facts.** The prejudice to plaintiffs in such instances, and in this particular instance, is more than apparent. Witnesses relocate, memories fade, and persons allegedly aggrieved are unable to seek vindication or redress for indefinite periods of time on end.

In re MGL Corporation, 262 B.R. 324, 327 (E.D.Pa. 2001) (emphasis added). No criminal indictment having been issued, the MGL court declined to issue a broad, indefinite stay, or even a limited stay "on a wait and see basis". Id. at 328-329.

The fact that no target letter has been issued or an indictment returned against Cafiero mitigates against the granting of a stay due to the uncertainty of whether a criminal action will ever commence and the substantial detrimental effect which an indefinite delay would have upon the expeditious resolution of this matter. As Judge Milton Pollack has explained:

> If no indictment has been returned and no known investigation is underway, the case for a stay of discovery, no matter at whose instance, is far weaker. A criminal action may never commence. The civil plaintiff may be substantially affected by the delays involved in waiting for the criminal action to commence; and, unless it does, the stay will end only when the criminal statute of limitations has run – possibly several years hence.

Milton Pollack, Parallel Civil and Criminal Proceedings, 129 F.R.D. 201, 204 (1990).

In fact, district courts in the Second Circuit have definitively stated that they generally grant the extraordinary remedy of a stay only **after** the movant seeking a stay has been indicted. Sterling National Bank v. A-1 Hotels International, Inc., 2001 W.L. 474240 (S.D.N.Y. May 4, 2001). The Sterling court denied the requested motion for stay, despite the fact that there was "substantial overlap" between the allegations in the civil case and the areas of inquiry by the grand jury, and despite the fact that the defendants alleged (and the Court assumed as true) that the plaintiff had triggered the criminal investigation of defendants through the filing of a suspicious activity report. 2001 W.L. 474240, *5. What controlled the Sterling court's denial of the motion for stay was the absence, as in the present case, of any indication whether the grand jury's investigation had reached a critical stage as only one document subpoena had been issued. Moreover, as in this case with respect to Cafiero, there was nothing to suggest that indictments of any defendants were imminent. The Sterling Court noted that since the deposition had not yet taken place, the court could not determine, with any precision, what questions the defendants may refuse to answer, or what damage would be done to their position in the civil case by any assertions of the Fifth Amendment privilege that the defendants might choose to make. Id. Under these circumstances the Court denied the requested stay because "the nature of the threat to defendants' Fifth Amendment rights is necessarily still imprecise." Id.

In this case, to the best of plaintiffs' knowledge, the criminal investigation has been limited to the issuance of a subpoena seeking documents. There is absolutely no indication, of record, that Cafiero faces imminent indictment, or that she will ever be indicted in the future.[2] Without

---

[2] In footnote 4 of the Memorandum of Law of Carol Cafiero In Opposition to Plaintiffs' Motion to Compel her Appearance at Deposition, Cafiero's criminal defense attorney cites to two cases, In Re: J.E. Brenneman Co., Inc., 2003 W.L. 1560155 (E.D. Pa. Mar. 18, 2003), and Walsh Securities, Inc. v. Cristo Property Management, Ltd., 7 F. Supp. 2d 523 (D. N.J. 1998) in support of her claim that her deposition would "constitute an unfair burden and be contrary to applicable

such an indictment, Cafiero's request for stay of her deposition is premature, as it cannot possibly be determined, at this point, what the precise nature of the threat to Cafiero's Fifth Amendments rights is. Moreover, as set forth below, the stay of her deposition at this early stage in the criminal investigation would only serve to indefinitely delay these civil proceedings "just in case" Cafiero ultimately faces criminal charges; a delay which would be highly prejudicial to plaintiffs, the public (the taxpayers of Lower Merion Township who desire a prompt resolution of the case) and this Court's calendar and administration of this case.

Plaintiffs have the right to pursue their case and vindicate their claims expeditiously. Golden Quality Ice Cream Company v. Deerfield Specialty Papers, Inc., 87 F.R.D. 53, 56 (E.D.Pa. 1980). Cafiero, who is not even a defendant in this case, is one of only two persons within LMSD who were "authorized" to turn on the LanRev tracking software. Therefore, she has critical information relevant to the very essence of this litigation; i.e., what procedures where in place concerning the use of the LanRev Tracking software, how, why and when was it activated, and who had access to the information she obtained from the tracking software. While Michael Perbix may have some of the same information, Cafiero was Perbix's boss and as such, was in charge of Perbix. Further, Plaintiffs have a right to question Cafiero to "double check" any information provided by Perbix during his deposition. It is patently unfair to permit Cafiero to delay this litigation due to the fact that her conduct has tweaked the interest of the United States Government. As the Sterling court observed, "it would be perverse if plaintiffs who claim

---

case law." However, both cases are easily distinguished from the instant case on two key grounds. First, in J.E. Brenneman the parties defendant seeking a stay had been arrested and formerly charged with specific criminal conduct, while in Walsh the parties defendant had received target letters. Second, the persons seeking stays in both Walsh and Brenneman were civil defendants, while Cafiero is not a defendant in the instant case. Apparently, even after exhausting research, Cafiero's criminal defense attorney could not find a single case where a request for stay by a non-party was granted.

to be the victims of criminal activity were to receive slower justice than other plaintiffs because the behavior they allege is sufficiently egregious to have attracted the attention of the criminal authorities." Sterling, 2001 W.L. *2. The adjudication of this civil matter should not be delayed simply because the activities of LMSD have spurred the interest of criminal authorities.

