IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

- - -

BLAKE J. ROBBINS, et al.    :  CIVIL ACTION NO. 10-665
                            :
        v.                  :  Philadelphia, Pennsylvania
                            :  February 22, 2010
LOWER MERION SCHOOL DISTRICT, :  2:33 o'clock p.m.
et al.                      :
. . . . . . . . . . . . . . . .

HEARING
BEFORE THE HONORABLE JAN E. DUBOIS
UNITED STATES DISTRICT COURT SENIOR JUDGE

- - -

APPEARANCES:

For the Plaintiff:      MARK S. HALTZMAN, ESQUIRE
                        STEPHEN LEVIN, ESQUIRE
                        FRANK SCHWARTZ, ESQUIRE
                        Lamm Rubenstone LLC
                        3600 Horizon Boulevard, Suite 200
                        Trevose, PA  19053

For the Defendant:      HENRY E. HOCKEIMER, JR., ESQUIRE
                        PAUL LANTIERI, III, ESQUIRE
                        Ballard Spahr LLP
                        1735 Market Street, 51st Floor
                        Philadelphia, PA  19103


ALSO PRESENT:           WITOLD WALCZAK, ESQUIRE
(Via Telephone)         American Civil Liberties Union

- - -

Audio Operator:         Jeff Masiak

Transcribed by:         Grace L. Williams, CET

(Proceedings recorded by For The Record Gold digital sound
recording; transcript provided by AAERT-certified
transcriber.)

- - -

Laws Transcription Service
48 W. LaCrosse Avenue
Lansdowne, PA 19050
(610)623-4178

1          (The following occurred in open court at 2:33

2    o'clock p.m.:)

3          THE COURT:  Good afternoon, everyone.  Please be

4    seated.

5          COUNSEL:  Good afternoon, your Honor.

6          THE COURT:  I call the case of Blake J. Robbins, a

7    minor, by his parents and natural guardians Michael E.

8    Robbins and Holly S. Robbins, individually and on behalf of

9    all similarly situated persons, plaintiffs, against Lower

10   Merion School District, the Board of Directors of the Lower

11   Merion School District and Christopher W. McGinley,

12   superintendent of Lower Merion School District, defendants.

13          I scheduled a hearing today on plaintiffs' motion

14   for issuance of an emergency temporary restraining order

15   pursuant to Federal Rule of Civil Procedure 65.  And I

16   understand there have been some negotiations between the

17   parties with respect to the form of an order.

18          Is the plaintiffs' side ready to proceed?

19          MR. HALTZMAN:  Yes, your Honor, Mark Haltzman on

20   behalf of Blake Robbins, his parents, and if class

21   certification is granted, on behalf of all the other parents

22   and children in the school district who were issued laptops.

23          THE COURT:  Fine.  Mr. Haltzman, will you introduce

24   co-counsel, please?

25          MR. HALTZMAN:  Sure.  I have Steve Levin from my

1    office.

2              MR. LEVIN:  Good afternoon, your Honor.

3              THE COURT:  Good afternoon.

4              MR. HALTZMAN:  And I have Frank Schwartz of my

5    office.

6              MR. SCHWARTZ:  Good afternoon.

7              MR. HALTZMAN:  And also is John Steinbach who is our

8    forensic expert who might be needed to maybe enlighten the

9    Court as to what we're seeking and why we need it.

10             THE COURT:  Thank you, Mr. Haltzman.

11             Is the defense ready to proceed?

12             MR. HOCKEIMER:  Yes, good afternoon, your Honor.

13             THE COURT:  Good afternoon.

14             MR. HOCKEIMER:  I am Hank Hockeimer, I'm from the

15   law firm of Ballard Spahr.  I'm representing the defendants

16   in this matter.  With me is my colleague, Paul Lantieri.  And

17   also who has entered an appearance who is unfortunately out

18   of the country is my colleague Arthur Makadon.  And we're

19   ready to proceed, your Honor.

20             THE COURT:  Fine.  Just before the hearing I

21   received a motion from ACLU, a motion for leave to file brief

22   as amicus curiae in support of issuance of injunction.

23             And Mr. Walczak of the ACLU is on the telephone

24   connection.  Can you hear us, Mr. Walczak?

25             MR. WALCZAK:  Yes, your Honor, good afternoon.

4

1          Is there any objection to that motion for leave to

2    participate in this proceeding by filing of the brief that is

3    appended to the motion?

4          MR. HALTZMAN:  Your Honor, no, Blake Robbins and the

5    plaintiffs have no objection and welcome his coming into the

6    case.

7          MR. HOCKEIMER:  Your Honor, I, unfortunately, I just

8    got this before we came over to court.  I haven't had a

9    chance to look at it.  I certainly have no objection to him

10   participating in this hearing but again I haven't read the

11   whole motion.

12         THE COURT:  Well, what it seeks in essence is leave

13   to file the brief as amicus curiae in support of the issuance

14   of the injunction and nothing more.  And he -- there is one

15   statute that the ACLU cites that is not, I don't think it's

16   cited in plaintiffs' papers, it's Title 3 of the Omnibus

17   Crime Control and Safe Streets Act of 1969.

18         MR. HOCKEIMER:  It's the wiretap statute.

19         THE COURT:  Yes.

20         MR. HOCKEIMER:  Your Honor, we don't object then.

21         THE COURT:  Fine.  That means you're insofar as this

22   hearing is concerned, Mr. Walczak, and I gather that's all

23   you request, is that correct?

