## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**BLAKE J. ROBBINS**, a Minor, by his Parents :   CIVIL ACTION
and Natural Guardians, **MICHAEL E.**           :
**ROBBINS** and **HOLLY S. ROBBINS**,           :
Individually, and on Behalf of all Similarly    :
Situated Persons,                               :
         Plaintiffs,                    :
                                            :
v.                                              :   NO.  2:10-cv-00665-JD
                                            :
**LOWER MERION SCHOOL DISTRICT**,               :
    and                          :
**THE BOARD OF DIRECTORS OF THE**               :
**LOWER MERION SCHOOL DISTRICT**,               :
    and                          :
**CHRISTOPHER W. McGINLEY**,                    :
Superintendent of Lower Merion School           :
District,                                       :
         Defendants.                    :

### ORDER

AND NOW on this _____ day of _____, 2010, upon the filing of

the Motion of Colleen and Kenneth Wortley, Frances and David McComb, and

Christopher and Lorena Chambers for Intervention, the Emergency Motion of the Neill

Family to Intervene, and Plaintiffs' response thereto, it is hereby ORDERED that:

    1)    The Motion of Colleen and Kenneth Wortley, Frances and David McComb,

and Christopher and Lorena Chambers for Intervention is hereby DENIED; and

2)     The Emergency Motion of the Neill Family to Intervene is hereby GRANTED.

BY THE COURT:

_____
JAN E. DUBOIS, U.S.D.J.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| **BLAKE J. ROBBINS**, a Minor, by his Parents and Natural Guardians, **MICHAEL E. ROBBINS** and **HOLLY S. ROBBINS**, Individually, and on Behalf of all Similarly Situated Persons, | : : : : : | CIVIL ACTION |
| Plaintiffs, | : : | |
| v. | : : | NO.  2:10-cv-00665-JD |
| **LOWER MERION SCHOOL DISTRICT,** and **THE BOARD OF DIRECTORS OF THE LOWER MERION SCHOOL DISTRICT,** and **CHRISTOPHER W. McGINLEY,** Superintendent of Lower Merion School District, | : : : : : : : : : | |
| Defendants. | : | |

## PLAINTIFFS' RESPONSE TO MOTIONS OF WORTLEY FAMILY, ET AL. AND NEILL FAMILY TO INTERVENE

Plaintiffs, Blake J. Robbins, a minor, by his parents and natural guardians, Michael E. Robbins and Holly S. Robbins (hereinafter collectively referred to as "Plaintiffs"), hereby responds to the Emergency Motion of the Neill Family to Intervene (hereinafter the "ACL Motion to Intervene" and collectively  the "ACLU Intervenors") and to the Motion of Colleen and Kenneth Wortley, Frances and David McComb, and Christopher and Lorena Chambers for intervention (hereinafter referred to as the "Boni Motion to Intervene" and collectively as the "Boni Intervenors"), and for the reasons

411481-1                                              1

more fully set forth in the Memorandum of Law, the ACL Motion to Intervene should be granted and the Boni Motion to Intervene should be denied.

**LAMM RUBENSTONE LLC**

By: _____

Mark S. Haltzman, Esquire
Attorneys for **Plaintiffs**

DATED: 5/11/2010

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**BLAKE J. ROBBINS**, a Minor, by his Parents :
and Natural Guardians, **MICHAEL E.**
**ROBBINS** and **HOLLY S. ROBBINS**,
Individually, and on Behalf of all Similarly
Situated Persons,
                 Plaintiffs,

v.

**LOWER MERION SCHOOL DISTRICT**,
       and
**THE BOARD OF DIRECTORS OF THE**
**LOWER MERION SCHOOL DISTRICT**,
       and
**CHRISTOPHER W. McGINLEY**,
Superintendent of Lower Merion School
District,
              Defendants.

CIVIL ACTION

NO.  2:10-cv-00665-JD

### PLAINTIFFS' MEMORANDUM OF LAW IN RESPONSE
### TO MOTIONS FOR INTERVENTION

Plaintiffs, Blake J. Robbins, a minor, by his parents and natural guardians, Michael E. Robbins and Holly S. Robbins (hereinafter collectively referred to as "Plaintiffs"), hereby respectfully submit this Memorandum of Law consenting to the Emergency Motion of the Neill Family to Intervene (hereinafter the "ACL Motion to Intervene" and collectively  the "ACLU Intervenors") and in opposition to the Motion of Colleen and Kenneth Wortley, Frances and David McComb, and Christopher and Lorena Chambers for intervention (hereinafter referred to as the "Boni Motion to Intervene" and collectively as the "Boni Intervenors").

## I.    INTRODUCTION

On March 18, 2010, the Boni Motion to Intervene (Document No. 21) was filed with the Court.  Because the Boni Intervenors seek only declaratory and injunctive relief via a method that "does not include the class action lawsuit," they claim their interests diverge from those of Plaintiffs, and that they are therefore entitled to either intervention as of right pursuant to Fed.R.Civ.P.24(a)(2) or to permissive intervention pursuant to Fed.R.Civ.P. 24(b)(1)(B).  On April 5, 2010, the ACLU Motion to Intervene (Document No. 36) was filed, also seeking only declaratory and injunctive relief, albeit in the context of the instant class action.

Because the Boni Intervenors and the ACLU Intervenors seek essentially the same declaratory and injunctive relief, there is no need for both groups of Intervenors to be granted the right to intervene, as to grant both motions would needlessly add parties, attorneys and their attendant increased costs, delay and case management problems.  For the reasons more fully set forth below Plaintiffs oppose the Boni Motion to Intervene, but do not oppose the ACL Motion to Intervene.

