**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **BLAKE J. ROBBINS**, a Minor, by his Parents and Natural Guardians, **MICHAEL E. ROBBINS** and **HOLLY S. ROBBINS**, Individually, and on Behalf of all Similarly Situated Persons, | : | CIVIL ACTION |
| Plaintiffs, | : | |
| v. | : | NO. 2:10-cv-00665-JD |
| **LOWER MERION SCHOOL DISTRICT**, and **THE BOARD OF DIRECTORS OF THE LOWER MERION SCHOOL DISTRICT**, and **CHRISTOPHER W. McGINLEY**, Superintendent of Lower Merion School District, | : | |
| Defendants. | : | |

**O R D E R**

AND NOW, on this _____ day of _____, 2010, upon consideration of Plaintiffs' Motion for Interim Attorneys' Fees, and Defendants' Response thereto,

IT IS HEREBY ORDERED that Plaintiffs' Motion is GRANTED.   Defendant is directed to pay to Plaintiffs reasonable attorneys' fees and costs, pursuant to the Civil Rights Attorneys Fees Awards Act of 1976, 42 U.S.C. §1988, in the amount of $_____, within thirty (30) days of the date of this Order.

BY THE COURT:

_____
JAN E. DUBOIS, U.S.D.J.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**BLAKE J. ROBBINS**, a Minor, by his Parents  :     CIVIL ACTION
and Natural Guardians, **MICHAEL E.**                :
**ROBBINS** and **HOLLY S. ROBBINS**,            :
Individually, and on Behalf of all Similarly        :
Situated Persons,                                                    :
                                    Plaintiffs,                       :
                                                                              :
                                                                              :
            v.                                                             :     NO. 2:10-cv-00665-JD
                                                                              :
**LOWER MERION SCHOOL DISTRICT,**       :
            and                                                          :
**THE BOARD OF DIRECTORS OF THE**      :
**LOWER MERION SCHOOL DISTRICT,**       :
            and                                                          :
**CHRISTOPHER W. McGINLEY,**                   :
Superintendent of Lower Merion School          :
District,                                                                :
                                    Defendants.                   :

## PLAINTIFFS' MOTION FOR INTERIM
## ATTORNEYS' FEES PURSUANT TO 42 U.S.C. §1988

Plaintiffs, Blake J. Robbins, a Minor, by this Parents and natural Guardians, Michael E. Robbins and Holly S. Robbins, Individually, and on Behalf of all Similarly Situated Persons, by and through their undersigned counsel, hereby file this Motion for Interim Attorney's Fees seeking an award of reasonable interim attorneys' fees and costs, as prevailing parties in the above-captioned matter pursuant to, *inter alia*, 42 U.S.C. §§1983 and 1988, and for fees and costs associated with the present Motion. In support of this Motion, Plaintiffs will rely upon the Memorandum of Law in Support of Plaintiffs' Motion for Interim Attorney's Fees filed simultaneously herewith.

413776-1

Respectfully submitted,

**LAMM RUBENSTONE LLC**

By: _____
　　Mark S. Haltzman, Esquire (#38957)
　　Frank Schwartz, Esquire (#52729)
　　3600 Horizon Blvd., Suite 200
　　Trevose, PA  19053-4900
　　215-638-9330 / 215-638-2867 Fax

DATED: July 26, 2010

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **BLAKE J. ROBBINS**, a Minor, by his Parents and Natural Guardians, **MICHAEL E. ROBBINS** and **HOLLY S. ROBBINS**, Individually, and on Behalf of all Similarly Situated Persons, | : : : : : | CIVIL ACTION |
| Plaintiffs, | : : | |
| v. | : : | NO. 2:10-cv-00665-JD |
| **LOWER MERION SCHOOL DISTRICT**, and **THE BOARD OF DIRECTORS OF THE LOWER MERION SCHOOL DISTRICT**, and **CHRISTOPHER W. McGINLEY**, Superintendent of Lower Merion School District, | : : : : : : : : : | |
| Defendants. | : : | |

**PLAINTIFFS' MEMORANDUM OF LAW
IN SUPPORT OF MOTION FOR INTERIM
ATTORNEYS' FEES PURSUANT TO 42 U.S.C. §1988**

Plaintiffs, Blake J. Robbins, a Minor, by his Parents and Natural Guardians, Michael E. Robbins and Holly S. Robbins, Individually, and on Behalf of All Similarly Situated Persons, hereinafter collectively referred to as "Plaintiffs," by and through their undersigned counsel, hereby respectfully submit this Memorandum of Law in Support of Plaintiffs' Motion for Interim Attorneys' Fees Pursuant to 42 U.S.C. §1988.

I.      **INTRODUCTION**

On June 7, 2010, Plaintiffs filed a Motion for Class Certification (Doc. 73) seeking certification of an equitable class and injunctive relief only against Defendants on behalf of a defined class pursuant to, *inter alia*, 42 U.S.C. §1983.  Defendants have opposed

413776-1

said Motion for Class Certification on grounds that class certification is unnecessary because Plaintiffs have already received all of the injunctive relief requested.

