**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **BLAKE J. ROBBINS, a Minor, by his Parents** | : | **CIVIL ACTION** |
| **and Natural Guardians, MICHAEL E.** | : | |
| **ROBBINS and HOLLY S. ROBBINS,** | : | |
| **Individually, and on Behalf of all Similarly** | : | |
| **Situated Persons,** | : | |
| **Plaintiffs,** | : | |
| | : | **NO. 10-665** |
| **v.** | : | |
| | : | |
| **LOWER MERION SCHOOL DISTRICT,** | : | |
| **THE BOARD OF DIRECTORS OF THE** | : | |
| **LOWER MERION SCHOOL DISTRICT, and** | : | |
| **CHRISTOPHER W. McGINLEY,** | : | |
| **Superintendent of Lower Merion School** | : | |
| **District,** | : | |
| **Defendants.** | : | |

**DuBOIS, J.**_____**August 30, 2010**

## M E M O R A N D U M

## I.    INTRODUCTION

Plaintiffs initiated this lawsuit by filing a class action complaint on February 16, 2010.  In

their complaint, plaintiffs allege that defendants violated their constitutional and statutory rights

to privacy by remotely activating web cameras on computers provided to all high school students

by Lower Merion School District, without the permission of the students or their parents, and

without the issuance of any policies regarding such remote activation.  From February 23, 2010,

to May 14, 2010, the Court issued a series of preliminary injunctions by agreement of the parties

that, among other things, prohibited the remote activation of web cameras and the distribution of

images or any information obtained through the Lan Rev software on the student computers.

Presently before the Court is plaintiffs' Motion for Interim Attorneys' Fees Pursuant to 42

1

U.S.C. § 1988.  For the reasons stated below, plaintiffs' motion is granted in part, and denied in

part.  Plaintiffs' motion is granted with respect to those fees and costs related to the entry of

preliminary injunctive relief.  Plaintiffs motion is denied with respect to all other fees and costs .

## III.   DISCUSSION

### A.   Plaintiffs Are a Prevailing Party Under 42 U.S.C. § 1988(b)

Under what is known as the American Rule, a prevailing litigant is not entitled to collect

attorneys' fees from the loser.  See Travelers Cas. and Sur. Co. of Am. v. Pac. Gas and Elec. Co.,

549 U.S. 443, 448 (2007).  However, 42 U.S.C. § 1988(b) creates an exception to this rule for

litigants who prevail in an action filed pursuant to 42 U.S.C. § 1983.  See Solomen v. Redwood

Advisory Co., 223 F. Supp. 2d 681, 682 (E.D. Pa. 2002).  The statute provides, in relevant part:

"[i]n any action or proceeding to enforce a provision of sections 1981, 1981(a), 1982, 1983,

1985, and 1986 of this title, . . .the court, in its discretion, may allow the prevailing party, other

than the United States, a reasonable attorney's fee as part of the costs . . . . " 42 U.S.C. § 1988(b).

A party need not win a suit in order to be a prevailing party.  Wheeler v. Towanda Area

Sch. Dist., 950 F.2d 128 (3d Cir. 1991).  Rather, a prevailing party is one who "succeed[s] on any

significant issue in litigation which achieves some of the benefit the part[y] sought in bringing

suit." Hensley v. Eckerhart, 461 U.S. 424, 433 (1983).  To achieve "prevailing party" status,

plaintiffs must demonstrate a "judicially sanctioned change in the legal relationship of the

parties." Buckhannon Bd. & Care Home v. W. Va. Dep't of Health & Human Res., 532 U.S.

598, 605 (2001); see Singer Mgmt. Consultants, Inc. v. Milgram, --- F.3d ---, 2010 U.S. App.

LEXIS 16214, at *13 (3d Cir. Aug. 5, 2010).  However, "a plaintiff does not become a

'prevailing party' solely because his lawsuit causes a voluntary change in the defendant's

conduct." People Against Police Violence v. City of Pittsburgh, 520 F.3d 226, 232 (3d Cir. 2008). "Rather, the change in the parties' legal relationship must be the product of judicial action." Singer Mgmt., 2010 U.S. App. LEXIS 16214, at *13-*14 (citing Buckhannon, 532 U.S. at 605-06).