.

**B.   Because Cafiero's Conclusory and Meritless Claims That Her Deposition is "Unnecessary" and/or Would Constitute an "Unfair Burden" Upon Her Do Not Satisfy Her Heavy Burden Pursuant to Federal Rule of Civil Procedure 45(c)(3)(A)(iv), Her Motion to Quash Must be Denied.**

Pursuant to Fed.R.Civ.P. 45(c)(3)(A)(iv), a court may quash or modify a subpoena that "subjects a person to undue burden." A subpoena will be considered unduly burdensome when it is found to be "unreasonable or oppressive." *Schmulovich v. 1161 RT. 9, LLC*, 2007 W.L. 2362598, *4 (E.D. Pa. August 15, 2007) (quoting, *DIRECTV v. Richards*, 2005 W.L. 1514187, *1 (Dist. NJ June 27, 2005). As a party seeking to quash a subpoena, Cafiero has a heavy burden to establish that the subpoena in question is unreasonable or oppressive. See *Dexter v. Cosan Chemical Corp.*, 2000 U.S. Dist. LEXIS 22134 at*7 (movant bears the burden on a motion to quash, and that burden is "a heavy one"). Moreover, in order to establish an undue burden pursuant to Rule 45(c)(3)(A)(iv), Cafiero cannot rely upon conclusory assertions or unsubstantiated conjecture, but must instead establish a "clearly defined and serious injury." *City of St. Petersburg v. Total Containment, Inc.*, 2008 W.L. 1995298 *2 (E.D. Pa. May 5, 2008) (citations omitted).

Cafiero first tries to establish undue burden by claiming that her deposition is "unnecessary" because "any information which Ms. Cafiero might be able to provide would simply be duplicate of information which the Plaintiffs will be able to obtain from the Defendants and other sources

in a less burdensome manner." (Memorandum of Law of Movant Carol Cafiero in Support of her Motion to Quash, hereinafter referred to as the "Cafiero Memorandum of Law," p. 4). This claim is simply preposterous, given that Cafiero is one of only two persons who were authorized by LMSD to activate the LanRev tracking software. **Only** Cafiero can testify as to when, why and how **she** activated the tracking software which is the very focus of this litigation, and with whom she shared the information gathered. To characterize such unique, individual and essential testimony as possibly "duplicative" is completely disingenuous, and provides no basis whatsoever to conclude that her testimony would constitute an undue burden.

Cafiero next simply parrots the talismanic phrase "undue burden," stating that her "deposition would impose an unreasonable burden upon her, especially where the information the Plaintiffs seek from Ms. Cafiero is obtainable from the Defendants or other sources." (Cafiero Memorandum of Law, page 5). Because, as set forth above, Cafiero possesses information no one else has as to why, when and how **she** activated the LanRev tracking software, her testimony is clearly relevant to the issues in this case and available from no other source. Moreover, Cafiero's deposition will place no financial burden upon her, as she is on paid administrative leave from LMSD. Cafiero's meritless and unsubstantiated claim of "undue burden" is totally insufficient to meet her heavy burden under Rule 45(c)(3)(A)(iv).

Finally, whatever slight burden might be imposed upon Cafiero by her deposition must be balanced against the real and extreme burden imposed upon the public should her deposition be delayed. See <u>Adelphia Communications</u> supra at *2. (In deciding whether to stay civil proceedings, the court should "balance the various interests of the parties, the court, and the public"). The students, parents and taxpayers of Lower Merion all have an abiding interest in the

most expeditious resolution possible, and anything that delays the efficient disposition of this case harms their financial interests.

Because Cafiero has failed to meet her heavy burden to prove that her deposition would constitute an undue burden upon her, Cafiero's Motion to Quash should be denied.

## II. CONCLUSION

As set forth above, Cafiero's Motion for Protective Order must be denied because pre-indictment stays are greatly disfavored, and Cafiero has failed to meet her heavy burden to establish that her deposition would constitute an undue burden upon her. Accordingly, Plaintiffs respectfully request that Cafiero's Motion to Quash the Subpoena and Stay her Deposition be denied.

Respectfully submitted:

LAMM RUBENSTONE LLC

Date: March 30, 2010

/s/ Mark S. Haltzman
Mark S. Haltzman, Esquire
Attorney for Plaintiffs