24         MR. WALCZAK:  Yes, your Honor.  We certainly

25   appreciate the Court allowing us to sit in on this.

1          THE COURT:  Well, I've read your brief and I'm

2    certain counsel will read them as well.  It's, well, there

3    really are two, there's a motion and a brief although the

4    defense side has not yet had an opportunity to read them.

5          In any event, I will give them an opportunity to

6    read your submissions before I rule on the case.  To the

7    extent there's disagreement, there might not be any

8    disagreement and I say that because of the letter that I

9    received from -- let me just see who signed it -- Mr.

10   Hockeimer.  It was delivered just a short time ago.  And of

11   course the plaintiffs' side seen that letter, Mr. Haltzman?

12          MR. HALTZMAN:  Yes.

13          THE COURT:  You've seen --

14          MR. HALTZMAN:  I actually only received it right

15   here today.  I got it --

16          THE COURT:  By here today you mean in the courtroom?

17          MR. HALTZMAN:  In the courtroom, yes.  I got a text

18   message that it was on my way but my cellphone was unable to

19   open up his PDF.

20          THE COURT:  Do you have it now?

21          MR. HALTZMAN:  I have it now, yes.

22          THE COURT:  Have you read it?

23          MR. HALTZMAN:  I have.

24          THE COURT:  Have you read the proposed order

25   appended to the letter?

1          MR. HALTZMAN:  I have.  We had seen that previously,

2     correct.

3          THE COURT:  All right.  What is the position --

4     well, have you discussed the areas of disagreement?  I guess

5     we ought to start there.

6          MR. HALTZMAN:  Well, I'd like -- yes, we did and

7     just before your Honor came out, as is my policy.  I try to

8     work things out, if possible, to avoid the court time and

9     expense.

10          THE COURT:  Have you had enough time?  Because --

11          MR. HALTZMAN:  Well, your Honor, I think there's --

12     we have agreed on what I think in theory on at least some of

13     the issues.  The major disagreement between what defense

14     would like and what we would like to have is we believe the

15     Court should enter an injunction.  They don't want it called,

16     they don't want it to be called an injunction, they just want

17     some sort of order.

18          And the other big disagreement that we have is,

19     relates to they want the ability to continually update

20     software, update computers without having any restraints upon

21     that.  And as our forensic expert will say if need be, that

22     could easily wipe out the evidence if it hasn't already been

23     wiped out but it could wipe out the evidence that we need to

24     show that a laptop has been activated by their peeping Tom

25     software to sort of be able to open up their screens.

1          We're hoping that there's going to be a trail left

2    on the individual laptops.  So in addition to the laptops

3    that's being linked to actually accessing, we want to see

4    which other ones have been accessed.

5          THE COURT:  Have you discussed with your forensic

6    expert and the defense side a way in which the computers can

7    be kept up to date and used while this litigation proceeds?

8          MR. HALTZMAN:  Well, again, we don't even know for

9    sure what software they're using.  The only reason we have

10   any idea what software they may be using is because the

11   Internet nowadays, everybody's been posting everything about

12   what supposedly the school district is using.

13         But we need our forensic guy to be able to get in

14   there and we can go there tomorrow, take a look at their

15   computer, the server, get some idea of what software they're

16   using.  And, as I explained to them, if our forensic guy says

17   okay, based upon the software they're using and now we

18   understand what they're using, you doing a security update on

19   the computers for a virus won't affect anything, we're fine

20   with it.

21         But we need a chance before I say yes I need a

22   chance to allow our forensic guy to go in, see what they're

23   using and then know then what we're going to do.  Otherwise,

24   if they have the right to do updates, tomorrow morning,

25   Judge, there's going to be this update that's going to go to

1   everybody and it could wipe out everything.

2         THE COURT:  Well, you've used the word "could" wipe

3   out.  They're, I've had considerable litigation involving

4   what you can do with computer hard drives and it's, quote --

5   and your forensic specialist will, I'm sure, agree, it's very

6   difficult to, quote, "eliminate everything."

7         MR. HALTZMAN:  Correct, but there's a --

8         THE COURT:  Pressing the delete button doesn't begin

9   to do that, as you know by now.

10         MR. HALTZMAN:  Well, for instance, a security update

11   or an update on the software they're using could tell the

12   software to wipe out its log that it may have standing on

13   each of the computers.  So it could be instructed to wipe out

14   the log.  Or it could overwrite those sections of --

15         THE COURT:  Overwriting, well, if you overwrite

16   certainly you will wipe out.

17         MR. HALTZMAN:  Right.  And sometimes I don't -- I

18   don't know enough and that's why we hired these forensic

19   experts to know whether a Microsoft update will start

20   overwriting those sections that we need to get.

21         That's why, you know, I'm confident that within a

22   week we'll be, if we can get in there tomorrow or the next

23   day, I will be able to say to defense counsel we have no

24   worries about any of these types of updates, go ahead and do

25   them because we've gotten to see what's there.  Or come back

1  to this Court and say this is what evidence we have but they

2  can't do this, this or this update because this is the effect

3  it would have.

4          So that's just really, I just need, I need a window

5  to protect what evidence may be there.