## II.    STATEMENT OF FACTS

Pursuant to Paragraph 30 of the Boni Intervenors Complaint in Intervention: "Shortly after the Robbins Action commenced, four fathers of LMSD high school students established a website, www.lmsdparents.org. ..."  The website itself identifies the founders of lmsdparents.org as "Bob Wegbreit, Tom Grady, Larry Silver and Michael Boni."  (See Exhibit A).  The website goes on to

explain that "Tom and Bob are elected officials of Narberth Borough.  Larry and Michael are attorneys.  All are engaged in this effort solely as parents of LMSD high school children, and neither Tom nor Bob are serving in their official capacity."  Id.  Without ever indicating that the founders intended to file a Motion to Intervene citing the number of responses received to a "Parent Petition," the founders solicited potential intervenors by asking visitors to the website to endorse a petition in support of the following statement:

> We are parents or guardians with one or more high school children at Harriton or Lower Merion High School, who have been issued a laptop equipped with a webcam.  We are aware of the lawsuit Robbins v. Lower Merion School District.  We seek a resolution of the webcam issue that is in the best interests of our children and the Lower Merion School District, **one that does not involve the class action lawsuit.**

(See Exhibit B)(Emphasis added.)  Based upon visitors' alleged responses, the Boni Intervenors allege "within one week thereafter, 460 parents and between 500 and 600 LMSD High School students endorsed the petition."   (Boni Intervenors Complaint in Intervention, ¶31).

It is undisputed that counsel of record for the Boni Intervenors include Larry D. Silver, Michael J. Boni, and Thomas F. Grady the same individuals who formed lmsdparents.org.  It is also undisputed that the relief requested in the Boni Intervenors Complaint in Intervention is solely for equitable relief seeking to permanently disable the ability to remotely activate student's laptops and the creation of policies and procedures for any future use of any theft tracking technology, including full disclosures and consent from students and parents.

3

Mr. Boni has, since the filing of the Boni Motion for Intervention, given numerous interviews to the press, and has posted on the website his letter of April 23, 2010 to the Court seeking prior restraints upon the press to report on the issues in the litigations.[1]  In so doing, and in apparent pursuit of a personal agenda of self aggrandizement , Mr. Boni takes credit on his website by stating that:

> On April 14, 2010, the Court issued an Order that, we are happy to report, has provided our group what we sought from the outset in our efforts to intervene: a seat at the negotiating table along with the School District and counsel for the Robbins.  We have already had two meetings with the parties' counsel, and have made substantial progress in negotiating the terms of permanent injunctive relief, which means a Court Order requiring the School District to take certain actions and refrain from taking other actions.

On Monday, May 3, 2010, USA Today reported as follows, quoting Mr. Boni:

> Other parents believe the lawsuit, which the Robbins' family wants to be a class action, could raise taxes and prevent parents from getting answers.  **"It's almost like filing a suit against ourselves**," says Michael Boni, who formed a parents' group opposing the class action.  'We want accountability; we do not want scapegoating."

(See Exhibit C)(Emphasis added.).

The ACLU Intervenors' Complaint in Intervention seeks relief pursuant to the Fourth Amendment or the United States Constitution (Count I); 42 U.S.C. §1983 (Count II); Article I, Section 8 of the Pennsylvania Constitution (Count III); and Article I Section 1 of the Pennsylvania Constitution (Count IV).  The relief

---

[1] Boni's April 23, 2010 letter was so outrageous as to its requested relief that the ACLU sent the Court a letter objecting to Boni's letter as a prior restraint of the First Amendment Right of Free Speech. Plaintiff also sent a response. The Court also apparently found no merit in Mr. Boni's arguments as it refused to grant any of the relief requested.

requested, a declaratory judgment pursuant to 28 U.S.C. §2201 is as follows:

> 65. A declaration prohibiting the District from using the tracking system in a manner that constitutes an unreasonable search of students and their families would be conclusive and would be a practical help to the parties as it would protect the Neill family's constitutionally-protective right to privacy from unauthorized infringement and would provide the District with guidelines regarding the constitutionally-permissible use of the tracking system.
>
> 73. A declaration prohibiting dissemination of the fruit of the District's illegal searches to any persons other than those whose privacy was invaded by any given search would be conclusive and would b a practical help to the parties as it could protect the Neill family's right to privacy.

Unlike counsel for the Boni Intervenors, counsel for the ACLU Intervenors has worked quietly behind the scenes in a cooperative way with counsel for Plaintiffs and counsel for Defendants to fashion appropriate equitable relief. Counsel for the ACLU Intervenors has not sought publicity, has not taken credit for the work of others, and has not sought the imposition of prior restraints which would impinge upon the constitutional rights of others.

Plaintiffs' Class Action Complaint was filed on February 16, 2010, seeking class certification pursuant to Fed.R.Civ.P. 23(b)(1), 23(b)(2) and 23(b)(3). Pursuant to Local Rule 23.1(c), unless otherwise extended by the Court upon a showing of good cause, a Plaintiff shall move for class certification "[W]ithin ninety (90) days after the filing of a complaint in a class action… ."[2] Accordingly, Plaintiffs must file a Motion for Class Certification on or before June 7, 2010.

---

[2] Ninety days from the date of filing the Complaint is May 17, 2010. By Order dated May 11, 2010, this date was extended to June 7, 2010.

5

Counsel for Plaintiffs, Defendants and the ACLU are currently involved in productive discussions pertaining to the wording of a possible permanent injunction which could serve to resolve Plaintiffs' equitable claims.[3]  It is hoped that a resolution of all the necessary equitable relief can be achieved prior to June 7, 2010.  It is anticipated further that once the equitable injunctive relief requested by Plaintiffs is made permanent, and students and parents who were spied upon have had the opportunity to review the screen shots and webcam pictures taken, that the Plaintiffs will be in a position to withdraw the class claims for damages.  This will permit the parents of students who were spied upon by the School District to bring individual damage actions for punitive and compensatory relief.