The Civil Rights Attorneys Fees Awards Act of 1976, 42 U.S.C. §1988 ("§1988" or the "Fees Awards Act"), is a fee shifting statute which authorizes the recovery of reasonable attorneys' fees and costs by prevailing parties in civil rights actions pursuant to, *inter alia*, §1983. Because the award of interim attorneys fees is well recognized in this Circuit, and because by Defendants' own admission Plaintiffs are prevailing parties within the meaning of §1988,[1] Plaintiffs are entitled to an interim award of their attorneys fees and costs incurred to date in this litigation, and are further entitled to recover additional counsel fees extended in their pursuit of the instant Motion for Attorneys' Fees and Costs.[2]

## II.   STATEMENT OF PREDICATE FACTS

Prior to the initiation of Blake Robbins' lawsuit on February 16, 2010, and pursuant to admissions contained in the Ballard Spahr Report Regarding Remote Monitoring of Student Laptop Computers by the Lower Merion School District dated May 3, 2010 ("Ballard Report"),[3] the Lower Merion School District ("District") had:

---

[1]   The District admits in their Opposition to Plaintiffs' Motion for Class Certification that even "in the absence of certification . . . Plaintiffs' counsel, if they so desire, could file a fee petition with respect to any benefits obtained on behalf of this class in this action." See Defendants' Opposition to Motion for Class Certification, p. 20.

[2]   Plaintiffs are seeking an interim award of attorneys' fees because, regardless of how this Court ultimately rules with respect to Plaintiffs' Motion for Class Certification, this matter will proceed, either as an individual action if the Court denies Class Certification, or as a Class Action if the Court grants Plaintiff's Motion for Class Certification.

[3]   The veracity of Ballard Spahr's conclusions in the Ballard Report is called into question repeatedly by Virginia DiMideo and Carol Caffiero during their depositions. In fact, while the Ballard Report, a report paid for by the School Board, reaches the "conclusion" that the ability of the LANrev technology to spy on students was unknown to the School Board, Ms. DiMideo's testimony under oath is directly contrary. As such, while Ballard is willing to admit to the unlawful activities of the District in spying

- "Pursuant to the District's One-to-One laptop program, the District issues to each of its approximately 2,300 high school students an Apple MacBook Laptop for use during the school year.  The laptops had integrated webcams in the bezels of their screen." (Ballard Report pp. 1 – 2.)

- In 2007, the District purchased a comprehensive computer systems management software called LANrev.  LANrev included a feature called "TheftTrak" which could be remotely activated.  (*Id.* p.1.)

- When remotely activated, TheftTrak would, *inter alia*, record "(ii) a photograph taken by the computer's web camera ("webcam") of whatever was in front of the webcam; and (iii) an image reflecting whatever was on the computer screen (a "screen shot").  (*Id.* p. 1.)

- The District's communication with students, parents and/or guardians "did not disclose the existence or capabilities of Theft Trak." (*Id.* p. 2.)

- "The District likewise did not adopt official policies or procedures governing use of the TheftTrak feature by Information Services ["IS"] personnel." (*Id.*)

- Forensic data analysis conducted as of February 23, 2010 and other investigation revealed that TheftTrak was activated 177 times during the 2008 – 2009 and 2009 – 2010 school years, resulting in the recovery of 30,564 webcam photographs and 27,428 screen shots. (*Id.*)

- "Neither the Board, District-level administrators, school-level administrators, nor even leaders of the IS Department imposed any official restrictions on the use of LANrev tracking features." (*Id.* p. 42).  Moreover, "record keeping [with respect to LANrev tracking] was informal and inconsistent." (*Id .p* 45.)

- Between September 19, 2008 and February 18, 2010, TheftTrak was activated with respect to thirteen stolen laptops, resulting in the recovery of 18,782 webcam photographs and 17,258 screen shots. (*Id.* p.52.)  Six of the thirteen stolen laptops were recovered and returned to students, however "in what appears to be a major oversight, TheftTrak remained activated after the laptops were returned." (*Id.* pp.52 – 53.)  While these laptops were back in the possession of the students, "TheftTrak continued to take 18,241 webcam photographs and 16,732 screen shots." (*Id.* p.54.)

---

on its students, the evidence obtained through various depositions would suggest that the conclusions reached by Ballard that the School Board was not aware of the LANrev technology ability to spy on students is not accurate.

- TheftTrak was also activated with respect to six laptops after the students withdrew from school without returning their laptops, resulting in the recovery of 2,366 webcam photographs and 1,332 screen shots. "[T]he wisdom and propriety of activating image tracking in these circumstances are questionable at best." (*Id. p.*54.)

- TheftTrak was activated with respect to forty-four laptops reported missing, resulting in the recovery 6,693 webcam photographs and 6,404 screen shots. (*Id. p.*55.) However, TheftTrak remained activated on six of these missing laptops "for between seventeen days and six weeks after the laptops were found." (*Id. p.*56.)