In their Motion for Interim Attorneys' Fees, plaintiffs assert that they are a prevailing party, and thus are entitled to attorneys' fees under 42 U.S.C. § 1988(b). Specifically, plaintiffs claim that "[t]he injunctive relief currently in place materially alters the legal relationship between the parties which existed prior to this litigation." (Pls.' Mem. 12.) Defendants argue to the contrary that "[a] party does not prevail for purposes of Section 1988 . . . when the defendant voluntarily ceases the complained-of conduct, even when the complaint serves as the 'catalyst' for the change in behavior." (Defs.' Mem. 23 (citing Buckhannon, 532 U.S. at 632).)

All injunctive relief in this case was "the product of judicial action" and was "judicially sanctioned." See Buckhannon, 532 U.S. at 605; Singer Mgmt., 2010 U.S. App. LEXIS 16214, at *13-*14. Although the injunctions issued by the Court were agreed upon by the parties, the Court facilitated that agreement through active case management, which included a number of telephone and in-chambers conferences. See Singer Mgmt., 2010 U.S. App. LEXIS 16214, at *16-*17 (determining that relief was "judicially sanctioned" in part because "the Court's involvement went far beyond its issuance of the TRO," and included "inimical questioning" during the TRO hearing that ultimately led to the relief entered). Moreover, the injunctive relief granted by the order dated May 14, 2010, is judicially enforceable by any person adversely affected by a violation of the order. As a result, the Court concludes that plaintiffs are a "prevailing party" for the purposes of a fee award under 42 U.S.C. § 1988.

3

**B.     Plaintiffs Are Entitled to Reasonable Fees**

Plaintiffs must "prove that [their] request for attorney's fees is reasonable. To meet [this] burden, the fee petitioner must 'submit evidence supporting the hours worked and rates claimed.'"  Rode v. Dellarciprete, 892 F.2d 1177, 1183 (3d Cir. 1990) (quoting Hensley v. Eckerhart, 461 U.S. 424, 433 (1983)).  Under Third Circuit law, "a fee petition should include 'some fairly definite information as to the hours devoted to various general activities, e.g., pretrial discovery, settlement negotiations, and the hours spent by various classes of attorneys, e.g., senior partners, junior partners, associates,'" but "'it is not necessary to know the exact number of minutes spent nor the precise activity to which each hour was devoted nor the specific attainments of each attorney.'"  Id. at 1190 (quoting Lindy Bros. Builders, Inc. of Phila. v. Am. Radiator & Standard Sanatory Corp., 487 F.2d 161, 167 (3d Cir. 1973)).  Courts should reduce the fee awarded for "excessive, redundant, or otherwise unnecessary" hours, and can also "deduct hours when the fee petition inadequately documents the hours claimed."  Id. at 1183.

Plaintiffs request a total of $435,790.60[1] in interim attorneys' fees and costs, and attach to their motion an exhibit detailing each reimbursable item by attorney name, task, and time completed.  (See Pls.' Mot. Ex. D.)  Plaintiff also appends certifications submitted by the three main timekeepers – Mark S. Haltzman, Stephen Levin, and Frank Schwartz – to demonstrate that the hourly rates for the attorneys "accurately reflect[s] their respective background, skill and experience." (Pls.' Mem. 15.)  Defendants do not dispute that the hourly rates submitted by plaintiffs are reasonable for attorneys of equivalent skill and experience.

---

[1] Counsel originally requested $418,850.60 in fees and costs.  The additional fee was incurred in preparing a reply memorandum to defendants' opposition brief.  (See Pls.' Am. Reply Mem. Ex. D.)

In their response to plaintiffs' motion, defendants attack the adequacy of plaintiffs' fee request on three main grounds: (1) plaintiffs request fees for work unrelated to the attainment of preliminary injunctive relief; (2) plaintiffs request fees for unreasonable, unnecessary, and excessive work; and (3) plaintiffs seek to recover costs for non-reimbursable expenses.  The Court addresses each of these arguments below.