6          THE COURT:  Thank you.

7          MR. HOCKEIMER:  Your Honor, may I just add or at

8  least--

9          THE COURT:  You can do more than that.

10         MR. HOCKEIMER:  Yeah, I probably won't add anything

11 to --

12         THE COURT:  Well, I think what we're going to end up

13 doing is issuing an order.  We'll talk further about whether

14 it should be, quote, "an order," or, quote, "an injunction."

15 But the effect will be the same, number one.

16         MR. HOCKEIMER:  Absolutely.

17         THE COURT:  Number two, it sounds like with respect

18 to your request to update the computers that more time is

19 needed and that if I issue an order today, a complete

20 standstill order today prohibiting you from doing that, that

21 would be subject to reconsideration quickly as soon as the

22 forensic specialist for the plaintiff has an opportunity to

23 examine the computers.

24         MR. HOCKEIMER:  May I just address that point?

25         THE COURT:  Absolutely.

```
 1              MR. HOCKEIMER:  We have one thing we reached common

 2   ground on before we -- before we came before your Honor today

 3   was that we have agreed and we would do this anyway to

 4   preserve all electronic evidence and other data that would be

 5   relevant to this case.  So the concern about updating

 6   something that could result in wiping out data, that would

 7   violate our commitment to preserve the data, number one.

 8              And, number two, we also have retained a company,

 9   Help Free Communications, they're a large computer forensic

10   computer security company.  As we speak they're on site now

11   preserving data.  They are former FBI agents, former

12   Department of Defense security experts, they're at our

13   facility now ensuring that these kinds of things don't

14   happen.

15              If there are updates the updates would be to prevent

16   viruses, to continue to enable the students to productively

17   use these laptops in their education.  We're certainly not

18   looking to do anything that would impact or delete in any way

19   evidence that's relevant to this case.

20              I mean we're trying to figure out, we were brought

21   in as a firm on Friday, we're trying to figure out what

22   happened here and we're conducting that investigation.  But

23   we need time for our own experts to evaluate the hardware and

24   the software being used at Lower Merion.  Within the interim

25   nothing will be destroyed that directly or indirectly is
```

1    relevant to these matters.

2              THE COURT:  Well, I'm looking at your order or your

3    proposed order but I also, I want to try to dovetail the

4    language with the relief sought in the motion for temporary

5    restraining order.

6              MR. HALTZMAN:  Your Honor, if I may, can I pass up

7    our form of order that we had prepared based upon their form

8    of order which incorporates some of their language with more

9    detailed language so that we could be working off the same

10   drafts?

11             THE COURT:  Have you given Mr. Hockeimer a copy of

12   that draft?

13             MR. HALTZMAN:  Oh, yes, absolutely.

14             THE COURT:  Yes, that would be good.  Now I'm

15   working from three drafts, the draft that was submitted by

16   letter or --

17             MR. HALTZMAN:  It would be two.  The draft that they

18   submitted by letter, your Honor, was the draft that they

19   forwarded over to me which I then sent back to them saying

20   this is our version based upon, take out on theirs but

21   expanding upon it.

22             THE COURT:  All right, then I need not go to your

23   actual motion in the proposed order.

24             MR. HALTZMAN:  Correct, only on two drafts, not the

25   order.

```
 1              THE COURT:  Thank you.

 2              MR. HALTZMAN:  May I approach the bench?

 3              THE COURT:  Yes.  How many copies do you --

 4              MR. HALTZMAN:  I have other copies.

 5              THE COURT:  A copy for my clerk would be

 6   appreciated.  My clerk is this young woman in the middle.

 7              (Pause.)

 8              THE COURT:  Have you had an opportunity to study

 9   what was just submitted to me, Mr. Hockeimer?

10              MR. HOCKEIMER:  Yes, your Honor, I have.

11              THE COURT:  All right, let's, well, I guess the

12   threshold question is -- well, it's not a threshold question

13   because the plaintiffs have agreed to the stipulation and

14   order format that you proposed.

15              MR. HOCKEIMER:  Well, I think Mr. Haltzman, and I

16   don't want to speak for him, but before we got in here he

17   wanted to add a few things at the end regarding the remedies

18   that would be available.

19              THE COURT:  Regarding?

20              MR. HOCKEIMER:  If there was a violation of the

21   order he would want to add something relating to the

22   remedies, is that correct?

23              MR. HALTZMAN:  We, in addition to this, we had

24   provided a one page which said the Court hereby enters an

25   injunction based upon the hearing subject to the terms of the
```

1   stipulation and order.

2            And my concern was that their language here, I

3   wanted to make sure that if we were to go through this

4   language and we were working something out there would be

5   another paragraph that would be added that says that any

6   violation of this order shall be subject to contempt and

7   reasonable attorneys fees awarded as a result of violations.

8            THE COURT:  Isn't that implicit in an order such as

9   this?

10           MR. HALTZMAN:  Well, it's implicit it was --

11           THE COURT:  You violate --

12           MR. HALTZMAN:  -- an injunction order it would

13   certainly be implicit as it was entered as an order that way,

14   it would certainly be implicit in that.  And that's why I

15   wanted to have the injunction order so that it would be

16   implicit that a violation was subject to both contempt and

17   the right to receive attorneys fees.