### III.   LEGAL ARGUMENT

### A.   PLAINTIFFS DO NOT OPPOSE THE ACLU MOTION FOR INTERVENTION, AND SAID MOTION SHOULD BE GRANTED.

Given that Plaintiffs will not be seeking certification of a damage class pursuant to Rule 23(b)(3), Plaintiffs do not believe that there exists a divergence of interest between Plaintiffs and the ACLU Intervenors sufficient to support intervention as of right. However, in an abundance of caution, and assuming that there still exists some modicum of divergent interest between Plaintiffs and ACLU Intervenors sufficient to permit permissive intervention, Plaintiffs welcome the ACLU's participation in the parties' efforts to arrive at declaratory and injunctive

---

[3] On May 5, 2010, Plaintiffs filed their Motion to Modify the Court Order of February 22, 2010, as Amended by Court Order of March 10, 2010, as Supplemented by Order of April 14, 2010 (Document No. 59). Attached thereto is a form of Order for Interim Injunctive Relief, the language of which has been agreed to by counsel for Plaintiffs, Defendants and the ACLU. Only the Boni Intervenors disagree with the wording of this proposed Order. It is anticipated that if the injunctive relief set forth in the proposed Order were to be made permanent, this Order would provide the basis for a resolution of Plaintiffs equitable claims.

relief which fully protects class members privacy rights. The ACLU possesses a wealth of expertise and experience with the constitutional issues involved in this litigation, and their contribution towards the framing of a final permanent injunction will greatly aide the parties and the Court.

**B.** **BECAUSE, GIVEN PLAINTIFFS' INTENTION TO VOLUNTARILY DISMISS THEIR CLASS DAMAGE CLAIMS, THERE EXISTS NO DIVERGENT INTEREST BETWEEN PLAINTIFFS AND THE BONI INTERVENORS, AND BECAUSE THE BONI INTERVENORS ARE ALREADY ADEQUATELY REPRESENTED BY PLAINTIFFS, THE BONI INTERVENORS CANNOT SATISFY THE REQUIREMENTS FOR EITHER INTERVENTION AS OF RIGHT OR PERMISSIVE INTERVENTION.**

**1.    Standards Applicable to Motion for Intervention.**

Intervention as of right is governed by Fed.R.Civ.P. 24(a)(2) which provides, in pertinent part, that: "On timely motion, the court must permit anyone to intervene who: ... (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." The Third Circuit has held that before a motion for intervention as of right can be granted, a movant must establish four elements: (1) the application for intervention is timely; (2) the applicant has sufficient interest in the litigation; (3) the interest may be effected or impaired, as a practical matter by the disposition of the action; and (4) the interest is not adequately represented by an existing party in the litigation. See In re Community Bank of N. Virginia, 418 F.3d 277, 314 (3rd Cir. 2005); see also Kleissler v. U.S. Forest Service, 157 F.3d 964, 969 (3rd Cir. 1998). Moreover, "the applicant carries the burden of proving all four parts of the test

under Rule 24." <u>Benjamin v. Department of Public Welfare of the Commonwealth of Pennsylvania</u>, 2010 WL 891828, *2 (M.D. Pa. 2010), citing <u>United States v. Alcan Aluminum</u>, 25 F.3d 1174, n.9 (3rd Cir. 1994). Accordingly, the *sine qua non* of a motion for intervention is that the interests of the moving party and the interests of the present parties diverge, such that the disposition of the action without the participation of the proposed intervenors would impair their interest.

If there is no divergence of interest, there is no basis for intervention as of right. See <u>Benjamin</u>, 2010 WL 891828 at *5 ("Once an applicant for intervention has established that he or she has a sufficient legal interest in the underlying dispute, the applicant must also show that the interest is in jeopardy in the lawsuit."). Where a moving party's claim of divergent interest is found to be without merit, courts routinely deny motions to intervene. Id. at *6 (Motion to Intervene denied where "applicants have failed to demonstrate that their alleged interests sufficiently diverge with those of Defendants such that there is a risk that Defendants cannot or will  not devote proper attention to applicant's interest."). See also <u>Sullivan v. DB Investments, Inc.</u>, 2006 WL 892707, *4 (D. N.J. 2006) (Motion to Intervene as right denied as "there is no indication that the organization itself had an interest in the litigation beyond those already represented."); <u>In re Community Bank of Northern Virginia and Guaranty Bank Second Mortgage Litigation</u>, 2008 WL 239650 (W.D. Pa. 2008) (Motion to Intervene denied where moving party failed to demonstrate adversity of interest, collusion or nonfeasance on the part of party already in the suit).

Permissive intervention is governed by Rule 24(b). Rule 24(b) provides in pertinent part: "On timely motion, the court may permit anyone to intervene who: … has a claim or defense that shares with the main action a common question of law or a fact … ." Fed.R.Civ.P. 24(b)(1)(B). Moreover, Rule 24(b)(3) provides that: "In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original party's rights." Accordingly, in order for permissive intervention to be warranted, the Court should consider 1) whether the proposed intervenors will add anything to the litigation, 2) whether the proposed Intervenors' interests are already represented, and 3) whether the proposed intervention would unduly delay the original party's claims. See Hoots v. Pennsylvania, 672 F.2d 1133, 1136 (3d Cir. 1982).

### 2. Assuming The Court Grants The ACLU Motion To Intervene, The Boni Intervenors' Interests Are Redundant And There Is No Need For Additional Intervenors.

Both the ACLU Intervenors and the Boni Intervenors seek the same relief (declaratory and injunctive relief) for the same conduct of Defendants. Their ultimate goals (and the goals of the Robbins' who brought the lawsuit) are identical: to obtain a permanent injunction to prevent Defendants from any further invasion of privacy rights of students and parents, and to ensure that there is no improper dissemination of the photographs and screen shots already illegally obtained by Defendants. There is no reasonable basis to believe that, if the ACLU Intervenors are permitted to intervene in this action, they will not adequately represent the self-same interests professed by the Boni Intervenors. Given these circumstances, all that would be achieved by permitting the Boni

411289-1

9

Intervenors to intervene would be to <u>add eight more attorneys</u> and additional parties to this action,[4] with their attendant increased costs, delay and management problems, for no conceivable gain.   Indeed, <u>adding additional attorneys and parties to this litigation would only exacerbate the extent of the invasion of students' privacy</u> insofar as even more persons would be granted access, via discovery, to materials currently limited to counsel for Plaintiffs and counsel for Defendants. Accordingly, because intervention by both the ACLU Intervenors and Boni Intervenors would be completely redundant and therefore needless, and would only result in increased case management problems, the Boni Motion for Intervention should be denied.