- On at least two occasions TheftTrak was mistakenly activated, resulting in the recovery of six webcam photographs and four screen shots. (*Id. p.*58.)

- There are at least ten activations of TheftTrak "for which there is insufficient evidence to establish why tracking was activated." (*Id. p.* 59.) These activations for "reasons unknown" resulted in the recovery of 2,507 webcam photographs and 2,212 screen shots. (*Id. p.* 60.)

But for the filing of Blake Robbins' Complaint on February 16, 2010, there is every reason to believe that the outrageous conduct set forth above, **all** of which is admitted by the District to have been conducted **without any notice** to students, parents or guardians, and **without any policies or procedures** in place to protect student's privacy, would still be a routine practice within the District.[4] Each of the 30,564 webcam photographs and 27,428 screenshots **recovered**[5] constitutes an

---

[4] In a recently published newspaper article, the District's Solicitor, Attorney Roos, is quoted as stating that the District's decision not to allow the taking of "screenshots" as part of the reformulated policies and procedures is a result of the advice of Hank Hockeimer that such activities "could cause legal problems." Clearly, if the taking of screenshots as part of the new policies and procedures would create "legal problems," the taking of screenshots during the past two years of numerous Lower Merion School District students also was not legally permissible. (See *Main Line Media News* article by Richard Ilgenfritz attached hereto as Exhibit A.)

[5] Based upon discovery to date, it is known that there are substantially more webcam photographs and screenshots which were taken of students and family members and others than those "recovered" by L-3. In fact, the L-3 Report indicates that on the day after the Lower Merion School District learned of the litigation, a substantial amount of data (i.e., pictures) were deleted from Lower Merion School District's computer system. Further, Robbins' forensic consultant, John Steinbach, has not completed his initial evaluation of one of many of the computers used by the District to determine whether additional webcam photographs and screenshots can be recovered. Mr. Steinbach's efforts have been halted as a result the District's reversal of its previous position not to contest class certification of an equitable class.

unlawful invasion of privacy and violates the constitutional rights of those depicted, which includes Lower Merion School District students, their parents and any other person(s) unfortunate enough to have been associated with a District student with a laptop connected to the Internet.

Since the filing of Plaintiffs' Complaint on February 16, 2010, and as a direct result of the Court's instruction to all parties and proposed intervenors to meet and confer as to the form and content of any injunctive relief to be ordered by the Court, Plaintiff has obtained the following judicially enforceable relief:[6]

1.      By Stipulation and Order dated February 20, 2010 (Doc. 11) Plaintiffs and Defendants agreed, and the Court Ordered, *inter alia*, that (a) **during the pendency of this action** the School District and anyone affiliated therewith "**are prohibited** from remotely activating any and all webcams" embedded in District issued laptops, and (b) the School District would "preserve all electronic files, data and storage media that pertain to Plaintiffs' claims and/or Defendants' defenses."[7] (Emphasis added.)

2.      By Order dated April 14, 2010 (Document 43), the Court, *inter alia*, imposed the following instructions and/or prohibitions: (a) any photographs and screen shots obtained through means of the LANrev software, other than the photographs and screen shots of Blake Robbins and Paige Robbins, **may not be disclosed to any person** other than counsel for Defendants;  (b) "Counsel for all parties and all proposed

---

[6] At the insistence of the School District, and with the imprimatur of the Court that substance will win out over form, the words "Preliminary Injunction" do not appear in the title for any of the Orders set forth above, when in fact, there is no doubt that the Orders entered by this Court are in the nature of preliminary injunctive relief.
[7] A true copy of all Orders referred to in this paragraph are attached hereto as Exhibit "B."  With the exception of the Stipulation and Order entered February 20, 2010, all such Orders were entered by the Court only after a finding of "good cause appearing."

intervenors shall MEET and CONFER on/or before April 20, 2010 in an effort to reach agreement on the form of a protective order that addresses any concerns of any intervenors which they believe are not satisfactory addressed in the agreed-upon protective order;" and (c) "that counsel for all parties and all proposed intervenors shall MEET and CONFER on/or before April 20, 2010, in an effort to reach agreement on the form of an order which will insure that permanent equitable relief to which the parties may agree as part of the resolution of this action.... **A proposed agreed-upon injunction order** shall be submitted to Court by the close of business on April 26, 2010;" and (d) in the meanwhile, the **injunctive relief granted** by agreement in the Order of February 20, 2010, as amended by the Order of March 10, 2010, shall REMAIN in effect until further order of the Court, and **shall remain enforceable** by any persons adversely affected by any violation of the two (2) Orders." (Emphasis added.) Accordingly, there is no doubt that the Court Ordered, and continues to Order enforceable injunctive relief.

3.     By Order dated April 23, 2010 (Document 55), this Court stated that with the exception of the extension of certain deadlines previously established for the submission of the agreed upon injunction orders, "the Order of April 14, 2010, CONTINUES IN EFFECT."