### 1.    Only Fees Related to Preliminary Injunctive Relief Are Reimbursable At This Time

Defendants claim that plaintiffs should not be able to recover fees for work recovered after May 14, 2010, the date of the last injunction order.  Defendants argue "nothing their counsel has done since then was necessary to the equitable relief, and indeed all of the substantive work they have done since then has been done in support of individual damages claims."  (Defs.' Mem. 29.)  In support of their position, defendants rely on Institutionalized Juveniles v. Secretary of Public Welfare, 758 F.2d 897 (3d Cir. 1985), for the proposition that "fees accrued after [the] prevailing party achieves success are not recoverable" (Defs.' Mem. 30).  Plaintiffs disagree with defendants, and assert that Institutionalized Juveniles does "not establish any bright line test of the date on which attorneys fees are no longer recoverable."  (Pls.' Am. Reply Mem. 19.)  That court noted that while the case before it had been litigated to a final judgment, in a case "involv[ing] the ongoing enforcement of a[n] . . . injunction, . . . it may very well be proper for a district court to determine eligibility for attorney fees according to whether a party prevailed in a specific aspect of the proceedings."  Institutionalized Juveniles, 758 F.2d at 919 n.36.

In this case, plaintiffs have succeeded in obtaining an injunction that, among other things, prohibits remote activation of computer webcams and establishes a procedure for defendants to

create new policies and procedures with respect to student laptop privacy.[2]  Thus, as the Court

concludes that plaintiffs are prevailing parties with respect to the attainment of preliminary

injunctive relief, they are entitled to all reasonable fees related to that relief.  However, because

plaintiffs have not yet obtained a final injunction, the Court determines that counsel's work since

May 14, 2010, in securing permanent equitable relief is not reimbursable at this time.  When a

permanent injunction is in place, counsel may submit a supplemental fee motion to the Court.

In determining what fees plaintiffs may properly recover at this stage in the case, the

Court rejects defendants' bright line rule that any fees requested after the order of May 14, 2010,

should be disallowed.  Rather, plaintiffs may have completed work after this date that relates to

preliminary and not permanent injunctive relief, and fees for those hours may be properly

awarded at this time.

As a result of this determination, on the present state of the record, the Court cannot

determine the precise amount of attorneys' fees and costs that plaintiffs are entitled to receive at

this time.  Plaintiffs are instructed to submit an amended fee motion in conformance with this

Memorandum and the attached Order.

### 2.  Defendants' Argument That Plaintiffs' Fees Are Unreasonable, Unnecessary, and Excessive

Defendants raise additional challenges to certain categories of fees requested by plaintiffs,

and the Court addresses each of them below.

---

[2] The Lower Merion School District School Board approved revised laptop policies on August 15, 2010.  These policies regulate District access of student computers, and among other things, will require written consent for the District to remotely access computers for repair purposes or to active the theft tracking software.

### a.      Fees Related to Damages Claims

First, defendants argue that nearly twenty-two (22) hours of counsel's time "includes . . .

entries explicitly related to claims for damages" and that these hours are not related to the

equitable relief sought – particularly after May 14, 2010.  (Defs.' Mem. 28-29.)  In response,

plaintiffs argue that "plaintiffs' counsel's work in furtherance of obtaining equitable relief has

been, to date, inextricably intertwined with any work related to an assessment of damages, such

that said work cannot be parsed . . . ."  (Pls.' Am. Reply Mem. 20.)  Plaintiffs' counsel has

sought "to discover and understand the parameters of Defendants' wrongful conduct," which

relates to both equitable claims and claims for damages.  (Id.)

Plaintiffs' counsel had a duty to investigate the claims against defendants.  That

investigation presented common questions of fact relating to the claims for both equitable relief

and compensatory damages.  The Court concludes that the fees accrued prior to May 14, 2010, to

which defendants object were intertwined with plaintiffs' efforts to obtain preliminary injunctive

relief, and as a result, were reasonable.  Thus, they are recoverable by plaintiffs at this time.