18           THE COURT:  Well, if there's a violation of a court

19   order you have a right to seek both a contempt citation and

20   any other remedies that are available.  I think that's

21   inherent in the issuance of an order.

22           MR. HALTZMAN:  Well, based upon that oral statement

23   on the record, your Honor, I'm --

24           THE COURT:  Fine.

25           MR. HALTZMAN:  -- I don't think I need to have

1    anything added.

2            THE COURT:  Well, there are certain hot buttons, I

3    gather, that concern the school district and we'll try to

4    avoid them if we can.  And that's a no-brainer.

5            But let's go over the relief sought in the

6    stipulated order proposed by the plaintiffs.  Is there any

7    objection to the first paragraph which reads: "Lower Merion

8    School District, their employees, agents, servants and

9    representatives during the pendency of this action are

10   enjoined from remotely activating any and all web cams

11   embedded in laptop computers issued to students within the

12   Lower Merion School District."

13           MR. HOCKEIMER:  Your Honor, I, ultimately, enjoined

14   to me sounds like it's an injunction.  I mean I'd rather it

15   say shall not but I'm not going to make a big deal of it.

16           THE COURT:  Well, you're --

17           MR. HOCKEIMER:  I mean semantics, I think.  We had

18   proposed that those covered individuals or entities shall not

19   as opposed to they are enjoined.

20           THE COURT:  Well, injunction is another hot button

21   issue.  The press is in the courtroom and I guess the school

22   district wants to avoid school district enjoined from

23   whatever.  But a comparable word would be prohibited.

24           MR. HOCKEIMER:  That's a fine word, yes, that's

25   fine.

1              THE COURT:  And I don't think it matters to the--

2              MR. HALTZMAN:  It's a few more letters but that's

3    fine, yes.

4              (Laughter.)

5              THE COURT:  Hopefully we'll get through this and it

6    is not an order until I get to the very end and say it's an

7    order, but what we're talking about doing now in the first

8    paragraph is substituting the word "prohibited" for the word

9    "enjoined."

10             And so it would read: "Lower Merion School District,

11   their employees, agents, servants and representatives during

12   the pendency of this action are prohibited from remotely

13   activating any and all web cams embedded in laptop computers

14   issued to students within the Lower Merion School District."

15             And, again, it's not an order until we get to the

16   end of it and I say it's an order.

17             Paragraph 2: "During the pendency of this action

18   Lower Merion School District, their employees, agents,

19   servants and representatives shall not contact any members of

20   the putative class."  And the class is defined as, this is

21   the class definition in the complaint, "plaintiffs and all

22   other students, together with their parents and families, who

23   have been issued a personal laptop computer equipped with a

24   web camera by the Lower Merion School District."

25             Yes.

1          MR. HOCKEIMER:  We have one concern on that.  We

2    certainly agree that the covered entities and individuals

3    will not contact students, individually or collectively,

4    about the case and the issues thereof, student acts, you

5    really shouldn't, this case has no basis, you shouldn't be a

6    member of the class and try to influence them, we would not

7    do that.

8          My concern is that this case has gotten some

9    attention and parents and families of the students have

10   consistently been requesting from the school district updates

11   of what's going on.  And as a result of that the school

12   district sends out district-wide e-mail updates.  It goes to

13   the students or parents in the Lower Merion High School but

14   also goes to students in the middle schools and the

15   elementary schools and their families and it gives them

16   updates of what's going on.  They're innocuous sort of

17   procedural updates but the school district would like -- I

18   mean these are taxpayers and they want to keep the

19   constituencies informed of what's going on here.

20         I think by doing that it would and I think Mr.

21   Haltzman agrees with us doing that but it's important that

22   we're able to continue to do that and function as a school

23   district.

24         THE COURT:  Well, it's important that you continue

25   to function as a school district but in the motion for

1   temporary restraining order Mr. Haltzman avers that you're

2   providing misleading information before an investigation has

3   been undertaken or at least completed.

4          MR. HOCKEIMER:  Well --

5          THE COURT:  Is that a correct summary of what you've

6   said?

7          MR. HALTZMAN:  The very first day the principal

8   announces over the loudspeaker to all the students that

9   basically calling my clients untruthful people and that the

10  allegations are untrue.  And they never even did an

11  investigation.

12         So what I would rather be -- take place here, if

13  there's a Court order it's pretty easy for the school

14  district to say we won't be commenting on anything regarding

15  litigation because of the Court order and leave it at that.

16         I believe that the caw law out there dealing with,

17  you know, contacting members of the putative class says that

18  their attorneys can't do that.  And all they're trying to do

19  is circumvent that law by having their clients contact my

20  clients using words, I'm sure, which are drafted by their

21  counsel nowadays and it's just not appropriate.

22         We want a fair opportunity to talk with our clients

23  not being influenced by them.

24         THE COURT:  Well, that's a well taken point but by

25  the same token, on the other side of the coin, the school

1   district has had all this publicity, Friday, Saturday and

2   Sunday, and they're going to have a lot of parents, if they

3   haven't already, and Mr. Hockeimer has said they have had a

4   number of inquiries, you've got to tell us what's going on.

5          And it's one thing if you've got an individual case

6   and maybe just one client but when you've got a school

7   district loaded with parents I think maybe a middle ground is

8   appropriate.