> **3.    As There Are No Divergent Interests Between Plaintiffs And The Boni Intervenors, There Is No Basis For Intervention As Of Right Or For Permissive Intervention.**

Preliminarily, it should be noted that the Boni Motion for Intervention is somewhat of a misnomer if not a complete anomaly.   Ordinarily, when a party seeks to intervene in a class action, they seek to participate in the class action, as is true with respect to the ACLU Intervenors. However, it is the intention of the Boni Intervenors, as expressed on their website, to achieve their goals in a way "that does not involve the class action lawsuit." Accordingly, the Boni Intervenors seek to eliminate rather than participate in Plaintiffs' class action.[5]  The rationale underlying this unusual stance is perhaps best explained by Mr. Boni's quote in

---

[4] Six attorneys signed the Boni Motion to Intervene:  Larry D. Silver, David E. Romine, Bart D. Cohen, Neill W. Clark, Michael Boni and Thomas F. Grady.  In addition, two other attorneys from Berger & Montague, P.C., David Sorensen and Sheryl Levy are also involved, bringing the number of additional attorneys to eight.

[5] In light of the Boni Intervenors stated intention to object to a class action, it might be best for the Court to postpone its determination of the Boni Motion to Intervene until the Court has decided Plaintiffs' Motion for Class Certification.

U.S. Today that, referring to Plaintiffs' class action "it's almost like filing a suit against ourselves." Given this mindset, perhaps it is understandable that the real interests of the Boni Intervenors are apparently more aligned with those of Defendants than those of Plaintiffs, insofar as the Boni Motion to "Intervene" is really a thinly veiled attempt to eviscerate the very class action the Boni Intervenors supposedly seek to participate in.

Given that Plaintiff will not seek certification of a damage class, what at first appeared to be a divergence of interest between Plaintiffs and the Boni Intervenors with respect to the relief requested no longer exists.[6]   Now, Plaintiffs and the Boni Intervenors seek the same permanent injunctive relief for the same conduct by Defendants. As set forth above, the existence of significant divergent interests is the *sine qua non* for intervention as of right, as there must be an impairment of interest to satisfy Rule 24(a).   Since there is no longer any significant divergence of interest between Plaintiffs and the Boni Intervenors, there exists no basis to grant the Boni Motion to Intervene as of right.[7]

Nor is there any basis to grant the Boni Intervenors' request for permissive intervention.  The Boni Intervenors expressly state that they "have no interest in

---

[6] Plaintiffs' Class Action Complaint sought both equitable relief (declaratory and injunctive relief) and damages (compensatory and punitive damages).  However, Plaintiffs intend to voluntarily dismiss their class claims for damages, and will seek certification of an equitable class only.  This will allow students and parents who were spied upon by Defendants to bring separate actions for the damages sustained by them via the invasion of their privacy from Defendants' actions.

[7] Other than the fact that the Boni Intervenors do not seek monetary relief, which is no longer an issue given Plaintiffs intention to voluntarily dismiss their class claims for damages, the Boni Intervenors also claim divergence on the basis that only Blake Robbins was the subject of disciplinary action.  However, this is a distinction without a difference as this fact alone would not provide any basis for an assertion of individual defenses unique to Blake, as his privacy was invaded **in the exact same manner** as all other Plaintiffs **prior to** any such attempted disciplinary action. Moreover, no disciplinary action was ever taken against Blake as Ms. Matsko's suspicions proved unfounded.

11

sweeping LMSD wrongdoing under the rug. They are as interested in a full accounting as are all other parents [including Plaintiffs], determining the extent of that wrongdoing, establishing the appropriate consequences, and securing appropriate injunctive relief to ensure that it does not re-occur."[8] (Memorandum of Law in Support of Motion of Colleen and Kenneth Wortley, Frances and David McComb, and Christopher and Lorena Chambers for Intervention, p.2). Plaintiffs, who will no longer be seeking the certification of a damage class, have the exact same agenda as the publicly stated agenda of the Boni Intervenors, such that Plaintiffs' interests and the interests of the Boni Intervenors converge rather than diverge. For the same reason, Plaintiffs, in their Motion to Certify an Equitable Class Pursuant to Rule 23(b), will assert the same interests as those publicly expressed by the Boni Intervenors. Moreover, "if the person seeking to [permissively] intervene has the same goal as the existing party, there is a presumption of adequacy [of representation]." Pereira v. Foot Locker, Inc., 2009 WL 1214240, *4 (E.D.Pa. 2009). See also In re Community Bank of North Virginia, 418 F.3d 277, 314 (3d Cir. 2005)( Where "parties seeking intervention have the same ultimate objective [permanent injunctive relief] as a party to this suit, a presumption arises that its interests are adequately represented... .").

Where, as here, the Plaintiffs and the Boni Intervenors share the same goals such that the interests of the Boni Intervenors are already represented in this litigation, and their appearance as intervenors would add nothing but increased costs, expense and delay to this litigation, permissive intervention is

---

[8] Plaintiffs dispute this contention and based on the conduct to date of the Boni Intervenors, the Boni Intervenors want to quickly sweep the action, against the District "under the rug" so that the publicity surrounding the District's invasion of student's privacy rights will end.

inappropriate.   "The Third Circuit has explained that if the interests of the proposed intervenors are already represented in the litigation, courts typically deny such applications to intervene." Benjamin, supra at *8.

Because there exists insufficient grounds to grant the Boni Intervenors request for intervention as of right and/or for permissive intervention, the Boni Motion to Intervene should be denied.