4.     By Order dated May 14, 2010 (Document 67), the Court established a procedure for students whose webcam photographs and/or screen shots had been recorded using the LANrev software to be notified thereof and to view same;

5.     By Order dated May 14, 2010 (Document 68), the Court provided that, *inter alia* (a) the injunctive relief previously ordered "shall remain in full force and

effect except to the extent that it is superseded by the relief granted in this Order," (b) the School District was "**enjoined** from remotely activating, or causing to be remotely activated, webcams on laptop computers issues by LMSD to its students" (c) "LMSD is **enjoined** from remotely capturing, or causing to be captured, screen shots of student laptops..." (d) "LMSD is **enjoined** from accessing or reviewing any student created files contained on student laptops... for any reason except as permitted by the policies and regulations contemplated by paragraph 7 of this Order..." and (e) "LMSD is **enjoined** from disseminating or otherwise permitting access to any webcam photographs or screen shots... that the District obtained remotely from student laptops... ." (Emphasis added.)

Had it not been for Blake Robbins' Complaint, the District's spying activities would have continued *ad infinitum*, with similarly resulting harm to the members of the Class and others.  Moreover, as a direct result of the Court Orders obtained by Plaintiffs as set forth above, the District was and is judicially enjoined from continuing these unlawful activities, and judicially compelled to formulate comprehensive policies and procedures to ensure that similar unlawful invasions of privacy never happen again.[8]  It is in the context of these predicate facts that Plaintiffs now bring their Motion for Interim Attorneys' Fees Pursuant to 42 U.S.C. §1988.

---

[8] The District may argue Plaintiffs should not be awarded attorneys' fees because the District "voluntarily" stopped using the LANrev technology within days of the filing of Plaintiffs' Complaint.  However, any such voluntary cessation had no force of law whatsoever, such that the District could willfully change its mind and begin using LANrev once again, with or without notice to students, parents and guardians. Accordingly, by obtaining the judicially enforceable Court Orders set forth above, Plaintiffs' ensured that never again would the District be able to invade the privacy rights of students, parents, and whoever was in front of an activated webcam.

III.   **STANDARDS APPLICABLE TO**
      **AWARD FOR INTERIM COUNSEL FEES**

Section 1988(b) of the Fees Awards Act states:

> In any action or proceeding to enforce a provision of sections
> 1981, 1981(a), 1982, 1983, 1985 and 1986 of this title... the
> court, in its discretion, may allow the prevailing party, other
> than the United States, a reasonable attorney fee as part of
> the costs, . . . .

Section 1988(b) authorizes the recovery of reasonable attorney fees and costs to a

"prevailing party" in civil rights cases.   Pursuant to this authority the prevailing party in

such cases is normally awarded attorney's fees absent special circumstances.  *Truedell*

*v. Philadelphia Housing Authority*, 290 F.3d 159, 163 (3rd. Cir. 2002).   As Plaintiffs'

action seeks relief pursuant to, *inter alia*, §1983, the fee shifting provisions of §1988 are

clearly applicable.

The possibility of an interim award of attorneys' fees is well recognized within the

Third Circuit, "as a prevailing party may be awarded fees before the conclusion of

protracted litigation if they have succeeded on any significant claim affording it some

relief." *Public Interest Law Center of Philadelphia v. Pocono Mountain School District*,

2010 WL 104735, at *4 (M.D. Pa. Mar. 17, 2010), citing *Hanrahan v. Hampton*, 466 U.S.

754, 757-58 (1980).  See also *Segalow v. County of Bucks*, 2002 WL 32349878, at *2

(E.D. Pa. Aug. 13, 2002) (an interim award of attorneys fees is appropriate "when a

party has prevailed on the merits of at least some of its claims."); *Buckhannon Board*

*and Care Home, Inc. v.West Virginia Department of Health and Human Resources*, 532

U.S. 598, 603-604, 121 S.Ct.1835 (2001) (interim award of attorneys fees requires that

plaintiff achieve at least some relief on the merits of its claims such that there is a

"material alteration of the legal relationship of the parties.")[9]

Before any award of attorneys' fees is possible, interim or otherwise, Plaintiffs must show that they are a "prevailing party" within the meaning of §1988. The Court of Appeals for the Third Circuit has established a two part test to determine whether a Plaintiff is a "prevailing party:" (1) plaintiff must have received some relief from the court; and (2) there must be a causal connection between the litigation and the relief obtained. *Wheeler v. Towanda Area School District*, 950 F.2d 128 (3d Cir. 1991). The first part of this test involves a "common sense comparison between the relief sought and obtained." *Id.* A plaintiff is a prevailing party "as long as [he/she] obtains some of the benefits sought in a lawsuit, even though the plaintiff does not ultimately succeed in obtaining a favorable judgment." *Id.* at 131, <u>citing</u> *NAACP v. Wilmington Medical Center, Inc.*, 689 F.2d 1161, 1166 (3d Cir. 1982), *cert. denied*, 460 U.S. 1052, 103 S.Ct. 1499 (1983).