With respect to the fees covering work after May 14, 2010, to which defendants object, the Court

concludes that these fees are not properly awarded to plaintiffs at this time because final

injunctive relief has not yet been ordered.

### b.      Fees Related to Depositions

Second, defendants claim that plaintiffs' counsel conducted depositions that were

irrelevant to equitable relief, as they largely focused on damages claims.  (Defs.' Mem. 30-31.)

In response, plaintiffs state that taking the depositions "was essential to full understanding of the

manner and method" by which the alleged violations occurred. (Pls.' Am. Reply Mem. 15.)  The

Court agrees.  The Court concludes that fees related to depositions taken before May 14, 2010, that were conducted in relation to the obtaining of preliminary equitable relief are reasonable and reimbursable at this time.  Depositions taken after May 14, 2010, that relate to the entry of permanent equitable relief may be reimbursable once a final injunction is issued.

### c.    Fees for Attorneys Not Referenced in Plaintiffs' Motion

Third, defendants argue that work was performed by seven attorneys not referenced in plaintiffs' motion, amounting to $19,355 in fees.  Defendants ask to the Court to either disallow these fees because plaintiffs "have not provided the requisite certifications" or "require plaintiffs to submit appropriate evidence."  (Defs.' Mem. 31.)  In response, plaintiffs attach the attorneys' biographical information in their reply memorandum, with the exception of one attorney who was only briefly with the law firm.  (Pls.' Am. Reply Mem. 23 & n.12, Ex. C.)  The Court concludes that plaintiffs have provided sufficient information about the attorneys who worked on the case, and rejects defendants' argument on this claim.

### d.    Fees for Preparing Discovery Motions Never Filed or Served

Fourth, defendants contend that plaintiffs should not receive fees for preparing discovery papers that were never filed or served, which amounted to more than $6,000.  (Defs.' Mem. 31-32.)  Plaintiffs respond that it is unreasonable to expect attorneys to file every motion they prepare, and that conducting research on motions helped plaintiffs to resolve disputes with defendants.  (Pls.' Am. Reply Mem. 24-25.)  The Court finds these hours reasonable, and rejects defendants' argument on this issue.

### e.    Fees for Plaintiffs' Motion for Class Certification

Fifth, defendants assert that (1) plaintiffs' Motion for Class Certification was unnecessary

to obtain equitable relief; (2) the fees requested are excessive at $27,000 for a motion that was

two pages long and supported by a twelve-page memorandum; and (3) the motion failed to

satisfy the evidentiary standard set forth in In re Hydrogen Peroxide Antitrust Litigation, 552

F.3d 305 (3d Cir. 2008). Plaintiffs explain that "during several conferences with the Court, it

was specifically discussed that the case would be moving forward with the Plaintiffs filing a

Motion for Class Certification for Equitable Relief only." (Pls.' Am. Reply Mem. 27.) Thus,

"[p]laintiffs should not be penalized for proceeding with preparing documentation in accordance

with its understanding of how all the parties desired this case to proceed." (Id.) Continuing,

plaintiffs argue that since "[d]efendants filed a cross motion seeking . . . a Permanent injunction

solely to avoid having the class certified[,] . . . the work on the Motion for Class Certification has

already served a tangible benefit." (Id.)

    The Court agrees with plaintiffs' counsel that there were several discussions with the

Court about the filing of a class certification motion for equitable relief only. There was no

objection interposed by defendants at that time. After the motion was filed, defendants filed

detailed objections, including a cross motion for permanent injunctive relief. The Court has not

yet ruled on those motions, but notes that these motions have resulted in discussions regarding a

broad-based permanent injunction without the need for class certification. Thus, reimbursement

of fees related to class certification at this time is premature. Once a final injunction has been

obtained, plaintiffs may submit a supplemental motion for fees which may include work on their

motion for class certification.