9          MR. HALTZMAN:  Well, your Honor, my parents are my

10   clients.  I told them, what I suggested to him was as the

11   middle ground, and again, in other words, what a middle

12   ground would be is I asked for advanced copies of what they

13   were going to send out and if I thought there was something

14   objectionable in there I would let them know immediately and

15   if we needed to involve the Court we would.  And that,

16   because I'm not looking to prevent them from sending things

17   out to the students or the parents.

18          So the middle ground that I would propose is that

19   they give me, you know, 24 hours notice of what they intend

20   to send out so that I can look at it and if I think there's

21   something objectionable in there I believe, and we've worked

22   together in other cases, we'll work something out because

23   neither one of us wants to look to create cost or expense of

24   running back to the Court to change the language around so

25   that we're satisfied.

1          THE COURT:  I've utilized that device in other

2     cases.  I don't know that 24-hour notice is necessary, not in

3     this era of e-mails and computer communication, but what

4     about that middle ground?

5          MR. HOCKEIMER:  I think that we could work out those

6     details of timing and things like that but let's try that.  I

7     mean, you're right that we are getting inundated with

8     requests and --

9          THE COURT:  And you, I think, in a -- in some cases

10    it's appropriate to grant the relief that the plaintiff seeks

11    but in this case I can see a reason why a middle ground is--

12          MR. HOCKEIMER:  Right, it makes it --

13          THE COURT:  -- is more appropriate.

14          MR. HOCKEIMER:  Peculiar tension here of the

15    obligation to taxpayers and this district's cognizant of

16    that.

17          THE COURT:  Yes.  Let's try to work through this

18    language.  I'd like to issue an order today.  And maybe what

19    we should do is keep that open and let you work that out in

20    the first instance.  With me sitting up here in a courtroom

21    full of people I'm a little reluctant to start the drafting

22    exercise now.

23          My proposal -- and you might have a better idea --

24    but my proposal is that we finish going through the

25    plaintiffs' draft order and then you -- I'll use the word

1   tweak it or amend it in such a way that's agreeable and if

2   you're at loggerheads I will then -- I will then rule because

3   I'm going to try to end this hearing with an order either in

4   place or almost in place, having to be re-typed.

5          And I'm getting to the provided now.  "Provided

6   however" -- this is the clause in the proposed order that

7   prohibits contact.  "Provided that Lower Merion School

8   District and its employees may contact students in connection

9   with," and there are some exceptions, "educational

10   curriculum," and you can work that out.  That sounds like a

11   perfectly reasonable request.

12          Is there anything in what follows that is

13   objectionable to the school district?  I'm talking about

14   numbered paragraph two which carves out exceptions to the

15   absolute prohibition on school district talking to students

16   or parents?

17          MR. HOCKEIMER:  There is the issue at the bottom at

18   the end of that paragraph, your Honor, it's in the middle of

19   Page 2 about the --

20          THE COURT:  New software.

21          MR. HOCKEIMER:  Right.

22          THE COURT:  And I think there what we're going to

23   have to do is get more input from the computer specialists.

24          MR. HOCKEIMER:  Well, and also more input directly

25   from the IT director at the school district because they'll

1   know what soft-- I mean I think, I'm not a technical person

2   but what I imagine is that there are routine updates and then

3   there are, you know, gosh, there's a virus going around, we

4   better put a patch out there, there's those kinds of updates.

5            But I can talk to them and work with them and try to

6   nail that down.

7            THE COURT:  I think in the short run though we're

8   going to -- I'm going to issue a standstill order and I mean

9   short run.  We'll decide how much additional time you need.

10  You said your forensics computer specialists are already

11  looking at the computers at the school district.  I assume

12  you're talking about the school district headquarters.

13           MR. HOCKEIMER:  Yeah, they're there now.

14           THE COURT:  Fine.  And I'm sure that the plaintiffs'

15  expert is very anxious to take a look at the computers and I

16  think it might be appropriate for the two computer experts or

17  two groups of computer experts to talk with counsel and work

18  this out.

19           But for now it is my intention to provide for no

20  changes in the computers, no new software, software updates

21  or releases and we'll keep that in place.  We'll decide at

22  the end of this hearing how long that should remain in place.

23  My thought is a few days, maybe longer if the computer

24  experts need more time than that.

25           But I don't think we should freeze any updates or

```
 1    new software that would tend to make the computers work less

 2    effectively than they could and should work.

 3             MR. HALTZMAN:  Certainly after the next whether it's

 4    three, five days after my computer experts get in there, I

 5    don't want to stop anything from going to him.  You know, he

 6    talks about viruses, I think Mac would be, an advocate would

 7    be pretty upset with him talking about all these viruses

 8    because they tell you to buy a Mac because it doesn't get

 9    viruses.

10             But the fact of the matter is if after this short

11    window we're able to figure out that it can't be destroyed by

12    these kind of updates we're fine with it.  Right now we

13    believe that the only real evidence if it hasn't already been

14    wiped out is going to be on the computers, the students'

15    computers, not on the server.

16             THE COURT:  I believe there's a way to duplicate the

17    hard drive.  I don't know whether you have to duplicate the

18    entire hard drive.  Is that expensive?

19             MR. HALTZMAN:  Well, it's about $300, roughly, would

20    you say, John?

21             MR. STEINBACH:  In quantity the price can come down.

22    It's impractical clearly to image all 2,000 at this juncture

23    but we could certainly look for the artifacts requesting as

24    to whether the entirety or a portion thereof is imaged, both

25    are possibilities.
```

1          THE COURT:  And could you limit that duplication

2     with the focus on the issue in question, the remote activate

3     of the webcam?