**C.    BECAUSE ATTORNEYS SILVER, COHEN, CLARK, BONI AND GRADY, AS MEMBERS OF THE PUTATIVE CLASS AND TAX PAYERS IN LOWER MERION TOWNSHIP CANNOT RENDER INDEPENDENT PROFESSIONAL ADVICE TO THE BONI INTERVENORS, THIS COURT SHOULD FAVOR THE ACLU INTERVENORS OVER THE BONI INTERVENORS.**

Attorneys Larry D. Silver ("Silver"), David E. Romine ("Romine"), Bart D. Cohen ("Cohen"), Neill W. Clark ("Clark"), Thomas F. Grady ("Grady") and Michael J. Boni ("Boni") have all signed the Boni Motion to Intervene as counsel for the Boni Intervenors.  As Pennsylvania attorneys, all are subject to the Rules of Professional Conduct (the "Rules").   The Rules "are rules of reason. They should be interpreted with reference to the purpose of legal representation and of the law itself." Preamble [14]. "Some of the Rules are imperatives, cast in terms of 'shall' or 'shall not.' These define proper conduct for purposes of professional discipline." Id.  Others are more permissive in nature and subject to professional discretion.

Rule 2.1, an imperative rule, states in pertinent part: "[I]n representing a client, a lawyer shall exercise independent professional judgment and render candid advice." Accordingly, all advice given by a lawyer to a client must be truly independent advice, unaffected by any individual bias or interest on the part of

the lawyer. Indeed, "loyalty and independent judgment are essential elements in the lawyer's relationship to a client." Explanatory Comment [1] to Rule 1.7. Pursuant to Rule 2.1, anything which interferes with a lawyer's ability to offer independent professional advice to a client should preclude the lawyer's representation of that client.

It is undisputed that Messrs. Silver, Cohen, Clark, Boni and Grady are parents of LMSD high school children and, as such, are also members of the putative class. It is also undisputed that they are all taxpayers of Lower Merion Township, and as such, have a direct pecuniary interest in the outcome of this case. With specific reference to this case, Mr. Boni expressly recognized as much when he was quoted in USA Today saying: "It's almost like filing a suit against ourselves." Given this set of facts, it is readily apparent that Messrs. Silver, Cohen, Clark, Boni and Grady are representing themselves, as well as the Boni Intervenors. This has fatal implications for their ability to render independent professional advice to their clients.

As noted by the Supreme Court of The United States: "The adage that 'a lawyer who represents himself has a fool for a client' is the product of years of experience by seasoned litigators." Kay v. Ehrler, 499 U.S. 432, 438, 111 S. Ct. 1435 (1991). The Justices recognized that "even a skilled lawyer who represents himself is at a disadvantage in contested litigation [because] . . . he is deprived of the judgment of an independent third party in . . . making sure that reason, rather than emotion, dictates the proper tactical response to unforeseen developments in the courtroom." Id. at 437. See also Falcone v. I.R.S., 714 F.2d 646, 647 (6th

Cir.1983) (An attorney who represents himself in litigation may have the necessary legal expertise, but is unlikely to have the detached and objective perspective necessary. . .").

Mr. Boni's conduct in particular evidences the fact that, because he is a party to this litigation as well as counsel to the Boni Intervenors, he does not possess the detached and objective perspective necessary to render unbiased advice to his clients as required by Rule 2.1. To the contrary, Mr Boni's personal agenda of self-aggrandizement and his desire to eliminate media coverage makes it impossible for Mr. Boni to render dispassionate and unbiased legal advice to Boni Intervenors .  Examples of such behavior are as follows:

- The Boni Intervenors have violated the most sacred rule in which attorneys operate, that is, failing to maintain the confidentiality of the parties discussions for the sole purpose of furthering their own agenda.   Every attorney knows that the ability to communicate openly with opposing counsel in an effort to reach resolution of issues is dependent upon a mutual understanding that these communications will not be used for personal gain. This "mutual understanding" was specifically stated prior to a recent meeting among the Boni Intervenors, the District, and Plaintiffs' counsel to discuss additional injunctive relief. The Boni Intervenors violation of this sacred principle makes them unqualified to be involved in the litigation.

- The Boni Intervenors have made it clear that their objective is to,

despite the previous public statement to the contrary, sweep the Lower Merion School District's Constitutional violation of the rights of students and parents "under the rug," so as to quickly end any negative publicity which they believe impacts upon their own personal lives. However, in the proper exercise of their legal obligation to the Intervenors, and to the proposed class, their own personal agendas must not be taken into consideration. The Boni Intervenors are incapable of separating their own personal interests from their advice and guidance as required of them by the Pennsylvania Rules of Professional Conduct.

- The Boni Intervenors are not part of the group of students that the School District has admitted to secretly activating their laptops and who will be given the opportunity to view the results of that improper activity the screen shots and webcam pictures.[9] As such, the Boni Intervenors have not been harmed to the same extent as other students and parents who have suffered the consequences of this unlawful invasion of privacy.

- The Boni Intervenors apparent goal in getting involved in this litigation is to attempt to take "credit" for the substantial efforts made by the Robbins family and the District, in a cooperative manner, to quickly end the use of the LanRev technology. It is the Robbins that filed a request for an emergency injunction to begin the process of shutting down the LanRev technology in a manner to

---

[9] This statement is based on the review of the discovery received to date.

16

protect the privacy of students and the parents. It is the Robbins family and the District that have continually worked from day one to modify the original injunctive relief to insure that not only was the spying stopped, but that it could not happen again. Rather than wanting to work cooperatively with the District and the Plaintiff, the Boni Intervenors want to insert themselves into the litigation so as to take credit for the efforts of the Robbins family and the District, to further their own personal agendas. This kind of conduct is not conducive to the prompt resolution of the litigation, which is in the best interest of not only the students and the parents, but of the entire Lower Merion School District community.

- In an effort to further their own personal agenda, the Boni Intervenors have written to the Court seeking to infringe upon the First Amendment Right of the Press to the report about the matters in this case, matters which present significant Constitutional concerns not only to the Lower Merion community but to the nation at large. It is disingenuous to believe that the Boni Intervenors will diligently work to learn the truth about the School District's violation of the students and parents' Fourth Amendment Rights to be free from Unlawful Search and Seizure when they are so willing to trample on the First Amendment Right of the Press.