To satisfy the requirement of causation, Plaintiff must establish that the litigation "changed the legal relations of the parties such that defendants were legally compelled to grant relief" or that "the litigation is a material contributing factor in bringing about extra-judicial relief." *Wheeler, supra*, at 132. The legal relationship between Plaintiffs and Defendants is materially altered whenever Defendants behavior is modified to Plaintiffs direct benefit. *Farrar v. Hobby*, 506 U.S. 103, 111-12, 113 S.Ct. 566 (1992); *Ridgewood Board of Education v. N.E. Exrel M.E.*, 172 F.2d 238, 251 (3d Cir. 1999). Moreover, "a party need not achieve all of the relief requested nor even ultimately win the case to be eligible for a fee award." *Wheeler, supra*, at 131. All that is required to

---

[9] Most civil rights cases are brought by small to mid-sized law firms with limited resources, and to deny interim attorney's fees where appropriate would have a chilling effect upon the willingness of such firms to represent victims of civil rights abuses.

be found to be a prevailing party under a fee shifting statute such as §1988 is that "plaintiff must be able to point to a resolution of the dispute which changes the legal relationship between itself and the defendant." *Texas State Teachers Association v. Garland Independent School District*, 489 U.S. 782, 792 (1989).

Plaintiffs seeking an award of counsel fees also bear the burden of establishing that the fee request is reasonable. *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990). The method for determining the reasonableness of an attorney's fee award in a civil rights action covered by §1988 is to determine the "lodestar," which is the number of hours reasonably expended multiplied by the applicable market rate. See *Hensley v. Eckhart*, 461 U.S. 424, 433 (1983) (in a §1983 action, the "most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."); *Webb v. Board of Education of Dyer County, Tennessee*, 471 U.S. 234, 242 (1985) (the lodestar is the method used to determine attorneys fees in §1983 actions covered by §1988). "Generally, a reasonable hourly rate is to be calculated according the prevailing market rates in the relevant community." *Rode*, *supra*, at 1183. In so doing "the court should assess the experience and skill of the prevailing party's attorneys and compare their rates to the rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation" *Id.*

In order to satisfy Plaintiffs' burden, "the fee petitioner must 'submit evidence supporting the hours worked and rates claimed.'" *Interfaith Community Organization v. Honeywell International, Inc.*, 426 F.3d 684, 703 n.5 (3d Cir. 2005), quoting *Rode*, 892 F.2d at 1183. If the opposing party objects to the fees requested, it must do so with

"sufficient specificity" to provide applicant with notice of that portion of the fee petition which must be defended. *Id.* Hours should be reduced by the Court only in the event that they are found to be "excessive, redundant, or otherwise unnecessary." *Reid v. School District of Philadelphia*, 2005 WL 174847, at *2 (E.D. Pa. Jan. 21, 2005), <u>citing</u> *Hensley*, 468 U.S. at 234. Accordingly, it has been held that "hours are always reasonable unless they are inadequately documented or totally unnecessary." *Jack D. v. Chichester School District, et al.*, Civ-a-05-2242, Oct. 16, 2007 (Brody, J), <u>citing</u> *Rode*, 892 F.2d at 1183, copy attached hereto as Exhibit B. As to the documentation required to support a fee petition:

> . . . billing entries need only include "some fairly definite information as to the hours devoted to various general activities, e.g. pretrial discovery, settlement negotiations, and the hours spent by various classes of attorneys, e.g. senior partners, junior partners, associates... it is not necessary to know the .... precise activity to which each hour is devoted.

*Id.,* <u>quoting</u> *Rode*, 892 F.2d at 1190. Accordingly, a fee petition need only be "specific enough to allow the District Court "to determine if the hours claimed are unreasonable for the work performed." *S.A. v. Riverside Delanco School District Board of Education*, 2006 WL 827798, at *23 (D.N.J. Mar. 30, 2006).

Not only are Plaintiffs entitled to recover their reasonable attorney's fees and costs incurred in connection with this litigation, but they are also entitled to recover fees for the time spent bringing the instant motion. "It is well-settled that under federal law, 'the time expended by attorneys in obtaining a reasonable fee is justifiably included in the attorney's fee application, and in the court's fee award.'" *Polselli v. Nationwide Mutual Fire Insurance Company*, 126 F.3d 524, 537 (3d Cir. 1997), <u>quoting</u> *Prandini v. National Tea Co.*, 585 F.2d 47, 53 (3d Cir. 1978).