### f.    Fees for Opposing the Wortley Motion for Intervention

    Sixth, defendants argue that plaintiffs' fees accrued in opposition to the Wortley Motion

for Intervention in no way furthered the equitable relief sought, and thus should be disallowed. (Defs.' Mem. 31.)  Defendants emphasize that the "Wortley intervenors contributed substantially to the equitable relief for which plaintiffs take credit."  (Id.)  Plaintiffs respond that "[g]iven the alignment of the Wortley intervenors with Defendants, Plaintiffs were compelled to oppose the Wortley intervention in order to successfully prosecute their claim."  (Pls.' Am. Reply Mem. 26.)

The Court determines that time spent by plaintiffs in opposing the Wortley Motion for Intervention was reasonable, as counsel's intent was to ensure that plaintiffs' claims were fully litigated.  Thus, defendants' argument to deny fees on this ground is rejected.

### g.    Fee Request for Preparing Fee Motion Is Excessive and Unreasonable

Finally, defendants argue that plaintiffs' fee request for their Motion for Interim Attorneys' Fees is excessive.  Plaintiffs request over $15,000 in fees for preparation of their original motion, and an additional $17,000 for preparing their reply memorandum.  The Court concludes that these fees are excessive, and instead will award $10,000 for preparation of the original fee motion, and an additional $12,000 for the preparation of the reply memorandum.

### 2.    Defendants' Arguments That Costs Are Non-Reimbursable

Defendants also argue that plaintiffs request reimbursement for costs that are non-reimbursable under 28 U.S.C. § 1920, as that statute "excludes overhead expenses that are not normally billed directly to a client but instead are incorporated into the hourly rate charged by counsel." (Defs.' Mem. 33.)  As a result, defendants argue that plaintiffs' costs related to plaintiffs' computer consultant, IT Acceleration, depositions, and legal research are not reimbursable.  The Court addresses each of defendants' arguments below.

### a.    Plaintiffs' Computer Consultant Costs

10

First, defendants challenge the award $87,925 to cover plaintiffs' computer consultant fees, stating that "there is no authority for shifting Mr. Steinbach's fees to the District, and the Court should deny Plaintiffs' request for them as a matter of law." (Defs.' Mem. 33-34.) Pursuant to 42 U.S.C. § 1988(c), "the court, in its discretion, may include expert fees as part of the attorneys' fee," but only in an "action or proceeding to enforce a provision of [42 U.S.C.] section 1981 or 1981(a)." Defendants argue that because the award of expert fees is limited to claims under § 1981 and § 1981a, plaintiffs cannot not recover expert fees by virtue of their § 1983 claim. (Defs.' Mem. 33-34.) Applying this provision, judges in this district have denied §1983 plaintiffs' request for expert fees. See Vassallo v. Fox, No. 04-697, 2005 WL 707353, at *3 (E.D. Pa. April 4, 2005); Surgner v. Blair, No. 95-5331, 1996 WL 284993, at *5 (E.D. Pa. May 20, 1996). Further, defendants assert that even if legal authority existed to shift these fees, "[p]laintiffs provide no specificity about what Mr. Steinbach has done, and he has not produced a report." (Defs.' Mem. 34.)

Plaintiffs argue that "there is authority for the proposition that plaintiff may recover fees of consulting experts, . . . who assist the attorney in preparing the case and understanding the relevant subject matter – in this case complex computer technology . . . ." (Pls.' Am. Reply Mem. 10.) In addition, plaintiffs argue that consultant fees are also recoverable under the fee shifting provision of the Electronic Communications Privacy Act and the Stored Communications Act. (Id. at 13.) As a supplemental exhibit to their motion, plaintiffs submit the consultant's detailed billing records. (Id. Ex. E.)

"[T]he phrase 'reasonable attorneys' fee' can encompass work performed by individuals who are not attorneys." Interface Cmty. Org. v. Honeywell Int'l, Inc., 426 F.3d 694, 716 (3d Cir.

11

2005).  The Third Circuit has observed that non-testifying experts who "assisted the attorneys in preparing their ultimate work product" have "a strong claim" for compensation.  Id.; see also Missouri v. Jenkins ex. rel. Agyei, 491 U.S. 274, 285 (1989) (noting that "clearly, a reasonable attorney fee cannot have been meant to compensate only work performed personally by members of the bar").