4          MR. STEINBACH:  That would be our intent, to design

5     a mechanism which would facilitate an accurate and rapid

6     identification of those devices which were or were not in

7     fact activated.  In order to do so we would need to perform

8     an architectural analysis of the software that's in use right

9     now and it's a very comprehensive management platform.

10         It's not just used for the purpose that we're

11    describing right now, it's used to perform all manner of

12    activities during the life cycle from the initial deployment

13    of those laptops, a progression of updates and so forth.

14         So it's enormously powerful and the type of update

15    that got pushed out could be very benign or it could do

16    things that unintentionally trample over the very data that's

17    needed in order to prove something important.

18         THE COURT:  Do you have any idea how long your

19    examination --

20         MR. STEINBACH:  My hope would be that we could

21    accomplish that, as Mr. Haltzman suggested, in a matter of

22    days.

23         THE COURT:  Mr. Hockeimer?

24         MR. HOCKEIMER:  I think the suggestion is a good one

25    that our forensic people speak to -- and I didn't get your

1   name.

2            MR. STEINBACH:  Surely, my name is John Steinbach.

3            MR. HOCKEIMER:  Okay.  I think it would be useful

4   for our computer people to talk to Mr. Steinbach, maybe over

5   the phone tomorrow and then, as your Honor suggested, with

6   counsel present we could go over there at some point.  But

7   some of the things he said I'm looking at a scope of work

8   that our guys submitted to us and they're doing those very

9   things.

10           So we're not going to hopefully duplicate efforts

11  but I think we're going to be on the same page on some of

12  these things.

13           THE COURT:  Well, it would be my goal to keep the

14  expense of what has to be done to a minimum.

15           MR. HOCKEIMER:  Yes.

16           THE COURT:  We're talking about the plaintiff class

17  on the one hand and the school district on the other.

18           MR. HOCKEIMER:  Exactly.

19           THE COURT:  And you should focus on expense and do

20  what is necessary but nothing more than what is necessary and

21  if there are alternatives --

22           MR. HOCKEIMER:  And it really --

23           THE COURT:  -- I would utilize he least expensive

24  alternative.

25           MR. HOCKEIMER:  Right.  And it really is at this

1    initial stage to see what if any impact these updates would

2    have on the --

3              THE COURT:  That's the first question regarding the

4    scope of injunctive relief.  But for now in the order that I

5    will issue hopefully today no updates, no changes to the

6    computers until I'm assured the changes will not affect the

7    ability of the plaintiffs to do whatever testing of the

8    computers and examination of the computers is required.

9              Three, and I think there's complete agreement as to

10   three, Lower Merion School District shall preserve all

11   electronic files, data and storage media that pertain to

12   plaintiffs' claims and/or defendants' defenses, including but

13   not limited to the preservation of any and all images

14   obtained by defendants via the remote activation of web

15   cameras embedded in the laptop computers that Lower Merion

16   School District issued to high school students.

17             Is that consistent with your agreement?

18             MR. HOCKEIMER:  Yes, yes, sir.

19             MR. HALTZMAN:  I would just add while we drafted

20   this we have to include web cameras and what's meant to

21   include also not only the taking pictures for the webcam but

22   their getting snapshots on the screen.  I don't think they

23   meant that in us going through this to exclude that.  They're

24   take-- they're not only activating the webcam.

25             THE COURT:  What do they call those?  They're not

1  called snapshots, are they?

2          MR. STEINBACH:  A screen snapshot is what it's

3  called, your Honor.

4          THE COURT:  Screen?  I heard --

5          MR. STEINBACH:  A screen snapshot.

6          THE COURT:  Screen snapshots?

7          MR. STEINBACH:  Yes, sir.

8          MR. HALTZMAN:  So what they're doing is at the same

9  time they're taking a picture, they're also taking a picture

10  of the screen.

11          THE COURT:  Yes, I've seen those.

12          MR. HALTZMAN:  Right, yes.

13          THE COURT:  Not in this case but I've seen --

14          (Laughter.)

15          THE COURT:  And I thought in my earlier cases they

16  referred to them as screen shots, whatever, I know what

17  you're talking about.

18          MR. HALTZMAN:  Well, we'll tweak that to include

19  screen shots so that everybody's clear.  I don't think that's

20  an issue for --

21          THE COURT:  Four, Lower Merion School District shall

22  maintain its existing practice of taking possession of

23  laptops that are currently possessed by students with

24  appropriate authorization only at the end of the school year

25  or in the event of breakage or other technical failure or

1    other disciplinary actions, provided however that Lower

2    Merion School District shall work with its forensic

3    consultant and plaintiffs' forensic consultant and all

4    parties shall cooperate with any law enforcement authority,

5    including but not limited to the United States Department of

6    Justice, the Federal Bureau of Investigation or the

7    Montgomery County District Attorney's Office to determine a

8    means for securely preserving any potentially pertinent data

9    contained on any student's laptop and otherwise preserving

10    and maintaining a chain of custody for all evidence.