Because Messrs. Silver, Cohen, Clark, Boni and Grady's status as putative class members and taxpayers of Lower Merion Township render them

incapable of giving the Boni Intervenors the "independent professional advice" demanded by Rule 2.1 of the Rules of Professional Conduct, this Court should find them to be unqualified to act as counsel for the Boni Intervenors and should prefer the intervention of the ACLU Intervenors over that of the Boni Intervenors.

## D. THE BONI MOTION FOR INTERVENTION SHOULD BE DENIED AS THE REPRESENTATIVE CLASS MEMBERS WERE IMPROPERLY SOLICITIED.

In Gulf Oil Company v. Bernard, 452 U.S. 89, 101 S. Ct. 2193 (1981), the Supreme Court questioned the constitutionality, on First Amendment grounds, of per se restrictions on counsel's communications with class members. Since Gulf Oil, and with respect to class actions, "the absolute ban on solicitation has been relaxed and a number of exceptions have been developed." Newberg on Class Actions, 4th ed. §15.4. It is currently recognized that "...many class action attorneys establish internet websites for specific class actions, in addition to using conventional means of communication, such as newspapers. Most judges are reluctant to restrict communications between the parties or their counsel and potential class members, except when necessary to prevent serious misconduct." MCL 4th §21.12. Accordingly, the current attitude is to permit some indirect communication between counsel and potential class members, such that counsel may generally solicit potential class members via internet websites. However, "... even permitted forms of solicitation can be abused. Thus any solicitation which contains information which is false or misleading within the meaning of Rule 7.1...is prohibited." Newberg on Class Actions 4th ed. §15.4 Comment [5] (emphasis added). Furthermore, "it is clear that improper solicitation of clients by

attorneys will not be tolerated, whether in the context of a class action or otherwise." Id, Comment [8].

Assuming for purposes of this argument that the creation of the lmsdparents.org website for the purpose of soliciting potential intervenors was not in itself violative of any ethical rules, the fact that it omits any mention of this purpose renders the website materially misleading, in violation of Rule 7.1, and therefore unethical.  Rule 7.1 states:

> A lawyer shall not make a false or misleading communication about the lawyer or the lawyer's services.  A communication is false or misleading if it contains a material misrepresentation of fact or law, or <u>omits a fact necessary to make this statement considered as a whole not materially misleading</u>. (Emphasis added).

In paragraph 30 of their Complaint in Intervention, the Boni intervenors admit that:

> Shortly after the Robbins Action commenced, four fathers of LMSD high school students established a website, www.lmsdparents.org on which parents who are members of the putative class alleged in the Class Action Complaint were asked to endorse a petition in support of the following statement:

>> We are parents or guardians with one or more high school children at Harriton or Lower Merion High School, who have been issued a lap top equipped with a webcam.  We are aware of the lawsuit Robbins v. Lower Merion School District.  We seek a resolution of the webcam issue that is in the best interests of our children and the Lower Merion School District, one that does not involve the class action lawsuit.

Immediately under the wording of the Parent Petition referred to in paragraph 30 above, website visitors were directed as follows:

> If you agree with this statement please go to: Click here to take survey.

(See Exhibit B). If the visitor did "click here," they were then taken to a second page on the website where they were asked, *inter alia*, to "Please confirm your name, address and e-mail." (Id). Nowhere on either page is it mentioned that the responses received would be used to solicit either named representatives of a proposed intervenor class and/or potential intervenors.

Plainitffs' Class Action Complaint was filed on February 16, 2010. The Boni Motion to Intervene was filed on March 18, 2010. Given the time period between the filing of Plaintiffs Complaint and the Boni Motion to Intervene, and given the Boni Intervenors admission that the website was created "shortly after the Robbins Action commenced...," it is reasonable to presume that Colleen and Kenneth Wortley, Frances and David McComb, and Christopher and Lorena Chambers were identified as a result of their response to the Parent Petition on the website. If so, they were the victims of an improper solicitation by counsel for the Boni Intervenors in so far as the website never informed visitors of its true purpose:  to solicit class members.  Such an omission renders the website materially misleading within the meaning of Rule 7.1, and is therefore unethical. Because the Boni Intervenors were themselves product of an unethical solicitation by their counsel, the Boni Motion to Intervene should be denied.

## IV. CONCLUSION

For all of the reasons set forth below, this Court should grant the ACLU

Motion for Intervention and deny the Boni Motion for Intervention.

Respectfully submitted,

**LAMM RUBENSTONE LLC**

By: _____
Mark S. Haltzman, Esquire
Atty. I.D. No. 38957
Frank Schwartz, Esquire
Atty. I.D. No. 52729
Stephen Levin, Esquire
Atty. I.D. No. 19300
Attorneys for Plaintiffs

Date: 5/11/2010

# EXHIBIT A



# FAQ (FREQUENTLY ASKED QUESTIONS)

WELCOME    CORRESPONDENCE    PARENT PETITION    COURT ORDERS AND PLEADINGS.    FAQ
CONTACT US

## 1.Who formed the group lmsdparents.org?

Bob Wegbreit, Tom Grady, Larry Silver and Michael Boni formed the group lmsdparents.org. Tom and Bob are elected officials of Narberth Borough. Larry and Michael are attorneys. All are engaged in this effort solely as parents of LMSD high school children, and neither Tom nor Bob are serving in their official capacity.

## 2.  What are the objectives of this initiative?

We have experienced a groundswell of opposition to the class action that was filed in connection with the laptop/webcam issue. Our primary objective is to devise and implement strategies to facilitate a fair, satisfactory, and expeditious resolution to the issues under investigation. Because we believe the class action impedes that objective, we seek to provide an alternative means of representing the interests of LM and Harriton HS students and parents.