## IV.   ARGUMENT

### A.   Plaintiffs Are Prevailing Parties Entitled To An Award Of Interim Attorneys Fees And Costs

By Defendants' own admission, as stated in Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion for Class Certification and in Support of Defendants' Cross Motion for Entry of Permanent Injunctive Equitable Relief ("Defendants' Mem."), "Class certification is unnecessary and unwarranted" (Defendants' Mem. p.1) because Plaintiffs have already achieved all equitable relief sought in the litigation in that the Court has previously enjoined Defendants from using the LANrev technology to violate Plaintiffs' rights to privacy as they have in the past. Defendants further state that "there is no issue of disputed fact or law that remains to be resolved with respect to claims for injunctive relief." (Defendants' Mem. p.23.)[10]

The injunctive relief currently in place materially alters the legal relationship between the parties which existed prior to this litigation. Defendants are prohibited from using the LANrev technology in the manner they had prior to the instigation of this litigation. Failure to comply with the Court Order would subject the District or any of the Defendants to liability and would be contempt of Court. Moreover, there is no question that but for this litigation, Defendants would still be using the LANrev technology to invade Plaintiffs' privacy rights. Accordingly, there can be no question but that Plaintiffs have met both prongs of the test in *Wheeler* (obtaining relief and causation) to be found to be a prevailing party. Because, as admitted by Defendants, Plaintiffs have already obtained substantially all of the relief requested, Plaintiffs are unquestionably prevailing

---

[10]   This statement presumably means that both the factual and legal predicate for the Court's imposition of injunctive relief, that the District violated students' rights to privacy, is undisputed.

parties within the meaning of §1988. Accordingly, Plaintiffs are entitled to an award of interim attorneys' fees and costs.

The fact that the injunctive relief obtained to date is preliminary and not permanent, and/or is the result of an instruction by the Court to meet and confer as to its specific content, does not alter the appropriateness of the conclusion that Plaintiffs are prevailing parties pursuant to the requirements set forth in Wheeler and Buckhannon. First, the fact that thus far the Court has issued only preliminary injunctive relief and not a permanent injunction is of no consequence to a determination that Plaintiffs are prevailing parties. In *People Against Police Violence v. City of Pittsburgh*, 520 F.3d 226 (3rd Cir. 2008), the court was required "to determine for the first time whether 42 U.S.C. §1988 allows a plaintiff to be the "prevailing party" when it achieves relief on the merits of its claim in the form of a preliminary injunction."[11]  In finding in the affirmative, the Court of Appeals states: A "preliminary injunction issued by a judge carries all of the "judicial imprimatur" necessary to satisfy Buckhannon," Watson, 300 F.3d at 1096, and this preliminary injunction placed a judicial imprimatur on plaintiff's entitlement to substantially all the relief they sought in the complaint." *Id.* at 233.  Moreover, "the preliminary injunction therefore, did not merely maintain the status quo; it altered the legal relationship among the parties in a manner that afforded plaintiffs substantial relief on the merits of their claims." *Id.* at 234.  The same is true in the instant case. Defendants were preliminarily ordered by this Court to cease and desist with respect to their prior use of the LANrev technology and, any failure of the Defendants to comply is

---

[11] The issue of the preliminary nature of the injunctive relief obtained thus far may well be rendered moot by the District's pending Cross Motion to Make Injunctive Relief Permanent.  Nevertheless, and regardless of the outcome of the District's Cross Motion, as set forth above Plaintiffs are already prevailing parties deserving of an award of interim attorneys' fees.

subject to all the remedies for contempt of a Court Order.

Second, the fact that the content of the preliminary injunctive relief ordered by the Court was the product of a Court imposed meet and confer process does not divest the preliminary injunctive relief granted of its "judicial imprimatur" such that Plaintiffs would not be considered to be prevailing parties.  In <u>City of Pittsburgh,</u> defendant City argued that Plaintiffs were not prevailing parties under <u>Buckhannon</u> because "the District Court's meet and confer process lacked "judicial imprimatur" because it was proactive and cooperative." <i>Id.</i> at 236.  In rejecting this argument, the Court of Appeals states:

> The proceedings in this case [court ordered meet and confer to discuss the content of the injunction] merely allowed plaintiffs to raise their concerns prior to enforcement, a process that reached the same result (resolution of plaintiff's claims) with greater judicial efficiency.  **We see no reason why plaintiffs should be denied fees merely because they participated in a more efficient, cooperative process; a contrary result would force future litigants in plaintiff's position to prolong litigation unnecessarily to assure entitlement to fees.**

<i>Id.</i> (Emphasis added.  The same holds true in this case.  Plaintiffs should not be penalized for complying with this Court's Order that it meet and confer with Defendants and proposed intervenors for the purpose of crafting specific injunctive relief.  Indeed, to have done otherwise would have placed Plaintiffs in contempt of court.