In this case, plaintiffs' computer consultant was not an expert for trial purposes, and thus does not fall under the restrictions of 42 U.S.C. § 1988(c).[3]  Rather, the consultant educated plaintiffs attorneys on issues central to the case and provided invaluable technical skill.  As a result, the Court rejects defendants' argument that costs for plaintiffs' computer consultant should be denied.  However, the Court again notes that only work related to the obtaining of preliminary injunctive relief is reimbursable at this time.

### b.   IT Acceleration Costs

Second, defendants claim that "[p]laintiffs seek $419.23 in consulting services for 'IT Acceleration' . . . [but] [p]laintiffs' Motion does not explain this cost."  (Defs.' Mem. 35.) Plaintiffs explain that "this 'cost' was fifty percent of the charge for IT Acceleration to take possession of and make a duplicate copy of the hard drive of Blake Robbins['s] computer" and that "[d]efendants were billed by IT Acceleration for the other half."  (Pls.' Am. Reply Mem. 25.) The Court concludes that this is a reasonable and reimbursable cost, and rejects defendants' argument as to this issue.

### c.   Deposition Costs

---

[3] As a result of this determination, the Court need not address whether the computer consultant fees would be recoverable under the Electronic Communications Privacy Act or the Stored Communications Act.

Third, defendants state that, "[g]iven that the depositions plaintiffs took were not necessary to obtain injunctive relief, the Court should deny plaintiffs the stenographic expenses for the depositions that total $7,790." (Defs.' Mem. 35.)  Defendants also argue that "the Court should reject plaintiffs' requests for the $4,836 paid to videotape the depositions," as there is no indication deposed witnesses would be unable to testify at trial, and even if there was, reading the deposition into the record would accomplish the same result.  (Id.)  To the contrary, plaintiffs contend that depositions were videotaped because there was no assurance that deponents would be available at the time of trial, as two were employees placed on administrative leave and another was an ex-employee of the defendants.  (Pls.' Am. Reply Mem. 17.)  Moreover, plaintiffs assert that if witnesses were unavailable for trial, "an assessment of their credibility is far more effectively made based upon a videotaped deposition upon the reading of a dry transcript."  (Id. at 18.)

The Court has concluded above that the depositions were relevant to plaintiffs' full investigation of plaintiffs' claims.  Accordingly, stenographic costs are reasonable.  Further, plaintiffs have provided a reasonable basis for their decision to videotape the depositions, and thus defendants' argument that plaintiffs' request for costs should be denied on this basis is rejected.  However, only the costs related to depositions conducted with respect to the obtaining of preliminary injunctive relief are recoverable at this time.

### d.    Legal Research Costs

Finally, defendants argue that electronic research charges are reimbursable only when "the prevailing party's counsel normally bills them to a client."  (Defs.' Mem. 36.)  In this case, defendants state that "[p]laintiffs do not provide the requisite information about their counsel's

billing practices" or "identify the purpose of the charges," and that research on damages issues would not be a recoverable cost.  (Id.)  In response, plaintiffs state that "all of the 'costs' set forth in the Motion for Interim Fee are the type of costs which Lamm Rubenstone normally charges through to its client on a regular basis."  (Pls.' Am. Reply Mem. 24.)

The Court concludes that because plaintiffs normally bill their clients for legal research costs, such costs may be recoverable in this case.  Any research costs prior to May 14, 2010, that relate to obtaining preliminary equitable relief, or that relate to compensatory damages but are sufficiently intertwined with work done to obtain equitable relief, are reimbursable at this time. Once a final injunction has been obtained, plaintiffs may include in their supplemental motion a request for research costs related to the final injunction.  Plaintiffs may not recover research costs that relate solely to damages claims.

## V.  CONCLUSION

For the reasons set forth above, Plaintiffs' Motion for Interim Attorneys' Fees is granted in part, and denied in part.  Plaintiffs' motion is granted with respect to those fees and costs related to the entry of preliminary injunctive relief.  Plaintiffs motion is denied on the present state of the record with respect to all other fees and costs.

An appropriate order follows.