11         It's something that perhaps you'll have to get

12    together on.  I know that you've provided something like that

13    in your draft order, not exactly like it.

14         MR. HOCKEIMER:  There is one other issue in there

15    regarding the specific laptop currently in the possession of

16    Blake Robbins.

17         THE COURT:  Oh, I read, I read that.

18         MR. HALTZMAN:  Well, we've actually, believe it or

19    not, actually agreed.

20         THE COURT:  You've agreed to pay the insurance fee?

21    I don't --

22         MR. HALTZMAN:  We've actually agreed to a better

23    solution because there's some question as to who should get

24    it.  So we have agreed that we're going to for his laptop

25    alone we're going to agree upon a third-party forensic person

1  to make the initial snapshot of his and then so we're going

2  to turn it over to that person.  They're also going to

3  provide and then immediately, you know, provided that any

4  fees that may be due for getting a computer he'll get another

5  computer to use in the meantime.

6          It may only take a day to do, if it takes a week to

7  do in the meantime he'll have another computer to use.

8          THE COURT:  You used the term "snapshot."  Snapshot

9  is a one picture on a --

10         MR. HALTZMAN:  Well, actually, the technology that's

11  actually done when they take a picture of the hard drive is

12  to take a snapshot.  They don't actually copy them, they take

13  a picture of the hard drive.

14         THE COURT:  Of the whole hard drive?

15         MR. HALTZMAN:  Of the whole hard drive.  It's

16  actually taking almost like a picture to some extent but if

17  you copy it you can make changes.  But they make up what's

18  called a mirror image, almost like a picture.

19         THE COURT:  Yes, that's the phrase I've heard

20  before.

21         MR. STEINBACH:  I prefer to think of it as a

22  genetically identical twin.

23         THE COURT:  Thank you.

24         MR. HALTZMAN:  But we're actually in agreement on

25  what would be a separate paragraph as to that and we will

1   tweak that for your Honor when you send us back to -- to

2   maybe work out the language about the notice provision

3   working together before they send out announcements because

4   you wanted us to sort of try and feel them out, correct?

5          THE COURT:  Yes.  I propose when we finish going

6   over everything that is controversial I propose going off the

7   bench for a short time and letting you draft the changes

8   because again I think we should try to issue the order today.

9          MR. HALTZMAN:  I think it should take counsel and I

10  maybe ten, fifteen minutes at the most.

11         THE COURT:  I agree.  With respect --

12         MR. HALTZMAN:  We understand, I think we both

13  understand where your Honor's coming from, I think we both

14  understand what you'd like to see and what is appropriate in

15  this situation.

16         THE COURT:  Fine.

17         MR. HALTZMAN:  I think us as counsel can work

18  through that fairly quickly.

19         THE COURT:  And I think the focus should be on the

20  language itself and not necessarily what we -- what we call

21  it.  And I noted in -- I happened to grab one old, old

22  injunction order and it was an injunction by agreement.  And

23  at the end because of the agreed-upon order the motion was,

24  the motion for temporary restraining order was withdrawn

25  without prejudice or denied without pre-- I think was

1   withdrawn without prejudice.

2           MR. HALTZMAN:  Yes, I would rather have it be

3   withdrawn in light of this as opposed to any denial.

4           THE COURT:  Fine.  Well, I understand --

5           MR. HALTZMAN:  Because I'm sure you know what that

6   would mean.

7           (Laughter.)

8           THE COURT:  No, I'm, well, I'm -- "without

9   prejudice" though doesn't hurt you but the term "denial" to

10  someone who seeks relief is not welcome.  No, I think we

11  ought to focus on what's absolutely necessary to protect the

12  interests of the class and at the same time recognize some

13  genuine interests of the school district.  And I think we've

14  come to the point now where I can leave the bench and you

15  could draft an order that accomplishes both goals.

16          Is there anything we should do before that?

17          MR. HALTZMAN:  No, your Honor.

18          MR. HOCKEIMER:  Yeah, I think that's fine, your

19  Honor, thank you.

20          THE COURT:  All right.  My chambers is right there

21  through the door.  I'll go off the bench, I'll leave you to

22  your own devices and hopefully we'll have an agreed-upon

23  order.

24          We can -- I don't know whether you've got computers,

25  we can print, we can do the order in chambers once you agree

1   on the language unless you can do it here.

2          MR. HALTZMAN:  Either way, your Honor.  I don't

3   think, I'm not sure I have it on my laptop so I think that we

4   can probably, based on what we've talked about, clearly mark

5   up this one draft.  It will be easily read and can be then

6   transcribed.

7          THE COURT:  Fine.  And I think we took, I guess it

8   was in -- I talked to Mr. Levin Friday.

9          MR. LEVIN:  Yes, sir.

10          THE COURT:  Trying to reach agreement and failing

11   that having a hearing.  We have, this morning because of some

12   misunderstanding about whether we had a hearing, I thought it

13   was best that we gather although there is essentially an

14   agreement.

15          Under the terms of the agreement I'm just going to

16   raise this issue, it doesn't seem to me that a bond is

17   necessary.  If I were to issue a formal injunction under

18   Federal Rule of Civil Procedure 65 a bond would be necessary.

19          What is the position of the defense on that?

20          MR. HOCKEIMER:  We do not believe a bond is

21   necessary--

22          THE COURT:  Fine.

23          MR. HOCKEIMER:  -- or even relevant under, if it's a

24   stipulated order.