## 3.Are you being compensated for your services?

No.  This is a pro bono effort, meaning that counsel

# EXHIBIT B

# PARENT PETITION

WELCOME     CORRESPONDENCE     PARENT PETITION     COURT ORDERS AND PLEADINGS.     FAQ
CONTACT US

**"We are parents or guardians with one or more high school children at Harriton or Lower Merion High School, who have been issued a laptop equipped with a webcam. We are aware of the lawsuit Robbins v. Lower Merion School District. We seek a resolution of the webcam issue that is in the best interests of our children and the Lower Merion School District, one that does not involve the class action lawsuit."**

**If you agree with this statement, please go to:**

Click here to take survey



## LMSD High School Parent Petition

**Exit this survey**

**1.**

**✱1. I agree with the following:**

"We are parents or guardians with one or more high school children at Harriton or Lower Merion High School, who have been issued a laptop equipped with a webcam. We are aware of the lawsuit Robbins v. Lower Merion School District. We seek a resolution of the webcam issue that is in the best interests of our children and the Lower Merion School District, one that does not involve the class action lawsuit."

○  Yes

**2. I am the parent of:**

| | Please check appropriate box |
|---|---|
| a Harriton High School student | ☐ |
| a Lower Merion High School student | ☐ |

**✱3. Please confirm your name, address and email**

We will not share or sell this list, or otherwise disclose to anyone the names on it, except to the extent we may be required by the Court to produce the list in connection with the pending litigation.

**4. If you would like to support this effort further, please include a phone number so we may contact you as this process unfolds.**

[ Done ]

# EXHIBIT C

www.usatoday.com    THE NATION'S NEWSPAPER    $1.00

**SPORTS SCORES**



### Time for respect?
■ Even with three Derby wins, Calvin Borel tries to keep it simple. Will reluctant owners now turn to him? Profile, 1C

By Matthew Stockman, Getty Images
**Winner:** Rode Super Saver to roses.



# USA TODAY
**NO. 1 IN THE USA**

■ Readers: Save 'Law & Order,' 1, 5D



### Four stars are born
■ *Babies* follows early steps of infants. Our panel of moms weighs in on documentary, opening Friday, 1-2D

Focus Features
**Her closeup:** Ponijao of Namibia.



2011 Hyundai Sonata    2010 Toyota Camry, AP    2010 Suzuki Kizashi

## Which family car is best?


THE $25,000 MIDSIZE SEDAN SHOOTOUT

■ Experts, family rate eight sedans less than $25,000. Findings, 1-2B

---

**Monday, May 3, 2010**

## Newsline
■ News ■ Money ■ Sports ■ Life



### United and Continental to merge
☒ Combination of airlines, to be called United, would create world's largest carrier, 1B

Bloomberg

### Torrential rains slam South



☒ Storm system blamed in Tennessee, Mississippi deaths; left, a rescue in West Nashville, Tenn., 3A

By Shelley Mays, The Tennessean

### Debate builds over Arizona
☒ Weekend protests highlight tensions about tough new immigration law, 4A

### Boston hustles after water main break
Officials say schools will reopen today after a suburban pipe rupture affects 2 million people. 4A

### School district under fire over webcams
Parents of a Pennsylvania high school student say

---

## Crisis on the Gulf Coast



By Chris Graythen, Getty Images
**A move to contain the approaching oil:** Eddie Soto, working with Resolve Marine Group, carries oil containment booms to the edge of Lake Pontchartrain in New Orleans on Sunday.

# As spill grows, the urgency increases

### Impact could stretch from La. to Florida



siana coast. President Obama visited the area Sunday and vowed to do "whatever it takes for as long as it takes to stop this crisis."

Obama told a group of lo-

---

# New York car-bomb probe in full swing

## Taliban claims not backed, police say

By Kevin McCoy and Joan Biskupic
USA TODAY

NEW YORK — Times Square returned to normal Sunday while authorities investigated a makeshift car bomb that Police Commissioner Raymond Kelly said could have caused a "significant fireball" and many casualties if it had exploded in the city's crowded theater district.

Kelly said no evidence existed to back up a claim of responsibility by Pakistani Taliban but stressed police were pursuing all angles. He said police are examining propane tanks, fireworks and other materials collected from the Nissan Pathfinder that began emitting smoke. Mayor Michael Bloomberg said a T-shirt vendor first alerted police Saturday.

Kelly said agents were headed to Pennsylvania to interview a tourist who may have recorded a suspect on his video camera. Kelly said a white man in his 40s was seen in an alley behaving furtively, shedding a dark shirt and putting it in a bag. Police were reviewing Times Square surveillance tapes.

The FBI and other federal authorities are working with New York police, and President Obama said officials would take the steps necessary "to deter-



"Parents want to know": After the order to stand down, Lower Merion School District's laptop controversy. Mary Walsh whose son attends in 10th grade, started the Facebook group "Reasonable LMSD" urged to District to Rush a judgment."

# School district's webcam surveillance focus of suit

## 56,000 pictures of students taken by theft-tracking devices

By Martha T. Moore
USA TODAY

ARDMORE, Pa. — Katerina Perich lists her stock while

# taken by theft-tracking devices

By Martha T. Moore
USA TODAY



By Lori Waselchuk for USA TODAY

**Filed suit:** Mike and Holly Robbins, with children Blake and Paige, sued Lower Merion School District over theft-tracking software that automatically snapped photos of students.

ARDMORE, Pa. — Katarina Perich uses her sleek white MacBook every day. The ninth-grader carries it to class at Lower Merion High School, she works on it sitting on the hallway floor during breaks, and she takes it home with her overnight. That's just the point of a school district program that issues laptops to every high school student.

But once, while hanging out with friends, Katarina noticed a glowing green light on her computer signaling that the built-in webcam had been turned on.

"It was just really creepy," she says. She covered the webcam lens with tape.

Now Katarina and her classmates know they had reason to worry. As the result of a student lawsuit, Lower Merion School District has admitted theft-tracking software for the district's 2,600 student laptops activated webcams and automatically snapped photos of kids in school and at home. Over two years, the district captured 56,000 images, including shots of students and the images on their computers.