**B.    Because Plaintiffs Request For An Interim Award Of Attorneys' Fees And Costs In The Amount Of $418,850.60 Is Reasonable, It Should Be Granted**

The Detailed Billing Records dated July 26, 2010 ("DBR"), and attached hereto as Exhibit D set forth with sufficient specificity 1) the identity of the billing attorney; 2)

the task or tasks performed; and 3) the time expended by attorneys at Lamm Rubenstone LLC on behalf of Plaintiffs in order to secure the injunctive relief to date.[12]

The attorneys who provided the vast majority of legal services set forth in the DBR are Mark S. Haltzman ("Haltzman"), Stephen Levin ("Levin") and Frank Schwartz ("Schwartz"), respectively "MSH," "SL" and "FS" on the DBR.[13]   The Certifications of these attorneys are attached hereto as Exhibits "E,""F" and "G," respectively, and accurately reflect their respective background, skill and experience.  The hourly rates for Haltzman, Levin and Schwartz set forth on the DBR reflect fair and reasonable billing rates for attorneys of similar background, skill and experience in southeastern Pennsylvania.  (See Certification of Cletus P. Lyman, Esquire, a true copy of which is attached hereto as Exhibit "H.")  Mr. Lyman states that the rates of Haltzman, Levin and Schwartz are fair, reasonable and consistent with, or less than, the prevailing rates for attorneys of similar experience, skill and credentials in southeastern Pennsylvania.

Mr. Lyman's conclusion that the hourly rates of Haltzman, Levin and Schwartz set forth on the DBR are fair and reasonable and are consistent with, if not lower than the prevailing rates for attorneys of similar experience, skill and credentials in southeastern Pennsylvania is bolstered by a consideration of the Community Legal Services of Philadelphia Attorney Fee Schedule of Hourly Rates effective April 1, 2006

---

[12]     While Plaintiffs' Complaint sought both injunctive relief and damages, Plaintiffs' Motion for Class Certification seeks certification of an equitable class only.  Moreover, all the time set forth in the DBR has been spent with respect to establishing the nature and scope of Defendants' invasion of Plaintiffs' privacy; there has not been any time devoted to an assessment of damages with respect to any individual members of the proposed Class.  Accordingly, it is fair to say that all of the time evidenced on the DBR has been incurred with relation to Plaintiffs' gathering of facts sufficient to support its claim for equitable relief and the relief obtained.

[13] The DBR also includes costs in the amount of $102,143.10, of which $87,925.00 is for the cost of John Steinbach, Plaintiffs forensic computer consultant, without the assistance of which Plaintiff would have been unable to understand the nature and extent of Defendants' use of it computers to commit its civil rights abuses of the students.

("CLS Fee Schedule"), a true copy of which is attached hereto as Exhibit "I."[14]   Levin

has been practicing law for 32 years, and the CLS Fee Schedule indicates a range in

2006 of $325 to $410.   Levin's current rate of $350 is well below the maximum of this

range.   The same is true for Schwartz, who has been practicing for 22 years.   The CLS

Fee Schedule for 2006 is $290 to $310 for attorneys practicing 21-25 years, while

Schwartz' current hourly rate is $275.   Haltzman's current rate of $425 exceeds the

2006 CLS Fee Schedule by $15 per hour, in that the maximum range for attorneys such

as Haltzman, who have practiced for 27 years, is between $325 and $410 per hour.

However, given that the CLS Fee Schedule was effective April 1, 2006, and that the

instant Motion is being filed in July, 2010, more than four years later, it can be

presumed that Haltzman's rate now falls within the maximum rate pursuant to the CLS

Fee Schedule.

The efforts expended by Plaintiffs' counsel as set forth in the DBR were all

necessary and proper to obtain the injunctive relief awarded to Plaintiffs.   Plaintiffs'

successful efforts have resulted in the following:

- Plaintiffs' counsel successfully obtained injunctive relief which ensured that the LANrev software which was used to take web cam pictures and images of students in their home was disabled and any reactivation strictly prohibited without further order of Court.

---

[14]   While the CLS Fee Schedule has been accepted by some courts as a reflection of reasonable rates for attorneys in fee shifting cases in limited circumstances where the attorneys seeking fees are associated with CLS, its use is uncontested and/or where only limited evidence of the reasonableness of the requested fees were submitted by the parties, it is by no means determinative.  Indeed, it has been specifically rejected where the parties have presented credible evidence of the reasonableness of higher rates.  For instance, Judge Brody, in rejecting the CLS Fee Schedule for an attorney fee petition under the fee shifting provisions of the IDEA, states: "this case does not involve CLS-affiliated attorneys, nor is it a case where the parties have failed to submit sufficient evidence of prevailing market rates. Furthermore, the CLS Schedule does not take into account any specialized skills or experience the attorneys bring to their practice, which are the factors I am to consider in evaluating attorneys fees. Finally, the CLS Schedule published in 1996 [2006] does not reflect current rates.  The current rate is the time of the fee petition, not the rate at the time the services were performed"  *Mary Courtney v. School District of Philadelphia,* 2009 WL 185426, at *3 (E.D. Pa. 2009).

- Plaintiffs' counsel successfully obtained a Court Order to insure the preservation of evidence needed to determine the extent to which the LANrev technology was actually activated, which subsequently resulted in disclosure of the existence of in excess of 60,000 images.

- The engagement of a computer forensic consultant to immediately negotiate with Defendants to insure that the methodology used to preserve the various Lower Merion School District computers would be done in a manner as to prevent any corruption of evidence.