25          THE COURT:  I agree and of course the plaintiffs

1    agree.

2              (Laughter.)

3              MR. HALTZMAN:  I would just ask, I think we have

4    counsel who's been hanging on the phone, I'd like to know

5    whether there's any, you know, any objection they have to

6    what's about to take place.

7              THE COURT:  Mr. Walczak?

8              MR. WALCZAK:  Yes, your Honor.

9              THE COURT:  You've heard what we've been doing?

10             MR. WALCZAK:  Yes, your Honor, I've heard most of it

11   but apparently a speaker attached to the court reporter so

12   I'm hearing a lot of keys and I'm not sure I caught

13   everything.  But it certainly seems like your Honor has done

14   a comprehensive job and certainly our concerns are satisfied.

15             THE COURT:  Is there anything else you wish to say,

16   Mr. Walczak?

17             MR. WALCZAK:  No, your Honor, just thank you for

18   letting me participate remotely.

19             THE COURT:  Well, what we're going to do is issue an

20   agreed-upon order and right now it seems as though all of the

21   issues are agreed upon but, if not, I will issue an order

22   that I think protects the rights of both the plaintiff class

23   and -- putative class and the school district.

24             I noted from your motion that you seek only leave to

25   file your amicus brief, which I have read.  That means no

1    further involvement in the case, Mr. Walczak?

2            MR. WALCZAK:  Your Honor, I think at this point we

3    do not believe that we will intervene but I'd like to reserve

4    the opportunity to change my mind once we see the final

5    order.

6            THE COURT:  Well, there's a difference between

7    filing an amicus brief and I've granted you permission to do

8    that and intervention.  And certainly you have a right to

9    seek intervention if you deem it appropriate, so I guess I've

10   granted your request.

11           (Laughter.)

12           MR. WALCZAK:  Yes, thank you, your Honor.

13           THE COURT:  Thank you.  You may participate in these

14   proceedings, I'm afraid there will be a 15-minute wait.  Or

15   if you prefer, having heard what will transpire and having

16   heard the form of order that will be issued, you may do

17   whatever it is you were doing when I called.

18           MR. WALCZAK:  Thank you, your Honor.  And at this

19   point we're satisfied that the matter is being well handled.

20   Thank you.

21           THE COURT:  Thank you very much.  Then you're

22   excused from further participation in this hearing.  Thank

23   you very much, Mr. Walczak.

24           All right.  I'm going to recess.  Take as much time

25   as you need and tell either my deputy, George Wylesol, or my

```
1    electronic sound recording operator that you're ready and

2    I'll come back to the courtroom.

3                MR. HALTZMAN:  Thank you, your Honor.

4                MR. HOCKEIMER:  Thank you, your Honor.

5                THE COURT:  You may go about your business,

6    everyone.

7                (Court in recess; 3:16 to 4:53 o'clock p.m.)

8                THE COURT:  The crowd has diminished a great deal.

9    We did not want to leave you hanging.  Be seated, please.

10               Counsel at my direction worked out all but a few

11   minor details of an agreement.  They repaired to my chambers

12   and they now have an agreement in place.  And copies will be

13   available as soon as we can make them for those of you who

14   need them.

15               There is an agreement covering what it was that

16   plaintiffs sought in their motion for emergency temporary

17   restraining order and it was signed today at 4:45 p.m.  I've

18   signed the order.  And, again, my deputy, George Wylesol,

19   will make copies if any of you want copies.

20               Lead counsel are in chambers now working on a

21   schedule and I don't think that's of particular interest.

22   Normally scheduling conferences are held in chambers and

23   that's what's going on now.  We're talking about how much

24   time for discovery, how much time for filing motions and

25   scheduling further proceedings.
```

1          As soon as I see what counsel have in mind and

2    decide what is appropriate I will issue a scheduling order,

3    probably dated today, probably won't be filed until tomorrow

4    but it should be available tomorrow.

5          I don't think we need to do or say anything else.

6    Again, I didn't want to leave those of you who are still here

7    just sitting here waiting and having nothing happen.  And

8    that brings you up to the minute.

9          If you have any questions I suggest that you call my

10   deputy, George Wylesol, who is as we speak making copies of

11   this order or you can call my chambers, my secretary will

12   know what's going on.  I don't receive phone calls from the

13   press.  I let my orders and opinions and what I say in open

14   court speak for me.

15         On that note we're adjourned and I thank you.

16         (Pause.)

17         THE COURT:  The motion filed by plaintiffs for

18   emergency temporary restraining order and for permanent

19   injunction will be marked withdrawn by plaintiffs by

20   agreement in view of the separate agreement that they worked

21   out that I just signed which covers all of the relief sought

22   in the motion.

23         MR. LEVIN:  That's without prejudice, your Honor?

24         THE COURT:  Pardon me?

25         MR. LEVIN:  That's without prejudice?

1            THE COURT:  Absolutely.  And it's without prejudice.

2   Thank you very much, Mr. Levin.

3            (Hearing concluded at 4:56 o'clock p.m.)

4                              *  *  *

CERTIFICATION

I hereby certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.


s:/Geraldine C. Laws, CET          Dated 3/2/10
Laws Transcription Service