The family of Blake Robbins, 15, has filed a federal lawsuit claiming invasion of privacy. The U.S. attorney is investigating, and the American Civil Liberties Union is supporting the Robbinses' suit. The school board regrets its "mistakes and misguided actions," according to a letter to parents from board president David Ebby. A lawyer for the school district will present results of an investigation at a school board meeting today. The webcam activation software has been disabled.

The unusual case of school-sanctioned spying — and the national and international publicity it has caused — has roiled the leafy precincts of Bryn Mawr, Gladwyne and other communities in Lower Merion Township, a well-heeled area of Philadelphia's Main Line suburbs. Families here are more accustomed to their school's academic success — its SAT scores are among the highest in the state — and deep pockets: The laptop program cost an estimated $2.6 million, less than a third of which was covered by grants.

The Robbins family says they found out about the webcam photos when Harriton High School Assistant Principal Lynn Matsko called Blake into her office to discuss possible drug use she learned of through photos and instant messages captured on Blake's computer. The photo, Blake's parents say, shows the 15-year-old holding a handful of Mike and Ike candies.



By Matt Rourke, AP

**Matsko:** Says she did not monitor students' laptops.

The computer was in Blake's bedroom, his father, Michael Robbins, says. "I've seen my son naked from the waist up in a bath towel."

"They watched Blake for 16 days ... every 15 minutes," says his mother, Holly Robbins. "Fifty-six thousand pictures can't be taken because there's a glitch in the system."

Matsko says she did not monitor students' laptops nor authorize anyone else to do so. At a February news conference, she called the accusation "unjust" and "offensive."

Students and parents signed a policy acknowledging the school could monitor the laptops' contents and Internet usage. The policy doesn't mention the school's ability to use the webcams, theft-tracking devices that were supposed to be turned on if laptops were reported missing or stolen.

That omission, says school district spokesman Doug Young, "was a big mistake." The school should have made students and parents aware of the theft-tracking device, Young says.

The ACLU agrees. "What we've seen is a (theft-tracking) program that was set up without the thought and protection for student privacy that were obviously required," says Mary Catherine Roper of the Pennsylvania ACLU.

In about five cases in which laptops were reported missing, the tracking system was left running for weeks after they were recovered. In about a dozen cases, it isn't known why the webcam was activated at all, says Henry Hockeimer, a lawyer investigating for the district. Two technology employees are now on paid leave. But, Hockeimer says, "We have seen no evidence of intentional targeting of students, spying, surveilling or any kind of manipulative behavior."

"Webcamgate," as it was quickly named in local media, has put parents at odds with one another as well as the school district. Chuck Barsh, an insurance broker with a son in high school, calls the district's actions a "gross invasion" of student privacy and supports the lawsuit.

"These people were able to look at our kids in our house," he says.

Other parents believe the lawsuit, which the Robbins family wants to be a class action, could raise taxes and prevent parents from getting answers. "It's almost like filing a suit against ourselves," says Michael Boni, who formed a parents group opposing the class action. "We want accountability; we do not want scapegoating."

At town forums, in news reports, and online, rhetoric got so heated that Mary Walsh, whose son Gareth is in 10th grade, started the Facebook group "Reasonable LMSD Parents Refusing to Rush to Judgment."

"Many parents want to know what the procedural failures were that led to this," she says. But she's against the lawsuit. "I don't think any real damage has been done to any child."

After he got his laptop last year, Gareth Walsh heard from classmates that the school could turn on the webcam. At first he was conscious of his laptop potentially being monitored. "But then everyone realized that no one was getting called into the office for playing (computer) games," he says, "so everyone kind of forgot about it."

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **BLAKE J. ROBBINS**, a Minor, by his Parents and Natural Guardians, **MICHAEL E. ROBBINS** and **HOLLY S. ROBBINS**, Individually, and on Behalf of all Similarly Situated Persons,<br><br>               Plaintiffs, | : <br> : <br> : <br> : <br> : <br> : <br> : <br> : | CIVIL ACTION |
| v. | : <br> : | NO. 2:10-cv-00665-JD |
| **LOWER MERION SCHOOL DISTRICT,**<br>      and<br>**THE BOARD OF DIRECTORS OF THE LOWER MERION SCHOOL DISTRICT,**<br>      and<br>**CHRISTOPHER W. McGINLEY,**<br>Superintendent of Lower Merion School District,<br>              Defendants. | : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : | |

## <u>CERTIFICATE OF SERVICE</u>

I, Mark S. Haltzman, Esquire, hereby certify that on this _11th_ day of _May_, 2010, I have served a true and correct copy of the foregoing Emergency Motion of the Neill Family to Intervene by first class mail, upon the following

Arthur Makadon, Esquire
Henry E. Hockeimer, Jr., Esquire
Paul Lantieri, III, Esquire
William B. Igoe, Esquire
Ballard Spahr Andrews & Ingersoll, LLP
Attorneys for **Defendants**

Mary Catherine Roper, Esquire
American Civil Liberties
Union of Pennsylvania
Attorneys for **American Civil
Liberties Union of Pennsylvania**

Larry D. Silver, Esquire
David E. Romine, Esquire
Langsam Stevens & Silver LLP
1616 Walnut Street
Philadelphia, PA 19103-5319
Attorney for Intervenors

Boni & Zack LLC
Michael J. Boni, Esquire
15 St. Asaphs Road
Bala Cynwyd, PA 19004
Attorney for Intervenors

Berger & Montague, P.C.
Bart D. Cohen, Esquire
Neill W. Clark, Esquire
1622 Locust Street
Philadelphia, PA 19103
Attorney for Intervenors

Law Offices of Thomas F. Grady, P.C.
Thomas F. Grady, Esquire
The Bye-Benson House
2033 Walnut Street
Philadelphia, PA 19103
Attorney for Intervenors

**LAMM RUBENSTONE LLC**

By:_____
          Mark S. Haltzman, Esquire
          Attorneys for **Plaintiffs**

DATED:  5/11/2010

411480-1