- Setting up a procedure with Defendants to allow for the immediate exchange of relevant information to enable the parties, in the most cost effective manner possible, to identify crucial witnesses and essential information to determine the extent of the use of the LANrev technology to capture screen shots and web cam pictures.

- Obtaining a Court Order which prevented the future dissemination of any of the images that have been obtained by use of the LANrev technology, to ensure the protection of the privacy of the students and families in the Lower Merion School District.

- Negotiating an agreed Order with Defendants, and the proposed Intervenors, with broad ranging protection for class members, which further protected the class members privacy and to assure that there can be no future use of similar technology in the Lower Merion School District without disclosure and strict guidelines.

- Establishing with defense counsel a methodology for those members of the class who were identified during discovery as having images taken using the LANrev software to view such images.

The Third Circuit and other District Courts within the Eastern District have specifically stated that multiple attorneys may collaborate on a case as long as the hours expended by them are reasonable and not excessive or duplicative. See *Gorini v. Tyco Electronics, Inc.*, 117 Fed. App. 193, 2004 (3d Cir. 2004) (affirming District Court's award of attorneys' fees for occasional, nonexcessive time spent by two attorneys on the same task); *Planned Parenthood of Central New Jersey v. Attorney General of the State of New Jersey*, 297 F.3d 253 (3d Cir. 2002) (permitting recovery of

attorneys' fees pursuant to 42 U.S.C. §§1983 and 1988 where multiple attorneys participated in the same case presenting complex legal questions and where counsel "provided necessary support for each other"); *Amy F. v. Brandywine Area Heights School District*, 1997 WL 672627 (E.D. Pa. Oct. 30, 1997) (allowing recovery of fees for legal research done by more than one attorney in connection with the same brief since this collaboration and the amount of time spent by each attorney was not unreasonable).

Any claim by Defendants that Plaintiffs' DBR lacks sufficient specificity to justify the hours spent should be rejected.  "A fee petition is required to be specific enough to allow the District Court 'to determine if the hours claimed are unreasonable for the work performed.'"  *SA v. Riverside Delanco School District Board of Education*, 2006 WL 827798 at *23 (D.N.J. Mar. 30, 2006), *Keenan v. City of Philadelphia*, 983 F.2d 459, 473 (3d Cir. 1992).  Accordingly, "specificity should only be required to the extent necessary for the District Court to determine if the hours claimed are unreasonable for the work performed."  *Id.*  Although a plaintiff is required to provide "some fairly definite information as to the hours devoted to various general activities, . . . it is not necessary to know the exact number of minutes spent nor the precise activity to which each hour was devoted nor the specific attainments of each attorney."  *Rode*, 892 F.2d at 1190. The DBR submitted on behalf of Plaintiffs specifies billed activities in chronological order and includes a clear description, date and duration of each entry.  As counsel's time and out of pocket costs are fully accounted for in the DBR and entirely reasonable, Plaintiffs are entitled to a full recovery of the fees and costs set forth in the DBR.

## V.   CONCLUSION

For all the reasons set forth above, Plaintiffs are entitled to an award of interim attorneys' fees and costs in the amount of $418,850.60 as described in the DBR attached hereto as Exhibit C.[15]

Respectfully submitted,

**LAMM RUBENSTONE LLC**

Dated: July 26, 2010

By: _____
Mark S. Haltzman, Esquire (#38957)
Frank Schwartz, Esquire (#52729)
3600 Horizon Blvd., Suite 200
Trevose, PA  19053-4900
215-638-9330 / 215-638-2867 Fax

---

[15]    It should be noted that, based upon public newspaper reports, the hours spent and the legal fees and costs charged by Plaintiffs' counsel during this time is only a small fraction of the purported $1,000,000 charged by Ballard and L-3 for its work during the same period.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **BLAKE J. ROBBINS**, a Minor, by his Parents and Natural Guardians, **MICHAEL E. ROBBINS** and **HOLLY S. ROBBINS**, Individually, and on Behalf of all Similarly Situated Persons | : CIVIL ACTION : : : : |
| v. | : NO. 2:10-CV-0665-JD : |
| **LOWER MERION SCHOOL DISTRICT** and **THE BOARD OF DIRECTORS OF THE LOWER MERION SCHOOL DISTRICT** and **CHRISTOPHER W. McGINLEY**, Superintendent of Lower Merion School District | : : : : : |

### CERTIFICATE OF SERVICE

I hereby certify that on the date written below the foregoing Plaintiffs' Motion for Interim Attorneys' Fees Pursuant to 42 U.S.C. §1988 was filed electronically and is available for viewing and downloading from the ECF system, which also electronically served same on the following:

Henry E. Hockeimer, Jr., Esquire
Ballard Spahr Andrews & Ingersoll, LLP
Attorneys for **Defendants**

LAMM RUBENSTONE LLC

By: _Mark S. Haltzman_

Mark S. Haltzman, Esquire
Frank Schwartz, Esquire
Attorneys for **Plaintiffs**

DATED: *7/26/10*

414030_1